**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION** | |
| | **Misc. A. No. 25-179 (JDB)** |
| | **MDL No. 3162** |
| **This document relates to: ALL CASES** | |

**MEMORANDUM OPINION & ORDER**

Before the Court now are the parties' proposed protective order and electronically stored information (ESI) protocol.  The Court issues this opinion to provide the parties with guidance to facilitate resolution of their disagreements regarding each proposal.  The Court will also order the parties to submit new proposals in line with this opinion.

**Background**

This multidistrict litigation (MDL) consolidates for pretrial purposes multiple cases across the country in which plaintiffs have alleged that class action settlement administrators conspired with banks or fintech companies in kickback schemes that artificially depressed the payouts received by class members.  See Case Mgmt. Report 30-39, Dkt. 73.  The Court has appointed leadership for plaintiffs and defendants, set an initial pretrial schedule, and set protocols for common benefit work and expenses by plaintiffs' counsel.  See Orders Appointing Leadership, Dkts. 111-12, 117; Case Mgmt. Order No. 1, Dkt. 118; Common Benefit Order No. 1, Dkt. 125. The parties have now submitted a proposed protective order and ESI protocol evincing several areas of disagreement.  See Proposed Protective Order, Dkt. 130; Proposed ESI Protocol, Dkt. 131. The Court will discuss each in turn.

1

**Protective Order**

The parties differ on two issues in the protective order: (1) the applicability of Federal Rule of Evidence 502(b) addressing waiver of attorney-client and work product privilege, and (2) which party must raise with the Court any dispute about a confidentiality designation.  The Court generally agrees with plaintiffs as to waiver of privilege and with defendants as to challenges to confidentiality designations.

## I.    Rule 502: Attorney-Client and Work Product Privilege and Waiver

The parties principally disagree about whether Rule 502(b) ought to apply here.  See Proposed Protective Order at 10-20.  Rule 502(b) provides that disclosure of privileged material in a federal proceeding does not operate as a waiver of privilege if (1) the disclosure is inadvertent, (2) the privilege holder took reasonable steps to prevent disclosure, and (3) the holder promptly took reasonable steps to rectify the error.  This rule "opts for the middle ground" and "is in accord with the majority view on whether inadvertent disclosure is a waiver."  Fed. R. Evid. 502, advisory comm. notes on subdivision (b) (2007).  However, a court order modifying the default waiver rule is controlling.  Fed. R. Evid. 502(d).  An order "may provide for return of documents without waiver irrespective of the care taken by the disclosing party," which can provide "predictability that is needed to allow the party to plan in advance to limit the prohibitive costs of privilege and work product review and retention."  Fed. R. Evid. 502, advisory comm. notes on subdivision (d) (2007).

Plaintiffs propose to incorporate Rule 502(b) into the protective order whereas defendants ask the Court to issue a Rule 502(d) order providing for no waiver regardless of inadvertence or care.  The Court agrees with plaintiffs.  To be sure, and as defendants highlight, at least two

Districts' and the Sedona Conference's[1] model protective orders provide that Rule 502(b) shall not apply, and several judges in this District have adopted Rule 502(d) orders in line with defendants' proposal.  See Proposed Protective Order at 18-19.  However, it does not appear that any of the judges adopting Rule 502(d) orders in cases cited by defendants did so over any objections.  Parties are, of course, free to agree to maximally protective Rule 502(d) orders, but plaintiffs do not so consent here.  Moreover, the Court is concerned about the possibility of belated clawbacks once a party has relied on information—for example, to support a motion or as a deposition exhibit—that has long been disclosed.

As to the contours of Rule 502(b)'s applicability here, the Court emphasizes that "considerations bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time constraints for production," as well as the use of tools and applications for screening and the implementation of an efficient records management system. Fed. R. Evid. 502, advisory comm. notes on subdivision (b) (2007).  Further, Rule 502(b) "does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake."  Id.  Instead, it requires the producing party "to follow up on any obvious indications that a protected communication or information has been produced inadvertently."  Id.  As such, the Court is likely to find prompt clawbacks reasonable as long as there is neither obvious reliance by the receiving party already— for example, in earlier filings or depositions—nor obvious indications that disclosure was careless or intentional.[2]

---

[1] The Sedona Conference is a 26 U.S.C. § 501(c)(3) research and educational nonprofit focused on complex litigation.

[2] The parties also disagree as to whether disputes about privilege should be communicated to the Court by standard motions practice under seal or by joint letter under seal requesting in camera review.  In the interest of judicial economy, the Court will instruct the parties to file simultaneous position statements under seal.

### II.    Challenges to Confidentiality Designations

The parties' proposals differ here only as to which party must alert the Court to a dispute about a confidentiality designation.  See Proposed Protective Order at 26-32.  Plaintiffs contend that the producing party ought to file a motion to sustain a designation because the producing party bears the burden of persuasion and at least one District's model order as well as several MDL cases so provide.  Defendants argue that the party challenging a designation ought to file a motion and cite several cases in this District and elsewhere that follow that approach (albeit often not in an MDL context).  The Court agrees with defendants.  Although the risk of overdesignation is a concern, it makes logical sense that the party that disagrees with a designation should make the Court aware of the dispute, at least absent agreement otherwise.  In the event of significant overdesignation, the challenging party can consolidate its challenges in a single filing.  And, in line with Rule 502 challenges, in the interest of judicial economy the Court will require simultaneous position statements under seal on confidentiality designation challenges rather than formal motions practice.

### ESI Protocol

The parties disagree on three issues in the ESI protocol: (1) short message communications, (2) hyperlinked documents and parent-child relationships, and (3) document collection and production parameters.  The Court generally agrees with plaintiffs on each issue.

### I.    Short Message Communications

This dispute centers on instant or text messages and their associated metadata.  See Proposed ESI Protocol at 13-19.  Plaintiffs prefer to set out now the parameters for production of any such communications that may be relevant whereas defendants propose to meet and confer later on the format of production if such communications become discoverable.  Plaintiffs

emphasize that the Federal Rules of Civil Procedure require parties to address in their discovery plan the "forms in which [ESI] should be produced" and to provide ESI discovery in a "reasonably usable form." Fed. R. Civ. P. 26(f)(3)(C), 34(b)(2)(E)(ii). They also point out that numerous MDLs include similar provisions. For their part, defendants argue that plaintiffs seek to impose an "exacting and inflexible process" prematurely and characterize their approach instead as "cooperative and flexible." The Court agrees with plaintiffs. There appear to be limited burdens and some efficiencies from establishing at this early stage the process for production of any short message communications that may later become discoverable. Moreover, this approach generally comports with that of other MDLs. See, e.g., Pretrial Order No. 13 at 5, In re Depo-Provera Prods. Liab. Litig., No. 3:25-MD-3140, MDL No. 3140 (N.D. Fla. Mar. 14, 2025), Dkt. 174.

## II.    Hyperlinks and Parent-Child Relationships

The parties are at odds here about how to deal with hyperlinked documents during discovery. See Proposed ESI Protocol at 20-22, 39-56. Plaintiffs propose a three-tier approach to hyperlinked documents: (1) automatic production for five or fewer hyperlinked documents where automatic collection is feasible, (2) targeted requests for more than five documents or a linked location (e.g., folder rather than file) where automatic collection is feasible, and (3) a meet-and-confer process where automatic collection is not feasible for a given platform and the requesting party has identified a specific document containing a hyperlink. Defendants propose an order stating that a producing party need not produce hyperlinked files just because a link appears in another document and that there is no duty to manually locate, collect, or associate relevant hyperlinked documents where automatic collection is not technically feasible. They suggest a meet-and-confer process regarding the feasibility and burden of automatic collection only after the

receiving party identifies hyperlinked documents to be produced, and written requests for specific hyperlinked documents where automatic collection is overly burdensome or infeasible.

The Court agrees overall with plaintiffs that a procedure for producing hyperlinked documents should be put in place through the ESI protocol rather than left to subsequent meet-and-confer processes. As both parties emphasize, Federal Rule of Civil Procedure 26(b)(1) requires that discovery be proportional. On the one hand, the Court recognizes that hyperlinks may lead to folders with numerous files, many of which may not be relevant. Accordingly, and as defendants highlight, hyperlinked documents are not necessarily akin to traditional attachments. On the other hand, the Court is aware that the increasingly widespread use of document sharing platforms such as Microsoft 365 or Google Workspace means that many relevant documents are shared via hyperlink rather than attachment.

Plaintiffs' proposal gets closer to balancing the unique considerations associated with hyperlinks by tailoring the burden to the characteristics of the hyperlink. In other words, to the extent that a hyperlink looks like an attachment (few linked documents and automatic collection) then production is automatic. But to the extent that a hyperlink looks different than an attachment (large quantities of linked documents or infeasible automatic collection) then a more targeted or collaborative process is to be employed. A reasonable approach to parent-child relationships for hyperlinks follows from that tailoring—the producing party need only automatically collect and produce documents with the family relationship preserved where the platform permits automatic collection and there are few linked documents. And as plaintiffs point out, numerous MDL cases have treated linked documents as family members and required them to be produced along with any transmitting message. See, e.g., Case Mgmt. Order No. 11 at 21-22, In re Multiplan Health Ins. Provider Litig., No. 24-cv-6795, MDL No. 3121 (N.D. Ill. Jan. 5, 2025), Dkt. 241.

Defendants resist this conclusion first by pointing to In re Meta Pixel Healthcare Litigation, No. 22-cv-3580, 2023 WL 4361131, at *1 (N.D. Cal. June 2, 2023). However, the magistrate judge's concern there was that the tools plaintiffs suggested using for automatic collection would be of no or very limited utility in Meta's data environment and would disrupt Meta's ESI discovery workflow. Id. Defendants have identified no such specific issues here, and plaintiffs' proposed approach is already tiered according to whether automatic collection is feasible. Defendants also rely on Nichols v. Noom, Inc., No. 20-cv-3677, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021), but in that case the magistrate judge emphasized that a hyperlink is not "necessarily" like an attachment and might link to a folder including many irrelevant documents. Moreover, plaintiffs there already agreed that defendants had employed an acceptable collection tool and collected the same documents, so plaintiffs' proposed collection of hyperlinked documents would lead to significant duplication. Id. Here, plaintiffs' approach calls for targeted requests where a hyperlink leads to a linked location that includes many documents, and there has been no collection as yet to trigger duplication concerns. Finally, defendants also highlight that the Sedona Conference recommends that parties not reflexively treat hyperlinked documents like attachments. But plaintiffs' approach does not do so. Instead, it provides for tailoring according to whether a hyperlink looks like an attachment.

Accordingly, the Court generally agrees with plaintiffs that the ESI protocol should address hyperlinks at this stage and that a tiered system accounting for burden—for example, through consideration of automatic collection capabilities and the number of linked documents—is an appropriate manner of doing so.

### III.    Document Collection and Production Parameters

Finally, the parties disagree  about (1) disclosure timelines for document custodians and custodial and non-custodial data sources, (2) search methodologies, and (3) validation methodologies to establish substantial completion.  See Proposed ESI Protocol 58-88.

As to custodian and source disclosures, plaintiffs contend that the producing party should disclose a list of custodians and sources within 14 days of the Rule 26(f) conference.  For their part, defendants argue that the producing party should disclose custodians and custodial sources and the parties should meet and confer about non-custodial sources within 30 days of the producing party's service of objections and responses during general discovery.  Under Federal Rule of Civil Procedure 26(f), the parties must develop a discovery plan and that plan must address issues involving ESI.  Fed. R. Civ. P. 26(f)(2), (3)(C).  Accordingly, parties should be informed about their ESI custodians and sources ahead of that conference.  On that basis, it does not appear burdensome to require the producing party to disclose custodians and sources within 14 days of the Rule 26(f) conference.  And courts in other MDL cases have required that defendants share preliminary information about IT infrastructure, sources of discoverable material, and custodians at the Rule 26(f) conference.  See, e.g., Case Mgmt. Order No. 1 at 7, In re Depo-Provera Prods. Liab. Litig., No. 3:25-MD-3140, MDL No. 3140 (N.D. Fla. Feb. 23, 2025), Dkt. 72.  In response, defendants contend that plaintiffs' request is untethered, premature, and disproportionate.  See Proposed ESI Protocol 62-63.  But in support defendants simply gesture toward Rule 26(b)(1)'s requirement of proportionality.  Without more specificity as to burden, the Court is unpersuaded that plaintiffs' request is disproportionately burdensome.

Regarding search methodologies, defendants propose disclosing their general search methodology along with reasonable information about the methodology—which may include

search terms or hit reports—to facilitate meaningful meet-and-confer discussions.    Plaintiffs instead propose an iterative process of search term development and provision of hit reports as well as a validation process that includes a random sample of null set (i.e., nonresponsive) documents to help ensure responsive documents are not missed.    Plaintiffs further propose that technology-assisted review (TAR) be permitted only if a TAR protocol is first put in place describing the TAR methodology and technology, training process, validation methodology, and process for disclosing validation results.

In support of their search methodology approach, defendants principally rely on two magistrate judge opinions rejecting requests by plaintiffs to run searches with their preferred search terms.    Proposed ESI Protocol at 64 (citing Prasad v. George Washington Univ., 323 F.R.D. 88, 93-94 (D.D.C. 2017); EEOC v. George Wash. Univ., Civ. A. No. 17-1978, 2020 WL 3489478, at *11 (D.D.C. June 26, 2020)).    But Prasad was an after-the-fact challenge to discovery where, in response to concerns from plaintiffs and the Court, the defendant had already significantly broadened its search to such a degree that responsiveness had become "miniscule," and tweaking search terms was unlikely to improve responsiveness.    And George Washington University emphasized that the requested search would likely turn up privileged material, triggering review costs that would exceed plaintiff's best-case scenario recovery.    There is no such indication here of disproportionality under Rule 26(b)(1).    Instead, providing plaintiffs with a role in search term iteration and insight into hit reports is precisely what happened in Prasad.    And it is also in line with the approach taken in other MDL cases.    See, e.g., ESI and Hard Copy Documents Stipulation and Order at 7-13, In re Domestic Airline Travel Antitrust Litig., Misc. A. No. 1404, MDL No. 2656 (D.D.C. May 5, 2017).

In brief, therefore, the parties shall employ an iterative process of search term development and the producing party shall provide hit reports and establish a validation process to assess responsiveness. TAR shall be permitted only if a TAR protocol is agreed in advance.

Finally, as to validation methodologies, plaintiffs seek to set out a validation framework in advance, to include random sampling. Conversely, defendants point out that Rule 26(g) does not require any specific validation methodology or disclosure thereof and that reasonableness depends on the circumstances. See Fed. R. Civ. P. 26(g) (requiring producing party counsel to certify after reasonable inquiry that disclosure is complete and correct). The Court agrees with plaintiffs. Courts routinely require some form of validation so that the receiving party can be confident that production is substantially complete. See, e.g., Pretrial Order No. 19 at 6-8, In re Depo-Provera Prods. Liab. Litig., No. 3:25-MD-3140, MDL No. 3140 (N.D. Fla. Mar. 27, 2025), Dkt. 212. Otherwise, discovery would be a black box, and our adversarial system does not contemplate such one-sided litigation. The two cases defendants principally rely on in support do not help them. See Proposed ESI Protocol at 85-88. In Brown v. Barnes & Noble, Inc., 474 F. Supp. 3d 637, 644 (S.D.N.Y. 2019), the court emphasized extensive negotiation and cooperation on an ESI protocol with plaintiffs. And in City of Rockford v. Mallinckrodt ARD Inc., 326 F.R.D. 489, 494-95 (N.D. Ill. 2018), the court did require null-set sampling at a 95 percent confidence interval and 2 percent margin of error. Likewise, here the Court will require the parties to establish in advance a validation process to assess discovery completion, including random sampling or substantially equivalent quality control measures.

## **Conclusion**

For the foregoing reasons, the Court generally agrees with plaintiffs on the disputed issues except with respect to challenges to confidentiality designations. Although the Court has set out

broadly here its view on the parties' respective positions, it leaves to the parties the task of revising the proposed protective order and ESI protocol in line with the observations and conclusions in this opinion.  See George Wash. Univ., 2020 WL 3489478, at *11 ("Courts are not normally in the business of dictating to parties the process they should use when responding to discovery." (citation modified)).  The Court reminds the parties of their duties to meet and confer in an effort to resolve disagreements in good faith.  See, e.g., Case Mgmt. Order No. 1 at 4, Dkt. 118.

* * *

Upon consideration of the parties' [130] proposed protective order, and [131] proposed ESI protocol, and the entire record herein, it is hereby ORDERED that the parties shall submit a new proposed protective order and proposed ESI protocol revised in accordance with this opinion by not later than August 10, 2026.

/s/
JOHN D. BATES
United States District Judge

Date: July 10, 2026

11