**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**IN RE CLASS ACTION
SETTLEMENT
ADMINISTRATION LITIGATION**

**This Document Relates To:
ALL CASES**

</td><td>

**Misc. Action No. 25-00179 (JDB)
MDL Docket No. 3162**

</td></tr>
</table>

**MEMORANDUM OF LAW IN SUPPORT OF
<u>FINTECH DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.      Prepaid digital cards benefit class members ............................................. 2

    II.    The FinTechs' compensation ..................................................................... 4

    III.   Plaintiffs' claims against the FinTech Defendants ................................... 5

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ...................................................................................................................... 9

    I.      Plaintiffs' fraud-based claims against the FinTech Defendants fail ........ 9

          A.    Plaintiffs fail to state claims against the FinTech Defendants for fraudulent concealment (Count III) and fraud (Count IV) ....................... 10

          B.    Plaintiffs fail to plead their civil RICO claims with particularity ............. 20

    II.    The Remaining Claims Against The FinTechs Also Fail .................................... 28

          A.    Plaintiffs fail to state claims for aiding and abetting breach of fiduciary duty (Count II) or aiding and abetting fraud (Count V) against the FinTech Defendants. ............................................................... 28

          B.    Plaintiffs' civil conspiracy claim (Count VII) fails. ................................ 33

          C.    Plaintiffs fail to plead unjust enrichment (Count X). ............................... 36

    III.   Plaintiffs lack Article III standing ......................................................... 39

CONCLUSION ................................................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abacus Fed. Sav. Bank v. Lim*,
905 N.Y.S.2d 585 (App. Div. 2010) ....................................................................................35

*Adler v. Loyd*,
496 F. Supp. 3d 269 (D.D.C. 2020) .....................................................................................9

*Albion All. Mezzanine Fund, L.P. v. State St. Bank & Tr. Co.*,
8 Misc. 3d 264 (N.Y. Sup. Ct. 2003) ..................................................................................36

*Alexander & Alexander of N.Y., Inc. v. Fritzen*,
68 N.Y.2d 968 (1986) .........................................................................................................35

*Amazon Servs. LLC v. U.S. Dep't of Agric.*,
109 F.4th 573 (D.C. Cir. 2024) ...........................................................................................28

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
406 F. Supp. 3d 72 (D.D.C. 2019), *aff'd*, 2020 WL 873574 (D.C. Cir. Feb. 14,
2020) .....................................................................................................................................22

*Anderson v. Ayling*,
396 F.3d 265 (3d Cir. 2005) .................................................................................................26

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ..........................................................................................................35

*In re Aramid Ent. Fund Ltd.*,
664 B.R. 9 (Bankr. S.D.N.Y. 2024) .....................................................................................32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................9

*\*W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
235 F.3d 629 (D.C. Cir. 2001) ........................................................................................22, 24

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*,
57 F.3d 146 (2d Cir. 1995) ...................................................................................................20

*Bates v. Nw. Hum. Servs., Inc.*,
466 F. Supp. 2d 69 (D.D.C. 2006) .......................................................................................25

*In re Bayou Steel BD Holdings, L.L.C.*,
642 B.R. 371 (Bankr. D. Del. 2022) ....................................................................................30

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007) ................................................................................8

*Bell v. Hubbert*,
  2007 WL 60513 (S.D.N.Y. Jan. 8, 2007) ......................................................21

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021)............................................................33

*Bhatia v. Silvergate Bank*,
  725 F. Supp. 3d 1079 (S.D. Cal. 2024)..........................................................32

*Blon v. Bank One, Akron, N.A.*,
  519 N.E.2d 363 (Ohio 1988)..........................................................................14

*Bridges v. Blue Cross & Blue Shield Ass'n*,
  935 F. Supp. 37 (D.D.C. 1996)......................................................................29

*Brink v. Cont'l Ins. Co.*,
  787 F.3d 1120 (D.C. Cir. 2015)......................................................................22

*Brooks v. Peoples Bank*,
  732 F. Supp. 3d 765 (S.D. Ohio 2024) ..........................................................39

*Brumfield v. Merck & Co.*,
  2018 WL 2277835 (E.D.N.Y. May 18, 2018) ................................................13

*Canuto v. Mattis*,
  273 F. Supp. 3d 127 (D.D.C. 2017)..................................................................3

*Casey v. U.S. Bank Nat'l.Ass'n*,
  127 Cal. App. 4th 1138 (2005) ......................................................................31

*\*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)..................................................................17, 27, 35, 38

*\*Cisco Sys., Inc. v. Doe I*,
  2026 WL 1791225 (U.S. June 23, 2026) ........................................................27

*Confederate Mem'l Ass'n, Inc. v. Hines*,
  995 F.2d 295 (D.C. Cir. 1993)........................................................................29

*Corsello v. Verizon N.Y., Inc.*,
  967 N.E.2d 1177 (N.Y. 2012)........................................................................38

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001)............................................................34

*CRT Invs., Ltd. v. BDO Seidman, LLP,*
  925 N.Y.S.2d 439 (App. Div. 2011) ................................................................................32

*\*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.,*
  941 F.2d 1220 (D.C. Cir. 1991) ............................................................................25, 26, 29

*\*E. Sav. Bank, FSB v. Papageorge,*
  31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) ....................22, 24, 25

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n,*
  48 F.3d 1260 (D.C. Cir. 1995) ......................................................................................24

*Eliahu v. Jewish Agency for Isr.,*
  919 F.3d 709 (2d Cir. 2019) ..........................................................................................28

*Ellsworth Assocs., Inc. v. United States,*
  917 F. Supp. 841 (D.D.C. 1996) ....................................................................................11

*Empire Merchants, LLC v. Reliable Churchill LLLP,*
  902 F.3d 132 (2d Cir. 2018) ..........................................................................................26

*Evercrete Corp. v. H-Cap Ltd.,*
  429 F. Supp. 2d 612 (S.D.N.Y. 2006) ............................................................................20

*Facebook, Inc. v. MaxBounty, Inc.,*
  274 F.R.D. 279 (N.D. Cal. 2011) ....................................................................................33

*Fay v. Humane Soc'y of U.S.,*
  2021 WL 184396 (D.D.C. Jan. 19, 2021) ......................................................................26

*Filler v. Hanvit Bank,*
  2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003) ..............................................................37

*\*Fleites v. MindGeek S.A.R.L.,*
  801 F. Supp. 3d 1011 (C.D. Cal. 2025) ....................................................................35, 36

*In re Ford Motor Co. Vehicle Paint Litig.,*
  182 F.R.D. 214 (E.D. La. 1998) ......................................................................................11

*\*Freeman v. Sorchych,*
  245 P.3d 927 (Ariz. Ct. App. 2011) ..........................................................................38, 40

*In re Gen. Motors LLC Ignition Switch Litig.,*
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) ............................................................................18

*Georgia Malone & Co. v. Rieder,*
  19 N.Y.3d 511 (2012) ....................................................................................................39

*Guerrero v. Katzen*,
    571 F. Supp. 714 (D.D.C. 1983) ..................................................................................29

*Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*,
    481 F. Supp. 3d 941 (D. Ariz. 2020) ...........................................................................35

*Heinert v. Bank of Am., N.A.*,
    410 F. Supp. 3d 544 (W.D.N.Y. 2019), *aff'd*, 835 F. App'x 627 (2d Cir. 2020) ....................33

*Heinert v. Bank of Am. N.A.*,
    835 F. App'x 627 (2d Cir. Nov. 13, 2020) ...............................................................31

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1, 9 (2010) ...................................................................................................24

*Hourani v. Mirtchev*,
    796 F.3d 1 (D.C. Cir. 2015) .......................................................................................23

*Hughes v. Wells Fargo Bank, N.A.*,
    2011 WL 1370649 (C.D. Cal. Mar. 17, 2011) .......................................................3, 5

*Humana, Inc. v. Biogen, Inc.*,
    666 F. Supp. 3d 135 (D. Mass. 2023), *aff'd*, 126 F.4th 94 (1st Cir. 2025).............................16

*Immobiliare, LLC v. Westcor Land Title Ins. Co.*,
    424 F. Supp. 3d 882 (E.D. Cal. 2019).........................................................................18

*Jacovetti L., P.C. v. Shelton*,
    2020 WL 5211034 (E.D. Pa. Sept. 1, 2020) ..............................................................21

*State ex rel. Jennings v. Purdue Pharma L.P.*,
    2019 WL 446382 (Del. Super. Feb. 4, 2019)..............................................................36

*Kaufman v. Cohen*,
    760 N.Y.S.2d 157 (App. Div. 2003) ......................................................................30, 32

*Kidron v. Movie Acquisition Corp.*,
    40 Cal. App. 4th 1571 (1995) .................................................................................35, 36

*Klein v. Gen. Nutrition Cos.*,
    186 F.3d 338 (3d Cir. 1999)........................................................................................13

*Kowal v. MCI Commc'ns. Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ......................................................................................9

*Krukas v. AARP, Inc.*,
    458 F. Supp. 3d 1 (D.D.C. 2020) ...........................................................................17, 18

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014)........................................................................................30, 31

*United States v. Law*,
  528 F.3d 888 (D.C. Cir. 2008) .............................................................................................23

*Lectrodryer v. SeoulBank*,
  77 Cal. App. 4th 723 (2000) .................................................................................................38

*In re Lehman Bros. Sec. & ERISA Litig.*,
  903 F. Supp. 2d 152 (S.D.N.Y. 2012)...................................................................................30

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  27 F. Supp. 3d 447 (S.D.N.Y. 2014)......................................................................................40

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  2016 WL 5719749 (S.D.N.Y. Sept. 29, 2016).......................................................................38

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) .....................................................................................................38, 39

*Martell v. Gen. Motors LLC*,
  492 F. Supp. 3d 1131 (D. Or. 2020) ....................................................................................20

*McNutt v. Gen. Motors Acceptance Corp.*,
  298 U.S. 178 (1936) ...............................................................................................................9

*McWreath v. Cortland Bank*,
  2012 WL 2522933 (Ohio Ct. App. June 29, 2012)................................................................13

*Miles Farm Supply, LLC v. Helena Chem. Co.*,
  595 F.3d 663 (6th Cir. 2010) ................................................................................................30

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  737 F. Supp. 2d 137 (S.D.N.Y. 2010), *aff'd in part*, 431 F. App'x 17 (2d Cir.
  2011), *aff'd*, 651 F.3d 268 (2d Cir. 2011)...........................................................................30

*Morris v. Castle Rock Ent., Inc.*,
  246 F. Supp. 2d 290 (S.D.N.Y. 2003)....................................................................................13

*In re Mortg. Fund '08 LLC*,
  527 B.R. 351 (N.D. Cal. 2015) .............................................................................................33

*MSP Recovery Claims, Series LLC v. Pfizer, Inc.*,
  728 F. Supp. 3d 89 (D.D.C. 2024)...................................................................................23, 26

*Mursau Corp. v. Fla. Penn Oil & Gas, Inc.*,
   638 F. Supp. 259 (W.D. Pa. 1986), *aff'd sub nom.*, *Fla. Pen Oil & Gas, Inc. v. Murray*, 813 F.2d 396 (3d Cir. 1987) ...................................................................................19

*N. Fork Partners Inv. Holdings, LLC v. Bracken*,
   2021 WL 4124950 (S.D.N.Y. Sept. 9, 2021)...........................................................................18

*N. Penn Towns, LP v. Concert Golf Partners, LLC*,
   2022 WL 2985632 (E.D. Pa. July 28, 2022)....................................................................18, 19

*Negrete v. Citibank, N.A.*,
   187 F. Supp. 3d 454 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019).......................19

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ...................................................................................................38

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*,
   1999 WL 558141 (S.D.N.Y. July 30, 1999) ....................................................................32, 34

*\*Owens v. BNP Paribas, S.A.*,
   897 F.3d 266 (D.C. Cir. 2018)...............................................................................................27

*P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*,
   754 N.Y.S.2d 245 (N.Y. App. Div. 2003) ..............................................................................14

*Parker v. Bank of Am., N.A.*,
   99 F. Supp. 3d 69 (D.D.C. 2015) ...........................................................................................11

*Pasternack v. Lab'y Corp. of Am. Holdings*,
   27 N.Y.3d 817 (2016) ............................................................................................................13

*United States ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.*,
   2020 WL 686009 (D.D.C. Feb. 11, 2020) .......................................................................12, 15

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   446 F. Supp. 2d 163 (S.D.N.Y. 2006)....................................................................................34

*\*United States v. Perholtz*,
   842 F.2d 343 (D.C. Cir. 1988)..........................................................................................24, 25

*In re Platinum-Beechwood Litig.*,
   426 F. Supp. 3d 14 (S.D.N.Y. 2019)......................................................................................38

*Premier Cap. Mgmt., LLC v. Cohen*,
   2008 WL 4378313 (N.D. Ill. Mar. 24, 2008)........................................................................33

*Ramunno v. Cawley*,
   705 A.2d 1029 (Del. 1998) ...................................................................................................35

*Rattagan v. Uber Techs., Inc.*,
  17 Cal. 5th 1 (2024) ..........................................................................................................14

*\*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
  68 F.3d 1478 (2d Cir. 1995)..............................................................................................17

*Republic of Kazakhstan v. Stati*,
  380 F. Supp. 3d 55 (D.D.C. 2019), *aff'd*, 801 F. App'x 780 (D.C. Cir. 2020).......................23

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
  471 F. Supp. 3d 981 (N.D. Cal. 2020) ...............................................................................16

*\*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)...........................................................................................................25

*Roling v. E\*Trade Sec. LLC*,
  860 F. Supp. 2d 1035 (N.D. Cal. 2012) ................................................................................5

*Rolo v. City Investing Co. Liquidating Tr.*,
  155 F.3d 644 (3d Cir. 1998)...............................................................................................28

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
  682 F.3d 1043 (D.C. Cir. 2012) .........................................................................................25

*\*Sandza v. Barclays Bank PLC*,
  151 F. Supp. 3d 94 (D.D.C. 2015) ...............................................................................28, 29

*Schmidt v. U.S. Capitol Police Bd.*,
  826 F. Supp. 2d 59 (D.D.C. 2011) .....................................................................................10

*Sec. Inv. Prot. Corp. v. BDO Seidman, L.L.P.*,
  95 N.Y.2d 702 (2001) ........................................................................................................16

*In re Sharp Int'l Corp.*,
  302 B.R. 760 (E.D.N.Y. 2003), *aff'd*, 403 F.3d 43 (2d Cir. 2005).......................................30

*\*Silverman v. Weil*,
  662 F. Supp. 1195 (D.D.C. 1987), *aff'd*, 839 F.2d 824 (D.C. Cir. 1988)...........................9, 32

*\*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
  605 U.S. 280 (2025)...........................................................................................................28

*Smith v. Fed. Title & Escrow Co.*,
  2018 WL 11666412 (D.D.C. June 21, 2018)........................................................................24

*Smith v. Wells Fargo Bank, N.A.*,
  809 F. Supp. 3d 922 (N.D. Cal. 2025) ...............................................................................29

*Son Ly v. Solin, Inc.*,
  910 F. Supp. 2d 22 (D.D.C. 2012)....................................................................................26, 27

*Steele v. Isikoff*,
  130 F. Supp. 2d 23 (D.D.C. 2000).........................................................................................18

*In re Swervepay Acquisition, LLC*,
  2022 WL 3701723 (Del. Ch. Aug. 26, 2022) .......................................................................37

*Taragan v. Nissan N. Am., Inc.*,
  2013 WL 3157918 (N.D. Cal. June 20, 2013) ......................................................................17

*Terrell v. Childers*,
  920 F. Supp. 854 (N.D. Ill. 1996) .........................................................................................16

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023)..........................................................................................................28, 30

*Vichi v. Koninklijke Philips Elecs. N.V.*,
  62 A.3d 26 (Del. Ch. 2012)....................................................................................................38

*Vichi v. Koninklijke Philips Elecs., N.V.*,
  85 A.3d 725 (Del. Ch. 2014)............................................................................................14, 40

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395
  Pension Tr. Fund*, 201 Ariz. 474 (2002)................................................................................35

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395
  Pension Tr. Fund*, 38 P.3d 12 (Ariz. 2002) (en banc) ..........................................................14

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*,
  389 F.3d 1251 (D.C. Cir. 2004)........................................................................................10, 11

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998)...................................................................................................12

*Wuerth v. Nationwide Energy Partners, LLC*,
  275 N.E.3d 670 (Ohio Ct. App. 2025), *appeal not allowed*, 274 N.E.3d 690
  (Ohio 2026).............................................................................................................................39

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union 639*,
  883 F.2d 132 (D.C. Cir. 1989), *on reh'g in part*, 913 F.2d 948 (D.C. Cir.
  1990) (en banc) ......................................................................................................................29

**Statutes**

18 U.S.C. § 2.............................................................................................................................27

18 U.S.C. § 1961(5)..................................................................................................................24

18 U.S.C. § 1956.............................................................................................................22

18 U.S.C. § 1962(a), (c) ............................................................................................25, 27

18 U.S.C. § 1962(c) .........................................................................................................25

**Other Authorities**

26 C.F.R. § 1.468B-2(d) ..................................................................................................21

Fed. R. Civ. P. 9(b) .................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(1), (6) ..........................................................................................8, 9

Restatement (Second) of Torts § 551...................................................................17, 18, 19

**INTRODUCTION**

This case is about disclosures to courts and class members concerning class-action settlement funds. The FinTechs[1] are unlikely defendants because they made none of the challenged disclosures and had no disclosure obligation. Plaintiffs allege that other defendants (not FinTechs) made various statements that, according to Plaintiffs, should have disclosed more about the Administrator Defendants'[2] compensation. *See* Consolidated Class Action Complaint ("Compl."), ECF No. 123, ¶¶ 370–81, 505, 513, 519, 526. And Plaintiffs contend that other defendants (not FinTechs) had fiduciary obligations to courts or class members in the underlying class actions. *See, e.g.*, Compl. ¶¶ 82–84, 103–109. Plaintiffs do not sufficiently plead these allegations against any defendant—but as to the FinTechs, Plaintiffs do not even try. Plaintiffs *concede* that the FinTechs did not make any actionable misstatement. And Plaintiffs *concede* that the FinTechs had no fiduciary obligations, which makes sense: the FinTechs were third-party vendors hired to distribute cards to class-members.

Plaintiffs therefore cannot plead any fraud-based claim against the FinTechs. Plaintiffs themselves explain why. They allege: "The *Administrator* Defendants' and *Bank* Defendants' [alleged] status as fiduciaries"—conspicuously omitting the FinTechs—is "relevant to the [alleged] fraud" because "*a party with no fiduciary or similar obligation may generally remain silent*

---

[1] The "FinTech Defendants" or "FinTechs" are Blackhawk Network Holdings, Inc. ("Blackhawk"), Tremendous, LLC ("Tremendous"), and Digital Settlement Technologies LLC ("Digital Disbursements").

[2] The "Administrator Defendants" or "Administrators" are Angeion Group, LLC ("Angeion Group"); Epiq Class Action & Claims Solutions, Inc. ("Epiq"); JND Holdings, LLC, d/b/a JND Legal Administration ("JND"); Kroll LLC and Kroll Settlement Administration LLC (collectively, "Kroll").

*without committing fraud*." [3] *Id.* ¶ 383 (emphases added). Plaintiffs admit that the FinTech Defendants had no fiduciary or similar obligation and allege nothing beyond silence by the FinTechs, who were not before any settlement court. By Plaintiffs' own reasoning, their fraud-based claims fail. The other claims against the FinTechs fail too. Plaintiffs allege that the FinTechs aided and abetted other defendants in committing fraud and breaching fiduciary duties. But the Complaint fails to allege any underlying primary violation, so the derivative claims necessarily fail. And even if a primary violation had been pleaded, the Complaint alleges neither actual knowledge nor substantial assistance, as required for the aiding-and-abetting claims.

Plaintiffs' civil conspiracy and unjust enrichment claims against the FinTechs fail as well. Civil conspiracy requires an underlying tort, but Plaintiffs allege no primary violation nor any agreement by the FinTechs to commit one. The unjust enrichment claim fails because the FinTechs were paid for services they lawfully rendered, not enriched at Plaintiffs' expense, and because this claim is derivative of the deficient fraud and fiduciary-duty theories.

The Court should dismiss the Complaint in its entirety, and, at a minimum, it should dismiss all claims against the FinTechs.

## BACKGROUND

### I.    Prepaid digital cards benefit class members

The Complaint alleges the "FinTech Defendants are digital payment companies whose core commercial business is the bulk distribution of prepaid cards." *Id.* ¶ 132.[4] Many class members

---

[3] The "Bank Defendants" are The Huntington National Bank and Western Alliance Bank ("Western Alliance").

[4] As a threshold issue, the Complaint does not adequately allege how Digital Disbursements operates, stating that "Digital Disbursements focuses on providing digital payment solutions," and leaves out the critical detail that, unlike Blackhawk and Tremendous, Digital Disbursements does not itself issue prepaid cards and instead operates a payment-selection portal through which settlement recipients may choose from among available payment options. *See* Compl. ¶ 55.

prefer digital prepaid cards to more conventional forms of payment like paper checks. *See id.* ¶¶ 144, 147. Digital cards are distributed electronically, typically by email. *See, e.g.*, *id.* ¶¶ 182, 198, 208, 244, 271, 273–74, 287, 327. When the recipient activates the card, the funds loaded onto it are immediately available to spend. *See, e.g.*, *id.* ¶¶ 182, 273–74. Like credit and debit cards, prepaid cards can be used online or in stores. *See, e.g.*, *id.* ¶ 182. But because funds are preloaded, the cardholder does not need a bank account and the issuer need not extend credit, so the cards can be distributed without regard to the user's credit risk.

Distributing settlement payments by digital prepaid card benefits both individual class members and the class as a whole. For individuals, the cards provide immediate access to funds without the burden or expense of depositing or cashing a check, an advantage for the millions of Americans who are unbanked or underbanked. *See id.* ¶ 150(c) ("Virtual and physical prepaid cards and retail gift cards are particularly effective methods for making payments to unbanked individuals."). Digital cards are also easy to use and typically can be accessed directly through a user's phone or a "digital wallet" such as Apple Pay or Google Wallet. *See, e.g.*, *id.* ¶ 182. Reflecting these advantages, the Complaint alleges that class members increasingly select digital payment when offered the choice. *See id.* ¶¶ 139, 144.

Distributing settlements by prepaid digital card also benefits the entire class by reducing administration expenses, leaving more settlement funds available for the class. *See id.* ¶¶ 145–46, 150(a). Mailing paper checks incurs numerous costs: cutting, sending, and tracking the checks,

---

Plaintiffs also allege that Digital Disbursements' principal place of business is California, but Digital Disbursements' principal place of business became Arizona in 2023 after it was acquired by Western Alliance. *See* Declaration of Paul H. Lazarow, July 17, 2026, Exhibit 1 (Statement of Information for Digital Settlement Technologies LLC); *see Canuto v. Mattis*, 273 F. Supp. 3d 127, 133 n.7 (D.D.C. 2017) ("The Court may take judicial notice of filings with the California Secretary of State.").

canceling unused ones, and issuing and sending replacements. *See id.* ¶¶ 138, 150(a). These costs add up quickly because class actions often involve enormous numbers of absent class members. *See, e.g., id.* ¶¶ 171 ("data breach affecting approximately 76 million Americans"), 217 ("breach affecting approximately 98 million Americans"). These expenses typically come out of the settlement fund, reducing what class members receive. Distributing payments through digital prepaid cards can greatly reduce or eliminate these administration expenses, leaving more of the fund for the class.

## II.    The FinTechs' compensation

The Complaint alleges that the FinTech Defendants distribute—or, in the case of Digital Disbursements, assist in the distribution of—digital prepaid cards to class members who select that form of payment. *See id.* ¶ 132; *see, e.g., id.* ¶ 182, 244, 273–74, 287, 327. Cardholders pay nothing to receive or use a digital card. Instead, the FinTechs are compensated for their services primarily through inactivity fees, which the Complaint calls "[b]reakage." *Id.* ¶ 132. A cardholder who spends the full value of the card pays the FinTechs nothing. Inactivity fees are assessed only on unspent value and then only if the card is unused for a lengthy period. If a cardholder does not use the card for a specified period, usually twelve consecutive months, a small fee, typically under a dollar, is assessed against the remaining value each month until the cardholder uses the card again. *See also id.* ¶¶ 132–33.

Plaintiffs do not allege that inactivity fees themselves are unlawful. Nor could they. Although not necessary to this Motion, the fees are disclosed to and accepted by class members who choose to receive payment in the form of prepaid cards. Inactivity fees are first disclosed when class members are selecting among payment options. The fees are then disclosed again when a prepaid card is delivered. Users of prepaid cards also enter into cardholder agreements that provide for inactivity fees. Similar fees are assessed by other financial intermediaries on dormant

or low account balances. For example, many banks charge dormant account fees or monthly service fees that are waived if the account exceeds a minimum balance. *See, e.g.*, *Hughes v. Wells Fargo Bank, N.A.*, 2011 WL 1370649, at *5 (C.D. Cal. Mar. 17, 2011) (bank imposing $13 monthly service fee unless customers maintain $2,000 balance in checking); *Roling v. E*Trade Sec. LLC*, 860 F. Supp. 2d 1035, 1037 (N.D. Cal. 2012) (financial services company charging $25 quarterly inactivity fee).

The Complaint alleges class action administrators engage the FinTechs to help administer class settlements. *See, e.g.*, Compl. ¶ 182. To secure contracts, FinTech Defendants may offer discounts or rebates off the face value of the prepaid cards they distribute to class members. *See, e.g., id.* ¶¶ 157, 159, 162. For example, if an administrator engaged a FinTech to distribute $1,000,000 of prepaid cards at a 3% discount, the administrator would pay the FinTech $970,000 for the cards (97% of $1,000,000). As with any vendor's discount, a discounted price reduces the FinTechs' compensation: a FinTech offering this 3% discount would need to collect $30,000 in fees just to break even. Like other businesses, FinTechs discount to compete for work.

## III.    Plaintiffs' claims against the FinTech Defendants

Plaintiffs assert that class action administrators receive compensation from Bank Defendants and FinTech Defendants that the Administrator Defendants allegedly do not disclose to courts or class members. The Complaint spans over 200 pages and asserts eleven causes of action, one of which (RICO) is divided into ten sub-counts. Despite its prolixity, the Complaint is most remarkable for what it does *not* allege about the FinTechs. Although it asserts that the Administrator Defendants and Bank Defendants owe fiduciary duties to courts and to class members, *e.g., id.* ¶¶ 82–84, 103–109, Plaintiffs conspicuously do not allege that the FinTech Defendants owe any such duty. Nor do Plaintiffs allege that the FinTech Defendants made any false or misleading statements to courts, to class members, or to anyone else. *See id.* ¶¶ 370–81.

Plaintiffs contend there are two distinct "tracks" through which Administrator Defendants earn undisclosed compensation. The first, which Plaintiffs call the "Bank Interest Track," involves interest earned on class action settlement funds that Administrator Defendants deposit with Bank Defendants. *Id.* ¶¶ 121–31. The Complaint does not allege that the FinTechs had any role in this track. Nor do Plaintiffs allege that the FinTech Defendants knew or had reason to know about interest banks pay on accounts holding settlement funds.[5]

The second track alleged in the Complaint is the so-called "Digital Disbursement Track." *Id.* ¶¶ 153–69. According to Plaintiffs, when prepaid digital cards are distributed to class members, an amount equal to each card's face value is withdrawn from the settlement fund. *See id.* ¶ 155. Those amounts are loaded onto the corresponding prepaid cards, allowing class members who receive the cards to make purchases without requiring the card issuer or any other party to extend credit to the buyer or advance funds to the seller. The Complaint alleges that Administrator Defendants benefit when FinTechs provide discounts off the amounts loaded onto the prepaid cards. *See id.* ¶ 538. And, according to Plaintiffs, the Administrator Defendants do not disclose these benefits to courts or class members. Whether the Administrator Defendants disclosed or had a duty to disclose this to courts or class members (which the Administrators dispute) has nothing to do with the FinTech Defendants. And there cannot be any question that the FinTech Defendants can do whatever they want with their own compensation, including providing a discount to the Administrator Defendants to secure business over other competitors.

---

[5] Plaintiffs allege that one of the FinTech Defendants, Digital Disbursements, is a subsidiary of one of the Bank Defendants, Western Alliance. *See* Compl. ¶¶ 55, 137. But Plaintiffs do not allege that Digital Disbursements or any other FinTech Defendant was involved in the purported Bank Interest Track. *See id.* ¶ 137 ("Western Alliance's role as a Bank Defendant is addressed in the section above. Digital Disbursements' role as a FinTech Defendant is addressed in this section.").

The Complaint alleges eleven so-called "Material Omissions and Predicate Acts," which Plaintiffs refer to as the "Architecture of Concealment." *Id.* ¶¶ 366–69, 371–81. Eight of the purported material omissions concern statements that other parties (never FinTechs) made to courts, class members, or state attorneys general. *See id.* ¶¶ 371–77, 379. The Complaint does not allege that the FinTech Defendants had any role in preparing these statements, any influence over their content, or any review of them before they were made. The other three so-called "predicate acts" involve pure omissions. Two of those omissions concern only Bank Defendants and/or Administrator Defendants; they do not mention FinTech Defendants at all. *See id.* ¶¶ 378, 381. The only pure omission allegation that involves FinTechs asserts that "master service agreements" between FinTech Defendants and Administrator Defendants are not filed in the "court record" of "case[s] the Administrator Defendants administered." *Id.* ¶ 380. But Plaintiffs do not allege that the FinTechs had any duty to file anything with any court or to make any disclosure to class members.

In fact, Plaintiffs concede the FinTechs had no fiduciary duty running to class members. Plaintiffs' fiduciary allegations and breach claims run exclusively to the Administrator and Bank Defendants, *see, e.g.*, *id.* ¶¶ 83, 109, 359–65, 456–63—the FinTechs are conspicuously absent. Plaintiffs themselves supply the rule that dooms their fraud-based claims against the FinTechs: "a party with no fiduciary or similar obligation may generally remain silent without committing fraud." *Id.* ¶ 383.

Of the eleven counts in the Complaint, seven are asserted against the FinTechs. Three of those counts accuse the FinTechs of fraud: fraudulent concealment (Count III), fraud (Count IV), and RICO (Count VI). Plaintiffs sub-divide their single RICO count into ten sub-counts, Counts VI-A through VI-J, comprising four "primary" RICO claims and six variations. All depend on

7

predicate acts sounding in fraud, specifically mail and wire fraud. They also assert money laundering as a predicate act, relating to purported proceeds of that fraud.

The remaining four claims allege that the FinTechs aided or conspired with other defendants to make purportedly incomplete disclosures, though the Complaint does not allege that the FinTechs had any influence or control over, or even reviewed or were aware of, the challenged statements. Those claims are aiding and abetting breach of fiduciary duty (Count II), aiding and abetting fraud (Count V), civil conspiracy (Count VII), and unjust enrichment (Count X). These claims fail because they rely on deficient claims of fraud and breach of fiduciary duty against the other defendants. *See* Admin. Defs.' Mot. § I, III; Bank Defs.' Mot. §§ I, II. The unjust enrichment theory rests on the conclusory allegation that all defendants were enriched by "concealed schemes," but it depends on the same deficient fraud and fiduciary-duty allegations and ignores that the FinTechs were paid for legitimate services, not unjustly enriched at any plaintiff's expense. In any event, while the point is not necessary to resolve this motion and the FinTechs will establish it at a later stage if needed, the inactivity fees are lawful and are disclosed to and accepted by class members in the cardholder agreements they enter for a prepaid card.[6]

### LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept

---

[6] Plaintiffs assert four other claims against the Administrator Defendants and/or the Bank Defendants, but not against the FinTech Defendants. *See* Compl. Counts I, VIII, IX, XI.

legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns. Corp*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Rule 9(b) applies to Plaintiffs' claims that sound in fraud. It governs Plaintiffs' fraudulent-concealment and fraud claims (Counts III and IV), their aiding-and-abetting-fraud claim (Count V) and their RICO claims (Count VI), each of which is predicated on the same alleged fraudulent scheme. *See Silverman v. Weil*, 662 F. Supp. 1195, 1200 (D.D.C. 1987) (stating that Rule 9(b) applies to aiding and abetting fraud), *aff'd*, 839 F.2d 824 (D.C. Cir. 1988); *Adler v. Loyd*, 496 F. Supp. 3d 269, 279 (D.D.C. 2020) (stating that Rule 9(b) applies to RICO claims predicated on fraud). Rule 9(b) requires a plaintiff to allege "'the time, place, [and] content'" of the alleged fraud, identify the "individuals allegedly involved in the fraud," and state "'what was retained or given up as a consequence of the fraud.'" *U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1255–56 (D.C. Cir. 2004) (citation omitted).

A 12(b)(1) motion to dismiss challenges a court's subject-matter jurisdiction, including for lack of Article III standing, and requires the court to "scrutinize the plaintiff's allegations more closely . . . than it would under" a 12(b)(6) motion. *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). Plaintiffs bear the burden to establish jurisdiction. *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936)).

## ARGUMENT

### I.   Plaintiffs' fraud-based claims against the FinTech Defendants fail

Counts III and IV plead fraudulent concealment and fraud, and the Count VI RICO claims rest entirely on predicate acts of mail and wire fraud. Each rests on the same core allegations, and each must satisfy Rule 9(b). None does. The Complaint identifies no false or misleading statement by any FinTech Defendant, alleges no reliance by any class member on anything a FinTech Defendant said, and pleads no duty that would make a FinTech Defendant's silence actionable.

Plaintiffs concede as much, alleging that others made the challenged disclosures and that only a party with a duty to speak can commit fraud by omission. That defeats every fraud-based claim, because each depends on conduct the FinTech Defendants did not engage in and a duty they did not owe. The RICO claims also fail for the independent reasons stated below.

### A.    Plaintiffs fail to state claims against the FinTech Defendants for fraudulent concealment (Count III) and fraud (Count IV).

Plaintiffs' fraudulent concealment and fraud claims fail for a threshold reason: the Complaint never pleads a fraudulent statement or omission by any FinTech Defendant. Plaintiffs do not identify a single false statement by a FinTech Defendant to any class member; any FinTech communication that any class member saw, heard, or relied upon; any affirmative act by a FinTech Defendant that prevented any class member from discovering information; or any relationship imposing on a FinTech Defendant a duty to disclose its compensation to class members. Instead, the Complaint alleges that the Administrator Defendants made the relevant bids, proposals, declarations, distribution plans, fee applications, post-distribution accountings, and CAFA notices, and then attempts to extend those alleged misstatements and omissions to the FinTech Defendants on the theory that they supplied payment products that made the Administrators' alleged scheme possible. That is not fraud.

Rule 9(b) requires much more. A plaintiff asserting fraud must plead "'the time, place, [and] content'" of the alleged fraud, "identify [the] individuals allegedly involved in the fraud," and state "'what was retained or given up as a consequence of the fraud.'" *U.S. ex rel. Williams*, 389 F.3d at 1255–56 (citation omitted). That requirement is defendant-specific. Plaintiffs cannot plead fraud against "the FinTech Defendants" as a group, or by alleging that the FinTechs generally designed payment arrangements used by someone else. They must allege what each FinTech Defendant said or concealed, to whom, when, where, and how that alleged deception caused

reliance and injury. They do not do so. Counts III and IV should be dismissed, including for the reasons stated by the Administrator Defendants. *See* Admin. Defs.' Mot. § III.B.[7]

> **1.     Plaintiffs' fraud claim (Count IV) fails because Plaintiffs identify no affirmative misrepresentation by, nor reliance on, the FinTech Defendants.**

The Complaint's fraud claim against the FinTech Defendants does not identify a single affirmative misrepresentation any FinTech Defendant made to any class member. The communications Plaintiffs identify as allegedly "materially false"—"class settlement notices," information posted on "class settlement Websites," and "formal submission[s]" to courts, "presenting settlement terms," Compl. ¶¶ 483–84—are all alleged to have been made by the Administrator Defendants, who purportedly "knew the falsity of their representations, or recklessly disregarded it," *id.* ¶ 487, and made "false and misleading statements and omissions" on which Plaintiffs claim to have "relied," *id.* ¶ 490. Not one is attributed to a FinTech Defendant.

That misattribution dooms both elements under Rule 9(b): no misrepresentation by a FinTech Defendant, and no reliance on one. *See United States ex rel. PCA Integrity Assocs., LLP*

---

[7] The Complaint does not identify which state's law governs Plaintiffs' fraud-based claims, and the Court need not resolve that question here. *See, e.g.*, *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 847–48 (D.D.C. 1996) (declining to "engage in a choice of law analysis [at the motion to dismiss stage] because the laws of the interested states . . . produce the same result when applied to the facts"). Although the elements of fraud and fraudulent concealment vary in precise formulation across jurisdictions, every potentially applicable state requires, at minimum, defendant-specific deceptive conduct, reliance, and injury—and where fraud is premised on omission, some relationship, duty, partial disclosure, or affirmative act that renders silence actionable. *See In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 223–24 (E.D. La. 1998) (cataloguing variations). This Motion does not turn on any variation among state formulations because the Complaint fails to allege *any* actionable misrepresentation, concealment, omission, duty, or reliance as to the FinTech Defendants under potentially applicable laws. *See* Admin. Defs.' Mot. § III.B. To the extent choice of law bears on the viability of Plaintiffs' fraud-based claims, that question is properly reserved for class certification. *See, e.g.*, *Parker v. Bank of Am., N.A.*, 99 F. Supp. 3d 69, 78 n.7 (D.D.C. 2015) ("No class action is proper unless all litigants are governed by the same legal rules.").

*v. NCO Fin. Sys., Inc.*, 2020 WL 686009, at \*23 n.25 (D.D.C. Feb. 11, 2020) (explaining that a complaint alleging fraud across corporations should specify "which individuals took action within each distinct corporate entity, and how these actions relate to the particular allegations of fraud," as well as "which factual allegations relate to which charges against which Defendant(s)"); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) ("[R]eliance only on representations made by others cannot itself form the basis of liability." (citation omitted)); *Morris v. Castle Rock Ent., Inc.*, 246 F. Supp. 2d 290, 296–97 (S.D.N.Y. 2003) (third-party reliance was insufficient to sustain a fraud claim under California or New York law); *McWreath v. Cortland Bank*, 2012 WL 2522933, at \*11 (Ohio Ct. App. June 29, 2012) (fraud cannot be predicated on statements made to a third party other than the plaintiff); *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016) (fraud "does not occur where . . . the misrepresentations were not communicated to, or relied on, by plaintiff"). Plaintiffs must individually link each FinTech to a specific, actionable act. The only allegation Plaintiffs offer to attempt to bridge the gap is the group pleading that the FinTech Defendants "actively participated in this fraud by designing and maintaining the financial arrangements that made Administrator Defendants' misrepresentations possible." Compl. ¶ 489. But Rule 9(b) does not let Plaintiffs transform a vendor relationship into fraud by alleging that the vendor's product somehow made someone else's alleged misstatement "possible." *See Brumfield v. Merck & Co.*, 2018 WL 2277835, at \*5–6 & n.7 (E.D.N.Y. May 18, 2018) (dismissing fraud claims against co-defendant where complaint "pin[ned] the misrepresentations and omissions" on a different defendant and failed to identify any specific misrepresentation by the co-defendant); *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements").

12

**2.      Plaintiffs' fraudulent concealment claim (Count III) fails as to the FinTech Defendants because Plaintiffs plead no affirmative concealment and no duty to disclose.**

Plaintiffs' fraudulent-concealment claim fails for the same reason. Whether framed as active concealment or nondisclosure, fraudulent concealment requires defendant-specific conduct that makes the defendant's silence or omission deceptive. Plaintiffs must allege that the FinTech Defendants concealed material information by either (1) affirmatively acting to conceal the information from class members or (2) failing to disclose material information they had a duty to disclose.[8]

Plaintiffs invoke both forms. They allege active concealment in some paragraphs, *see* Compl. ¶¶ 367, 468, 476, and silence in the face of an asserted disclosure duty elsewhere, *see id.* ¶ 485. Both theories fail. Plaintiffs allege no affirmative act of concealment directed at class members by any FinTech Defendant, no relationship that would make silence actionable, no fiduciary, common law, statutory, or regulatory duty requiring disclosure, no partial statement by any FinTech Defendant requiring correction, and no reliance by any class member on anything a FinTech Defendant said or failed to say.

> i.      *Plaintiffs allege no affirmative act of concealment by any FinTech Defendant.*

---

[8] In many jurisdictions, fraudulent concealment requires a duty to disclose. *See, e.g.*, *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40 (2024); *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 250 (N.Y. App. Div. 2003) (New York); *Blon v. Bank One, Akron, N.A.*, 519 N.E.2d 363, 367–68 (Ohio 1988). However, some jurisdictions, such as Arizona and Delaware, do not require a duty to disclose, but do require affirmative concealment. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 34 n.22, 35 (Ariz. 2002) (en banc) (requiring "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter" but not a duty to disclose); *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 773–74 (Del. Ch. 2014) (permitting fraudulent concealment based either on "deliberate concealment of material facts" or on "silence in the face of a duty to speak," which requires a fiduciary, contractual, or similar duty).

The Complaint fails to allege any affirmative act of concealment by any FinTech Defendant. Plaintiffs do not allege that any FinTech Defendant filed anything with any court, submitted any document or notice to any class member, withheld any document a class member requested, created any entity to hide payments, or otherwise took any affirmative step to prevent class members from discovering information. Quite the opposite, the FinTechs were "third-party fintech vendor[s]" used by the Administrator Defendants "to facilitate distribution of settlement funds." Compl. ¶¶ 171, 186, 202, 217, 233, 247, 257, 277, 317. The FinTechs allegedly "targeted court-appointed settlement administrators as their client base," *id.* ¶ 468, and "marketed their platforms" to those administrators, *id.*—not to class members. It was the Administrator Defendants who allegedly "routed settlement funds through" the FinTechs' prepaid cards, *id.* ¶ 4.[9]

To the extent the Complaint identifies affirmative acts of concealment, it attributes them to the Administrator or Bank Defendants—not the FinTechs. *See id*. ¶¶ 124, 166, 405, 409, 426, 431, 476. And even those allegations typically concern alleged failures to make disclosures to courts, not active concealment from class members. *See, e.g.*, *id.* ¶¶ 124, 405, 476.

---

[9] Nor do Plaintiffs sufficiently distinguish among the FinTech Defendants. Plaintiffs' allegation that "Administrator Defendants routed settlement funds" through prepaid cards "issued by the FinTech Defendants" is nonsensical as applied to Digital Disbursements. *Id.* ¶ 4. Digital Disbursements does not issue prepaid cards; it operates a payment-selection portal through which settlement recipients may choose from among available payment options. Plaintiffs' "exemplar" settlements allege that Digital Disbursements worked with *other* FinTechs in facilitating the distribution of settlement funds, without adequately explaining the different roles they played in the settlements. *See, e.g.*, *id.* ¶¶ 171, 186, 233 (alleging that Administrator Defendants used both Digital Disbursements and Blackhawk in *In re T-Mobile*, *In re Yahoo! Data Breach*, and *In re Juul* settlements to "facilitate distribution of settlement funds"). Such allegations are insufficiently particularized under Rule 9(b). *See United States ex rel. PCA Integrity Assocs., LLP*, 2020 WL 686009, at *23 n.25 (explaining that complaint alleging fraud across corporations should specify "which individuals took action within each distinct corporate entity, and how these actions relate to the particular allegations of fraud").

The FinTech-specific allegations are different in kind. The Complaint alleges that the FinTech Defendants:

- "designed and marketed the breakage-extraction program knowing that concealment was the condition of its continued operation," *id.* ¶ 367;

- "designed their compensation arrangements to be invisible to supervising courts," *id.* ¶ 468; and

- "structured their payment platforms and governing agreements to characterize breakage retention as a standard feature of prepaid card products rather than a diversion of class member funds," *id.* ¶ 476.

Those allegations do not plead active concealment from Plaintiffs. They plead, at most, the design of commercial arrangements between payment vendors and administrators—not any act suppressing information from class members or preventing them from learning any fact. Generalized allegations that a defendant "designed" a product or arrangement "to be invisible" do not satisfy Rule 9(b)'s particularity standard. *See Humana, Inc. v. Biogen, Inc.*, 666 F. Supp. 3d 135, 146 (D. Mass. 2023), *aff'd*, 126 F.4th 94 (1st Cir. 2025) (generalized allegations that defendant "concealed its arrangements" with purported co-conspirators were insufficient); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 992–93 (N.D. Cal. 2020) (allegations of private acts and agreements are insufficient to adequately plead affirmative concealment).

Nor can Plaintiffs impute the Administrators' alleged concealment to the FinTech Defendants. The Complaint alleges, at most, that the FinTechs were aware of the commercial terms of their own arrangements with the Administrators, *see* Compl. ¶¶ 367, 468—not that any FinTech took steps to hide those terms from class members. But awareness of one's own commercial arrangements is not itself an affirmative act of concealment. *See, e.g.*, *Sec. Inv. Prot. Corp. v. BDO Seidman, L.L.P.*, 95 N.Y.2d 702, 709–11 (2001) (no fraud where liability depended on independent actions of third party rather than defendant's own misrepresentations); *Terrell v. Childers*, 920 F.

15

Supp. 854, 861 n.5 (N.D. Ill. 1996) (rejecting attempt to impute concealment to moving defendant where the complaint "details only how the [other] Defendants allegedly concealed the facts, and does not specify [the moving defendant's] involvement in the concealment").

Allegations that the FinTech Defendants' "governing agreements" characterized breakage retention as a "standard feature of prepaid-card products," Compl. ¶ 476, do not cure the defect—no class member is alleged to have seen or relied on those private contracts. *See Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, at \*7 (N.D. Cal. June 20, 2013) ("a plaintiff must assert affirmative acts of concealment; e.g., that the defendant 'sought to suppress information in the public domain or obscure the [plaintiff's] ability' to discover it" (citation omitted)).

> ii.     *Plaintiffs allege no duty requiring the FinTech Defendants to disclose their compensation arrangements to class members.*

Plaintiffs' nondisclosure theory fails for an independent reason: the Complaint alleges no duty requiring the FinTech Defendants to disclose their costs or compensation to class members. Silence is actionable only if the defendant had a duty to speak—as Plaintiffs concede, *see* Compl. ¶ 383—and such a duty arises only where (1) a fiduciary relationship exists; (2) a defendant knows the plaintiff is acting under a mistaken understanding of facts basic to the transaction; or (3) a defendant's own prior partial disclosure creates a misleading impression that requires correction. *See Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995). Plaintiffs have failed to plead any of the three.

*First*, Plaintiffs do not allege any fiduciary relationship between the FinTech Defendants and putative class members. A fiduciary relationship requires "a 'special confidential relationship' that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind." *Krukas v. AARP, Inc.*, 458 F. Supp. 3d 1, 8 (D.D.C. 2020) (citation omitted). The Complaint alleges nothing of the sort.

16

Plaintiffs reserve their fiduciary allegations for the Administrator and Bank Defendants, *see* Compl. ¶¶ 82, 103, while alleging the FinTechs are "third-party fintech vendor[s]" "used to facilitate" distributions, *id.* ¶¶ 171, 186, 202, 217, 233, 247, 257, 277, 317. Plaintiffs bring their breach-of-fiduciary-duty count against the Administrator and Bank Defendants alone, *see id.* ¶¶ 456–63, and even in their aiding-and-abetting count allege only that the FinTechs had "actual knowledge of the Administrator Defendants' [purported] fiduciary obligations," *e.g., id.* ¶ 468— not that the FinTechs owed any such duty themselves. Having acknowledged that the FinTech Defendants are non-fiduciary vendors, Plaintiffs lack any hook on which to hang a fiduciary relationship that would give rise to a duty to disclose. *See Krukas*, 458 F. Supp. 3d at 8 (no fiduciary relationship where plaintiffs failed to allege any "special relationship of trust or confidence" with defendant, a "behind-the-scenes" subsidiary); *Steele v. Isikoff*, 130 F. Supp. 2d 23, 37 (D.D.C. 2000) (relationship "simply too fleeting and too superficial to give rise to a fiduciary duty").

*Second*, Plaintiffs do not allege any transaction or mistaken understanding that could make the FinTechs' silence actionable. Fraudulent concealment presupposes a transactional relationship. *See* Restatement (Second) of Torts § 551 (A.L.I. 1977) (addressing nondisclosure by a "party to a business transaction"). Courts routinely dismiss concealment claims when a plaintiff fails to allege such a relationship. *See Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 889 (E.D. Cal. 2019) ("[T]o establish liability for fraudulent concealment . . . [plaintiff] must plead facts to demonstrate the existence of some transactional relationship …."); *N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2021 WL 4124950, at *3 n.2 (S.D.N.Y. Sept. 9, 2021) (fraudulent concealment did not apply to officers of a bank who "were not parties to the transaction between Plaintiff and [the borrower]"); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372,

454 (S.D.N.Y. 2017) (dismissing fraudulent concealment claims because "none of the . . . Plaintiffs interacted with [defendant] directly"); *N. Penn Towns, LP v. Concert Golf Partners, LLC*, 2022 WL 2985632, at *23 (E.D. Pa. July 28, 2022) (dismissing concealment claim because defendants "were not parties to a business transaction" with plaintiffs). Here, Plaintiffs do not allege that any class member selected a FinTech platform, negotiated with a FinTech, entered into an agreement with a FinTech, or received any representation from a FinTech before receiving a settlement distribution. The Complaint alleges the opposite: the FinTechs were "third-party fintech vendors" whose "client base" was the Administrators, not class members. Compl. ¶¶ 171, 468.

Even setting aside the absence of a transactional relationship, the FinTechs' compensation arrangements are not facts "basic to" any interaction with class members. "Basic" facts are those whose nondisclosure amounts to "swindling, in which the plaintiff is led by appearances into a bargain that is a trap." Restatement (Second) of Torts § 551(2)(e) cmt. 1 (A.L.I. 1977). The Complaint alleges no bargain between the class and the FinTechs—class members passively received court-approved settlement payments through a distribution mechanism the Administrators selected. To borrow an example from the Restatement of Torts, the compensation arrangements between a payment vendor and the Administrator are no more "basic to" the class member's receipt of a prepaid card than a violin dealer's cost basis is "basic" to a buyer's purchase. *See* Restatement (Second) of Torts § 551 cmt. k, illus. 6 (A.L.I. 1977) (no duty to disclose where the fact—a violin priced at $100 was a genuine Stradivarius worth $50,000—was not "basic to" the transaction); *see also N. Penn Towns, LP*, 2022 WL 2985632, at *25 (counterparty's undisclosed profit-sharing was not "basic to" the other side's transaction); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 464 (S.D.N.Y. 2016) ("commercial merchants generally are under no obligation to disclose their underlying costs or profits" (citation omitted)), *aff'd*, 759

F. App'x 42 (2d Cir. 2019); *Mursau Corp. v. Fla. Penn Oil & Gas, Inc.*, 638 F. Supp. 259, 261–62 (W.D. Pa. 1986) (nondisclosure of finder's commission not actionable), *aff'd sub nom.*, *Fla. Pen Oil & Gas, Inc. v. Murray*, 813 F.2d 396 (3d Cir. 1987).

Nor does the Complaint allege that any FinTech knew any class member was acting under a mistaken understanding about the FinTechs' compensation—an independent prerequisite for this duty. *See Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 156 (2d Cir. 1995) (defendant's knowledge of plaintiff's mistake is an "indispensable" element of the claim).

*Third*, Plaintiffs do not allege any partial disclosure by a FinTech Defendant that required correction. The half-truth doctrine imposes a duty to correct only the defendant's own prior "partial or ambiguous" statements. *See* Restatement (Second) of Torts § 551(2)(b) (A.L.I. 1977). It does not require a *non*-fiduciary defendant to supplement or correct another defendant's statements.

The Complaint catalogues 11 "illustrative" omissions supporting its "half-truth" theory. Compl. ¶¶ 370–382. None identifies a statement a FinTech Defendant allegedly made to the putative class. The alleged omissions are attributed to the Administrator Defendants, *id.* ¶¶ 371–77, 379, or to the Bank Defendants, *id.* ¶¶ 378, 381. The only pure omission involving the FinTechs, Omission No. 10, alleges that the master service agreements between the Administrators and FinTechs were not filed in any court record—but the Complaint never alleges the FinTechs had any obligation to file anything with any court. *Id.* ¶ 380.

The only FinTech-specific communications that the Complaint references are marketing materials promoting digital payments, *see id.* ¶¶ 136, 141, 143–145, 149–50, but Plaintiffs do not allege that they relied on, or even saw, those alleged communications. *See Martell v. Gen. Motors*

*LLC*, 492 F. Supp. 3d 1131, 1143 (D. Or. 2020) (explaining that "a plaintiff must show that they heard the half-truth" to establish reliance on a half-truth (citation omitted)); *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 628 (S.D.N.Y. 2006) (dismissing fraud claim because the plaintiffs did "not allege that they themselves ever relied on any misrepresentation").

> ### iii. The FinTech Defendants' alleged "role in the distribution chain" does not create a duty to disclose.

Unable to identify any fiduciary relationship, partial disclosure, or affirmative act of concealment, Plaintiffs invent a novel duty theory. They allege that the FinTech Defendants "owed a duty of disclosure arising from their role in the distribution chain and from the regulatory framework governing QSF distributions under 26 C.F.R. § 1.468B-2(d)." Compl. ¶ 485. Neither source creates any such duty. For one, Plaintiffs nowhere substantiate their supposed "distribution chain" theory. And second, the full text of Section 1.468B-2(d) provides that "[a]mounts that are distributed by a qualified settlement fund to, or on behalf of, a transferor or a claimant are not deductible by the fund." That is a tax deductibility rule. It says nothing about disclosure obligations, prepaid cards, digital payment vendors, or communications to putative class members. A regulation telling a settlement fund whether its distributions are deductible does not create a common law disclosure duty.

## B.   Plaintiffs fail to plead their civil RICO claims with particularity.

Unable to plead a standalone claim of fraud or fraudulent concealment against the FinTech Defendants, Plaintiffs resort to RICO, the "litigation equivalent of a thermonuclear device." *Jacovetti L., P.C. v. Shelton*, 2020 WL 5211034, at *1 (E.D. Pa. Sept. 1, 2020); *see also Bell v. Hubbert*, 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007) ("the 'mere assertion of a RICO claim'" carries "an almost inevitable stigmatizing effect" (citation omitted)). And Plaintiffs are not content to assert just one civil RICO claim—they assert *ten* separate RICO sub-claims spanning every

20

conceivable permutation of defendants. For a litany of independently sufficient reasons, Plaintiffs'

RICO claims against the FinTechs are all defective and should be dismissed, including for the

reasons stated by the Administrator Defendants. *See* Admin. Defs.' Mot. § III.F–G.

### 1. Plaintiffs' "primary" RICO claims each fail (Counts VI-A through VI-D).

Plaintiffs assert four "primary" RICO claims against the FinTech Defendants, one for each

Administrator Defendant. Each is doomed by the same string of pleading defects. A civil RICO

claim requires a "predicate act[]" of racketeering, a "pattern" of racketeering activity conducted

by a RICO "enterprise," and a direct causal link between the alleged injuries and the defendant's

conduct. *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015) (citation omitted); *E. Sav.*

*Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 11-12, 15 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C.

Cir. 2015). Because Plaintiffs assert the predicate acts of mail and wire fraud (as well as laundering

of proceeds from this alleged fraud), they must satisfy Rule 9(b)'s heightened pleading standard—

a requirement the D.C. Circuit has held warrants "particular[] scrutin[y]" for these types of claims.

*W. Assocs. Ltd. P'ship ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637

(D.C. Cir. 2001) (citation omitted). Plaintiffs' claims fail at every element.

### i. Plaintiffs plead no "predicate act."

Plaintiffs' "primary" RICO claims against the FinTechs each rest on the alleged predicate

acts of mail and wire fraud, but Plaintiffs never allege that the FinTechs made "use of the mails or

wires"—much less, use for purposes of executing a "scheme to defraud." *Ambellu v. Re'ese*

*Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 77 (D.D.C. 2019), *aff'd*, 2020 WL

873574 (D.C. Cir. Feb. 14, 2020). Every predicate act in the Complaint is attributed to a non-

FinTech Defendant. *See* Compl. ¶ 505 (Angeion), *id*. ¶ 513 (Epiq), *id*. ¶ 519 (JND), *id*. ¶ 526

(Kroll). And as established above, the FinTechs had no duty to speak—so their silence cannot supply the predicate fraud.[10] *See supra* § I.A.2.ii–iii.

Plaintiffs' alternative money laundering theory fails for the same reasons. Money laundering requires that the funds "must in some way be associated with 'unlawful activity.'" *Hourani v. Mirtchev*, 796 F.3d 1, 10 (D.C. Cir. 2015) (citing 18 U.S.C. § 1956). By Plaintiffs' own framing, the purported money laundering occurred only with "each transfer of the *proceeds of wire and mail fraud*." Compl. ¶ 391 (emphasis added); *see also id*. ¶ 166 (similar). But Plaintiffs do not allege the FinTechs committed any mail or wire fraud, and the only proceeds the FinTechs receive—"float income, interchange fees, inactivity fees, and breakage revenues," *id.* ¶¶ 373–74—are lawful fees disclosed to and accepted by class members. Plaintiffs do not allege otherwise. Without "illegally obtained funds," there is no dirty money to launder. *Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 62 n.6 (D.D.C. 2019), *aff'd*, 801 F. App'x 780 (D.C. Cir. 2020).

Plaintiffs also fail to plead that the FinTechs had the requisite *mens rea* for this criminal offense. Money laundering requires a criminal intent "to conceal or disguise the source or the ownership of [unlawfully obtained] money." *United States v. Law*, 528 F.3d 888, 896 (D.C. Cir. 2008). Beyond failing to allege that the FinTechs engaged in and derived proceeds from mail or wire fraud, Plaintiffs have alleged, at most, that the FinTechs engaged in "transactions . . . for present personal benefit." *Id*.

ii.   *Plaintiffs plead no "pattern" of racketeering activity.*

---

[10] Beyond their failure to even challenge a specific use of the mail or wires, Plaintiffs nowhere allege that the FinTech Defendants used the mail or wires with a "specific intent to defraud." *MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 728 F. Supp. 3d 89, 110 (D.D.C. 2024) (citation omitted).

Having failed to plead even a single predicate act of racketeering attributable to the FinTechs, Plaintiffs cannot plead at least "two acts of racketeering," as RICO's "pattern" element requires. *See* 18 U.S.C. § 1961(5); *Papageorge*, 31 F. Supp. 3d at 12.

Even had Plaintiffs alleged a predicate act, they would still fail to plead a "pattern." The D.C. Circuit has held that it is "virtually impossible for plaintiffs to state a RICO claim" where they allege "a *single* scheme" that results in a "*single* injury." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (emphases added); *see also Smith v. Fed. Title & Escrow Co.*, 2018 WL 11666412, at *3 (D.D.C. June 21, 2018) ("[I]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice." (citation omitted)). That is precisely what Plaintiffs allege here: a single "Digital Disbursement Track" with a "standardized . . . compensation structure." Compl. ¶¶ 153–69. Plaintiffs' effort to divide this purported scheme into four standalone enterprises (*see* Counts VI-A–D) does not alter the analysis. *W. Assocs. Ltd.*, 235 F.3d at 635 (noting a "vain attempt to make a RICO claim seem more viable by parsing one scheme into multiple schemes"). As the court reasoned in *Western Associates*, "the four schemes are so similar in nature and purpose" that they cannot be "subdivided to establish a RICO claim." *Id*.

   *iii.*  *Plaintiffs plead no racketeering "enterprise."*

Plaintiffs likewise fail to plead that the FinTechs were part of a racketeering enterprise. They plead four distinct enterprises, each pairing a single Administrator with its FinTech and Bank partners. Compl. ¶¶ 501, 510, 516, 522. But in each, Plaintiffs omit the "extra ingredient" that distinguishes a mere pattern of conduct from a RICO enterprise: "organization." *United States v. Perholtz*, 842 F.2d 343, 363 (D.C. Cir. 1988). Plaintiffs allege a formulaic common purpose—to "extract" compensation and "conceal[]" their plot, *see* Compl. ¶¶ 502, 510, 516, 522—but are silent as to the supposed "organization" and "continuity" of each purported enterprise, *Perholtz*,

842 F.2d at 362. There is no allegation that the FinTech Defendants were "participating in the operation or management" of these enterprises. *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1232 (D.C. Cir. 1991) ("Without [such] an allegation … the count does not state a claim for relief.").

The Complaint's nearly 200 paragraphs of illustrative settlements confirm the deficiency. *See* Compl. ¶¶ 171–357. They contain no allegation of improper coordination among the FinTechs, no allegation that the FinTechs even knew of any purported "Bank Interest Track," *id.* ¶¶ 121–31, and no relationship beyond bilateral, arm's length master service agreements between individual FinTechs and individual Administrators—"lawful, unchoreographed free-market behavior," *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1052 (D.C. Cir. 2012). That the FinTechs offered a "standardized" "compensation structure" is not supported by any well-pled allegation, Compl. ¶ 161—and even if it were, similar pricing structures by independent vendors do not alone support a reasonable inference of organized crime. *See RSM Prod. Corp.*, 682 F.3d at 1051–52. Plaintiffs never once suggest that any FinTech Defendant "participated in the conduct of the [alleged] *enterprise's* affairs," as opposed to "just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (cleaned up). Without that lynchpin, Plaintiffs' "claims regarding the specific activities of each defendant . . . are thoroughly unilluminating." *Bates v. Nw. Hum. Servs., Inc.*, 466 F. Supp. 2d 69, 85 (D.D.C. 2006).

### iv.   *Plaintiffs do not plead RICO standing.*

Plaintiffs' primary RICO claims also fail for lack of RICO standing. To establish RICO standing, Plaintiffs must allege that "a RICO predicate offense" was both a "but for" and "proximate cause" of their alleged injuries. *E. Sav. Bank, FSB*, 31 F. Supp. 3d at 11 (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)). And "proximate cause requires some direct relation between the injury asserted and the injurious conduct alleged." *Empire Merchants, LLC v.*

*Reliable Churchill LLLP*, 902 F.3d 132, 141 (2d Cir. 2018) (cleaned up) (quoting *Hemi Grp.*, 559 U.S. at 9). Plaintiffs allege that they were injured by a *series* of "communications" or "material omissions" made by *non*-FinTech Defendants. *See* Compl. ¶¶ 370–81, 505, 513, 519, 526. The FinTechs are not linked directly—or even indirectly—to those alleged predicate acts; and the Administrator's independent and intervening decision regarding what information to provide renders the FinTechs' purported role "too remote" and "indirect[]" for RICO causation. *See Empire Merchants,* LLC, 902 F.3d at 141; *Anderson v. Ayling*, 396 F.3d 265, 270 (3d Cir. 2005) (finding no RICO proximate causation where there was a "long chain of intervening causes" between defendant's conduct and the "one act" that allegedly caused harm).

### 2.    Plaintiffs plead no RICO conspiracy claim (Count VI-E).

Unable to plead a substantive RICO claim against the FinTech Defendants, or any other defendant, Plaintiffs' tag-along RICO conspiracy claim "must fail as well." *Danielsen*, 941 F.2d at 1224, 1232 ("Subsection (d) adds nothing substantive to the law," it makes "it unlawful for any person to conspire to violate any of the provisions of the first three subsections."); *see also Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 28 (D.D.C. 2012) ("[A] RICO violation … is necessary to state a claim for a RICO conspiracy." (internal quotation marks omitted)); *Fay v. Humane Soc'y of U.S.*, 2021 WL 184396, at *11 (D.D.C. Jan. 19, 2021) ("Without a § 1962(c) violation, there can be no conspiracy to violate § 1962(c)"). On this threshold basis alone, Plaintiffs' RICO conspiracy claim against the FinTechs should be dismissed.

Even had Plaintiffs pled a substantive RICO violation against any other defendant, their RICO conspiracy claim against the FinTechs fails. A RICO conspiracy claim requires an agreement between multiple people "to commit a subsection (c) offense" and a showing that the defendant "agreed to further that endeavor." *Son Ly*, 910 F. Supp. 2d at 27–28. Plaintiffs' lone assertion in support of an agreement to commit fraudulent racketeering activity is that the "FinTech

25

Defendant[s] knowingly agreed that *Administrator Defendants* would omit digital payment compensation arrangements from disclosures to courts and class members." Compl. ¶ 529 (emphasis added). But Plaintiffs provide nothing to support that bald assertion. And it would make no difference even if they could support it. The FinTechs admittedly have no disclosure obligations. There is no allegation that the FinTechs drafted, edited, or even reviewed disclosures made by Administrators. The bare assertion that the FinTechs "agreed" that the Administrators would conceal some fact about the Administrators' own compensation in statements made solely by the Administrators is not a conspiracy by the FinTechs to "further that endeavor." *Son Ly*, 910 F. Supp. 2d at 27–28.

### 3.    Plaintiffs' supposed aiding-and-abetting RICO claim (Count VI-F) is a non-existent cause of action.

In yet another permutation of their failed RICO claim, Plaintiffs invent a new cause of action they call "aiding and abetting" RICO violations under 18 U.S.C. § 2. There is no such thing. The "general aiding and abetting statute" that Plaintiffs rely on, 18 U.S.C. § 2, applies only to "federal *criminal* offenses." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181 (1994) (emphasis added), and the Supreme Court just reaffirmed that Congress' omission of aiding and abetting liability from a *civil* statute is "dispositive." *Cisco Sys., Inc. v. Doe I*, 2026 WL 1791225, at *9 (U.S. June 23, 2026) (citing *Cent. Bank of Denver*, 511 U.S. at 177). The civil RICO statute makes no mention of aiding-and-abetting liability "and that silence is enough to settle the issue." *Id.*; *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 277 (D.C. Cir. 2018) ("[t]he key takeaway from *Central Bank* is that when Congress creates a private cause of action, aiding and abetting liability is not included in that cause of action unless Congress speaks to it explicitly"). The circuit courts that have considered this issue in the context of the civil RICO statute have reached the same conclusion. *See, e.g.*, *Rolo v. City Investing Co. Liquidating Tr.*, 155

F.3d 644, 656 (3d Cir. 1998) (affirming dismissal because "a private cause of action for aiding and abetting a RICO violation cannot survive the Supreme Court's decision in *Central Bank of Denver*"); *Eliahu v. Jewish Agency for Isr.*, 919 F.3d 709, 713 (2d Cir. 2019) (similar).

Even if such a claim existed, Plaintiffs have not pled one. Aiding and abetting requires "*knowing* and *substantial* assistance," *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 491 (2023) (emphasis added), and "some independent duty" to act—there is no "liability for mere omissions, inactions, or nonfeasance." *Id.* at 489, 501; *see also Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 292 (2025). Their assertions that the FinTechs "targeted" administrators as clients, "executed" service agreements, provided "financial incentive" to prospective contract partners, and provided revenue "projections," *see* Compl. ¶ 538, describe ordinary commercial conduct—not "conscious and culpable participation" in a crime. *Amazon Servs. LLC v. U.S. Dep't of Agric.*, 109 F.4th 573, 575, 583 (D.C. Cir. 2024).

### 4.    Plaintiffs' "alternative" RICO claims (Counts VI-G and VI-I) fail for the same reasons their "primary" RICO claims fail.

Plaintiffs' "alternative" RICO claims naming the FinTechs, one of which they describe as "a last-resort alternative," fail for all the same reasons their "primary" claims do. *See* Compl. ¶¶ 541, 543. In simply referencing the "predicate acts" described elsewhere in the Complaint—without adding a single allegation—Plaintiffs' claims do not approach the "heightened pleading standard of Rule 9(b)." *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 108 (D.D.C. 2015).

### 5.    Plaintiffs plead no claim for investment of racketeering proceeds (Count VI-J).

The RICO investing claim fails because "Section 1962(a) prohibits [only] the *receipt* and [] subsequent investment of *racketeering proceeds* into an 'enterprise.'" *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union 639*, 883 F.2d 132, 140 (D.C. Cir. 1989) (emphasis added), *on reh'g in part*, 913 F.2d 948 (D.C. Cir. 1990) (en banc). But as detailed above, Plaintiffs

never allege the FinTechs received any proceeds from the purported predicate acts. *See supra* § I.B.1. Without *receipt* of racketeering proceeds, there can be no *investment* of them. *Sandza*, 151 F. Supp. 3d at 109–10 (dismissing where proceeds allegedly invested were not alleged to be "racketeering income"); *see also Guerrero v. Katzen*, 571 F. Supp. 714, 720–21 (D.D.C. 1983) (same).

Equally fatal to Plaintiffs' claim, Plaintiffs have not alleged they were injured by any purported investment, as distinct from any injury from the purported predicate acts. Section 1962(a) requires a standalone "investment-based injury." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993); *see Danielsen*, 941 F.2d at 1229. Plaintiffs plead none—they merely retread the same theory of purported harm underlying their primary RICO claims. *Compare* Compl. ¶ 547, *with id*. ¶ 508; *see Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 43 (D.D.C. 1996) ("It is not sufficient to allege injury flowing from the predicate acts of racketeering" (citation omitted)).

## II.    The Remaining Claims Against The FinTechs Also Fail

### A.    Plaintiffs fail to state claims for aiding and abetting breach of fiduciary duty (Count II) or aiding and abetting fraud (Count V) against the FinTech Defendants.

Plaintiffs' aiding and abetting claims rise or fall on the same elements. Both require (1) a primary wrong by another party, a breach of fiduciary duty for Count II and fraud for Count V; (2) the defendant's actual knowledge of that wrong; (3) knowing and substantial assistance in the wrong; and (4) injury proximately caused by that assistance. *See Smith v. Wells Fargo Bank, N.A.*, 809 F. Supp. 3d 922, 938 (N.D. Cal. 2025); *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169–70 (App. Div. 2003); *see also Twitter, Inc.*, 598 U.S. at 486. The elements are materially the same in every jurisdiction that recognizes civil aiding-and-abetting claims, and the Complaint satisfies none of

them.[11] As a threshold matter, Plaintiffs fail to plausibly allege any underlying wrong by the Administrator Defendants. *See* Admin. Defs. Mot. § III.A–B; *In re Lehman Bros. Sec. & ERISA Litig.*, 903 F. Supp. 2d 152, 192 (S.D.N.Y. 2012) (dismissing aiding-and-abetting claims against defendants because plaintiffs failed to adequately state a claim for the underlying fraud); *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371, 405 (Bankr. D. Del. 2022) (same). But even assuming an underlying wrong, the Complaint fails to allege actual knowledge, substantial assistance, or proximate causation as to the FinTechs.

**1.     The Complaint fails to allege that the FinTech Defendants had actual knowledge of any underlying wrong.**

Aiding-and-abetting liability requires actual knowledge of the primary violation; constructive knowledge is not enough. *See Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 666 (6th Cir. 2010); *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014). Even "well-founded—but unconfirmed—suspicions" do not suffice. *In re Sharp Int'l Corp.*, 302 B.R. 760, 771 (E.D.N.Y. 2003), *aff'd*, 403 F.3d 43 (2d Cir. 2005).

For the fiduciary duty claim, a plaintiff must allege both actual knowledge of the fiduciary relationship *and* actual knowledge of the breach. *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 144–45 (S.D.N.Y. 2010) (dismissing aiding-and-abetting claim for failure to allege "actual knowledge" of breach), *aff'd in part*, 431 F. App'x 17 (2d Cir. 2011), *aff'd*, 651 F.3d 268 (2d Cir. 2011); *Miles Farm Supply*, 595 F.3d at 666 (same). The Complaint alleges neither with factual support. It nominally asserts that the FinTechs had "actual knowledge" of the Administrator Defendants' fiduciary status, *see* Compl. ¶ 468, but the facts offered to back it describe an ordinary commercial relationship: the FinTechs designed a commercial product and

---

[11] To the extent certain states do not recognize civil aiding-and-abetting claims, Plaintiffs' two aiding and abetting claims necessarily fail.

"targeted" administrators as their "client base," including by "marketing" their services as revenue-generating, *id.* ¶¶ 468, 470—things every profit-seeking merchant does. *See Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1153 (2005) (allegations were "too generic" to satisfy the actual-knowledge requirement).

The Complaint emphasizes a November 2, 2020 email from Blackhawk, *see* Compl. ¶¶ 157, 468, but it says nothing about what an administrator was obligated to disclose (much less did disclose) to any court. At most, these allegations show the FinTech Defendants knew and touted the commercial terms of their own agreements. *See Krys*, 749 F.3d at 129–31 (no actual knowledge where the complaint alleged the participants knew every other feature of the deals but never alleged they knew of the step that made the transactions fraudulent). Even "red flags" are "not the same as actual knowledge." *See Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 631–32 (2d Cir. Nov. 13, 2020) (banks that observed account holders' "shuffling and commingling of investor funds" across numerous accounts had at most constructive knowledge, not actual knowledge, of the account holders' underlying Ponzi scheme).

Even granting Plaintiffs' bare allegation that the FinTechs knew of the Administrator Defendants' purported fiduciary status, knowing your customer is a fiduciary does not equate to knowing that your customer is breaching duties through statements to a court. On that point, the Complaint pleads nothing: no facts showing that any FinTech Defendant knew what a given administrator actually disclosed or withheld from any particular court, or what that administrator's disclosure obligations to that court were.

Similarly, the Complaint fails entirely to plead plausible, non-conclusory facts showing that each FinTech Defendant actually knew the administrators were making material misrepresentations or actionable omissions. *See Silverman*, 662 F. Supp. at 1200 (dismissing

aiding-and-abetting claim supported by only "conclusory allegations" that defendants were "aware of the fraudulent scheme" and "knowingly conspired with and assisted" the primary wrongdoer's scheme). It instead alleges in the most general terms that administrators omitted material facts in "every CAFA notice," "[e]very fee application," and "every administrator declaration" across hundreds of settlements, Compl. ¶¶ 10–11, 370–83, but never identifies any fact showing that a given FinTech Defendant knew of any alleged omission—relying instead on group pleading to attribute undifferentiated knowledge to Blackhawk, Tremendous, and Digital Disbursements collectively. Such generalized allegations do not satisfy Rule 9(b). *See In re Aramid Ent. Fund Ltd.*, 664 B.R. 9, 79 (Bankr. S.D.N.Y. 2024) (holding that plaintiff failed to allege actual knowledge element where allegations relied "on improper group pleading, failing to specify what facts show what knowledge on the part of which Defendant").

### 2.    The Complaint fails to allege substantial assistance.

Substantial assistance requires affirmative, active conduct that assists or enables the wrong; passive or indirect involvement does not suffice, unless the defendant owes a fiduciary duty.[12] *See Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999); *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1120 (S.D. Cal. 2024); *CRT Invs., Ltd. v. BDO Seidman, LLP*, 925 N.Y.S.2d 439, 441 (App. Div. 2011) ("'Substantial assistance' … means more than just performing routine business services for the alleged fraudster…."). Routine commercial services do not meet that standard even when they incidentally aid the alleged wrong. *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 416 (S.D.N.Y. 2021) ("The provision of routine

---

[12] In some jurisdictions, "substantial assistance" may be based on "inaction . . . if the defendant owes a fiduciary duty directly to the plaintiff." *Kaufman*, 760 N.Y.S.2d at 170. Because the FinTech defendants do not owe a fiduciary duty to Plaintiffs, Plaintiffs do not adequately allege substantial assistance on the basis of inaction.

banking services to alleged fraudsters, even if it aids in the commission of the fraud, simply does not qualify as substantial assistance."); *Heinert v. Bank of Am., N.A.*, 410 F. Supp. 3d 544, 552 (W.D.N.Y. 2019) (finding routine banking matters insufficient to support aiding and abetting), *aff'd*, 835 F. App'x 627 (2d Cir. 2020); *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 365 (N.D. Cal. 2015) (without actual knowledge of alleged underlying tort, bank's ordinary commercial activity did not constitute "substantial assistance"). Likewise, conclusory allegations that a defendant provided "financial incentives" to an alleged tortfeasor do not plausibly plead substantial assistance. *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011) (dismissing aiding-and-abetting fraud claim against marketing intermediary that allegedly provided "technical support, suggestions . . . and financial incentives to affiliates" engaged in fraud).

The conduct the Complaint identifies is ordinary commercial activity: designing compensation arrangements, executing master service agreements, building breakage projections, and marketing to administrators. Compl. ¶¶ 470, 496. But supplying a lawful product or service to a customer is not substantial assistance in that customer's wrongful act. Courts have dismissed aiding-and-abetting claims against banks that set up the very escrow accounts through which funds were looted and processed the very wire transfers that moved fraudulently diverted funds— conduct far more proximate to the alleged wrong than anything the Complaint attributes to the FinTechs. *See Premier Cap. Mgmt., LLC v. Cohen*, 2008 WL 4378313, at *5–6 (N.D. Ill. Mar. 24, 2008) (bank that set up escrow accounts, extended overdrafts, and processed transfers engaged in conduct that was "passive and indirect"); *Nigerian Nat'l Petroleum Corp.*, 1999 WL 558141, at *8 (using accounts to perpetrate a fraud, "without more, does not rise to the level of substantial assistance" (citation omitted)). The FinTechs did not touch the mechanism of the alleged breach at all—the concealment supposedly occurred through court filings, class notices, and declarations.

The Complaint does not allege that the FinTech Defendants drafted, reviewed, or submitted any of them.

### 3.    The Complaint fails to allege proximate causation.

Even if knowledge and substantial assistance were adequately pleaded, Plaintiffs must allege that the FinTech Defendants' conduct proximately caused their injury—but-for causation is insufficient. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201–02 (S.D.N.Y. 2006). The Complaint does not.

Plaintiffs' causal chain runs at least five links: (1) the FinTech Defendants designed breakage-retention products and entered master service agreements with the administrators; (2) the administrators independently chose not to disclose those arrangements to the courts; (3) the courts therefore did not investigate; (4) the administrators retained the benefit; and (5) class members received reduced distributions. Every link after the first depends on the independent, discretionary decisions of non-FinTech parties, which defeat proximate causation. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 472 (S.D.N.Y. 2001) (bank whose credit and margin conduct made a Ponzi scheme possible was not a proximate cause of investor losses, even though the scheme "may only have been possible because of" that conduct).

### B.    Plaintiffs' civil conspiracy claim (Count VII) fails.

Civil conspiracy is not an independent cause of action; it is a theory of vicarious liability that requires, at a minimum, (i) an underlying tort, (ii) an actual agreement among the alleged conspirators to commit it, (iii) an overt act in furtherance of the agreement, and (iv) resulting damages. *See, e.g.*, *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994); *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 498 (2002); *Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585, 588 (App. Div. 2010). Plaintiffs' civil conspiracy claim fails for several reasons.

*First*, liability premised on civil conspiracy rises and falls with the underlying tort. *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort."); *see also Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del. 1998) ("civil conspiracy is not an independent cause of action"; "it must arise from some underlying wrong"); *Applied Equip.*, 7 Cal. 4th at 511 ("Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort…."); *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 959 (D. Ariz. 2020) ("A civil conspiracy is not an independent tort."). For the reasons set forth in Section I.A above, the Complaint fails to plead any actionable tort against any FinTech Defendant. The conspiracy claim therefore falls with the underlying claims, including for the reasons stated by the Administrator Defendants. *See* Admin. Defs. Mot. § III.C.

*Second*, even assuming an underlying tort, the Complaint does not plausibly allege that any FinTech Defendant entered into an agreement to commit it. Conspiracy requires an actual agreement to a common tortious plan to commit a tort—mere awareness, acquiescence, or parallel conduct does not suffice. *See Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581–82 (1995); *Fleites* v. *MindGeek S.A.R.L.*, 801 F. Supp. 3d 1011, 1037 (C.D. Cal. 2025) ("The agreement required cannot solely be a business relationship or overlapping commercial interests.").

Plaintiffs' allegations against the FinTech Defendants reduce to bilateral, commercial master service agreements, public marketing of digital-payment products, and generalized references to industry partnerships. *See* Compl. ¶¶ 55, 132–37, 143–47, 161, 468, 551. These are independent, bilateral commercial relationships, not allegations of a conspiratorial agreement. *See*

*Kidron*, 40 Cal. App. 4th at 1590–92 (holding that a defendant's legitimate commercial relationship and performance of its contractual obligations did not establish an agreement to a common plan or intent to participate in the alleged fraud); *State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382, at *14 (Del. Super. Feb. 4, 2019) (holding that the state failed to adequately plead a civil conspiracy under Delaware law where the complaint alleged only parallel conduct by defendants, but did not allege concerted action, an agreement to commit an underlying wrong, awareness of such an agreement, or conduct undertaken pursuant to that agreement).

Plaintiffs concede they "do not know who had the idea first: the FinTech Defendants or the Administrator Defendants," Compl. ¶ 161—an admission that underscores the absence of any pled agreement. Nor does Plaintiffs' assertion that the FinTech Defendants offered "materially identical revenue-sharing terms to multiple competing administrator clients" help their argument. *See id.* ¶ 389(b). At most, Plaintiffs attempt to allege parallel conduct or "overlapping commercial interests," which is insufficient to establish a conspiratorial agreement. *See Fleites*, 801 F. Supp. 3d at 1037. Courts likewise reject conspiracy claims against payment intermediaries based on allegations that they were aware of a customer's misconduct, absent facts showing the intermediary actually agreed to join and further the scheme. *See Albion All. Mezzanine Fund, L.P. v. State St. Bank & Tr. Co.*, 8 Misc. 3d 264, 273 (N.Y. Sup. Ct. 2003) (dismissing conspiracy claim because, although the bank "communicated its suspicions" about a borrower's alleged fraud to a third party, the plaintiffs failed to allege any agreement with the borrower to participate in the fraud).

*Third*, to the extent Count VII rests on fraud or fraudulent concealment, the claim independently fails because Rule 9(b) requires the alleged conspiratorial agreement to be pleaded with particularity. Fed. R. Civ. P. 9(b); *Filler v. Hanvit Bank*, 2003 WL 22110773, at *3 (S.D.N.Y.

35

Sept. 12, 2003) (holding that conspiracy-to-defraud claims are subject to the same Rule 9(b) pleading requirements as common-law fraud claims). Plaintiffs do not identify the time, place, content, participants, or circumstances of any fraudulent agreement between any FinTech Defendant and any Administrator Defendant. *See* Compl. ¶¶ 550–55. Instead, the Complaint invites the Court to infer conspiracy from the existence of standardized commercial offerings and the FinTech Defendants' general marketing of digital-payment products. *See id.* ¶¶ 132–37, 161–62, 551–53. Those are not particularized allegations, and "conclusory" statements that a financial services company participated in wrongful conduct do not suffice. *See Filler*, 2003 WL 22110773, at *2–4 (dismissing conspiracy to defraud claim against bank defendants where plaintiff failed to identify each defendant's specific role in the alleged misconduct and did not plead the "who, where and when" required by Rule 9(b); explaining that "conclusory allegations" are insufficient and "[r]hetoric is not a substitute for specificity"); *In re Swervepay Acquisition, LLC*, 2022 WL 3701723, at *12–14 (Del. Ch. Aug. 26, 2022) (dismissing civil-conspiracy claim because "threadbare" allegations that defendants participated in negotiations, received emails containing alleged misrepresentations, and communicated with transaction parties did not show "more than ordinary partnership in deal negotiations").

*Finally*, Count VII merely repackages the same underlying conduct alleged in Counts II (aiding and abetting breach of fiduciary duties) and V (aiding and abetting fraud). *Compare* Compl. ¶¶ 470, 496, *with id.* ¶¶ 550–55. Where conspiracy and aiding-and-abetting claims overlap, the conspiracy claim can be properly dismissed as duplicative. *See In re Platinum-Beechwood Litig.*, 426 F. Supp. 3d 14, 21 (S.D.N.Y. 2019); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 2016 WL 5719749, at *8 (S.D.N.Y. Sept. 29, 2016).

C.      **Plaintiffs fail to plead unjust enrichment (Count X).**

36

To plead unjust enrichment, Plaintiffs must allege a benefit conferred on the defendant, an impoverishment of the plaintiff, a connection between the two, and circumstances making retention of the benefit unjust. *See, e.g.*, *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726–27 (2000); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011); *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011); *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). In addition, the defendant's benefit must be more than "attenuated" in relation to the plaintiff's loss. *See, e.g.*, *Mandarin*, 944 N.E.2d at 1111; *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58–61 (Del. Ch. 2012) (agreeing that "a plaintiff must show a direct, not attenuated, relationship between the plaintiff's alleged impoverishment and a benefit received by the defendant"). Plaintiffs' unjust enrichment claim should be dismissed for several reasons, including those stated by the Administrator Defendants. *See* Admin. Defs.' Mot. § III.E.

*First*, the claim is duplicative. Unjust enrichment cannot be used as a "catchall cause of action to be used when others fail," and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Plaintiffs' allegations supporting its unjust enrichment claim are based on the same facts as their fraud, aiding-and-abetting, and conspiracy claims: the FinTechs received "breakage" from QSF assets through "concealed schemes alleged throughout this Complaint." *Compare* Compl. ¶ 573 (unjust enrichment allegations), *with id.* ¶ 551 (alleging civil conspiracy to operate "undisclosed compensation programs"); ¶ 496 (alleging FinTechs aided and abetted fraud through "kickback compensation structure"); ¶ 489 (alleging FinTechs committed fraud by "designing and maintaining the financial arrangements that made Administrator Defendants' misrepresentations possible"). Plaintiffs cannot use this quasi-contract claim to remedy their fraud claims.

*Second*, Plaintiffs fail to allege circumstances showing injustice. They allege that it would be "inequitable" for the FinTechs to retain any benefit because it was obtained in breach of fiduciary duties and through fraud. Compl. ¶ 574. But Plaintiffs have failed to plausibly allege any breach of fiduciary duty or fraud. The FinTechs earned their fees by providing legitimate payment services. *See Wuerth v. Nationwide Energy Partners, LLC*, 275 N.E.3d 670, 678–79 (Ohio Ct. App. 2025) (unjust enrichment claim failed based on theory that defendant obtained "windfall profits" by charging plaintiffs the same rates as other customers), *appeal not allowed*, 274 N.E.3d 690 (Ohio 2026). There is nothing unjust about a vendor's compensation, including discounts offered to secure business. *See Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 782 (S.D. Ohio 2024) (holding that plaintiff failed to allege unjust benefit where plaintiff paid banking fees for bank to maintain plaintiff's money and conduct transactions).

*Third*, an unjust enrichment claim "will not be supported if the connection between the parties is too attenuated." *Mandarin Trading Ltd.*, 16 N.Y.3d at 182. The Administrator Defendants selected the digital payment platform, the Administrator Defendants transmitted QSF funds to the FinTech Defendants for distribution, and any unredeemed balance was allegedly retained by the FinTech Defendant pursuant to standard cardholder terms. *See* Compl. ¶¶ 79, 153–58. Mere awareness of another entity's existence is insufficient to support a claim for unjust enrichment absent some direct connection between the parties. *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517–18 (2012) (relationship between defendant and plaintiff was "too attenuated because they simply had no dealings with each other"); *see also Freeman*, 245 P.3d at 936–37 (affirming rejection of an unjust enrichment claim where any benefit to the defendant was merely incidental to expenditures the plaintiffs made for their own purposes); *Vichi*, 62 A.3d at 59–61 (holding that unjust enrichment requires a direct relationship between the plaintiff's

38

impoverishment and the defendant's enrichment, and dismissing the claim where the alleged benefit was too attenuated and adequately addressed by other legal doctrines); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 479 (S.D.N.Y. 2014) ("[I]t makes little sense to conclude that a particular defendant bank somehow improperly obtained profits intended for a certain plaintiff when those two parties never transacted or otherwise maintained a business relationship at all."). Equity does not require the FinTech Defendants to compensate Plaintiffs. The FinTech Defendants performed standard digital-payment services for administrators in the ordinary course of their business; any benefit received was conferred through those services, not by Plaintiffs or the putative class for purposes of restitution.

## III.    Plaintiffs lack Article III standing

Finally, this Complaint should be dismissed because Plaintiffs lack Article III standing. *See* Admin. Defs.' Mot. § IV.

### CONCLUSION

For the foregoing reasons, the FinTech Defendants respectfully request that the Court dismiss all claims against them with prejudice.

Date: July 17, 2026

*/s/ David J. Lender*

David J. Lender
Gregory Silbert
Joseph R. Rausch
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David.Lender@weil.com
Greg.Silbert@weil.com
Joseph.Rausch@weil.com

*Counsel for Defendant Blackhawk Network Holdings, Inc.*

*/s/ John A. Pearce*

Jess M. Krannich
John A. Pearce
Paul J. Sampson
Rebecca J. Nelson
W. Bradford Barber
WILSON SONSINI GOODRICH & ROSATI
95 S State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510
Facsimile: (866) 974-7329
jkrannich@wsgr.com
jpearce@wsgr.com
psampson@wsgr.com
rnelson@wsgr.com
bbarber@wsgr.com

*Counsel for Defendant Tremendous, LLC*

40

/s/ *Brendan P. Cullen*
Brendan P. Cullen
(cullenb@sullcrom.com)
Kyle W. Mach
(machk@sullcrom.com)
Paul H. Lazarow
(lazarowp@sullcrom.com)
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, California 94301
Telephone:    (650) 461-5600
Facsimile:    (650) 461-5700

*Counsel for Defendant Digital Settlement Technologies LLC*

41