**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION** | **Misc. Action No. 25-179 (JDB); MDL Docket No. 3162** |
| **This Document Relates To: ALL CASES** | |

# JND LEGAL ADMINISTRATION'S INDIVIDUAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS


I. The Complaint Does Not Plausibly Allege Any Actionable Conduct by JND .................... 3

A. The "Nature of the Action" Section Exemplifies Improper Group Pleading (¶¶ 1-18) ........................................................................................................ 3

B. The "Parties" Section Alleges No Wrongdoing by JND (¶¶ 23-57).......................... 5

C. Allegations About JND Promotional Materials Do Not Help Plaintiffs (¶¶ 88-89) .. 5

D. The "Exemplar Settlements Administered by JND" Section Does Not Plausibly Plead Any Misconduct (¶¶ 317-356) ........................................................................ 6

E. The "Antitrust Allegations" Show that Plaintiffs' Claims Against JND Are Hollow (¶¶ 406-442) ..................................................................................................... 9

F. The "JND Enterprise" RICO Count is Unavailing (¶¶ 515-520)............................. 10

II. The Relevant Engagement Documents Authorize Rebates and Benefits From Vendors .. 11

III. Plaintiffs Lack Article III Standing to Sue JND................................................................ 13

IV. The Court Lacks Jurisdiction Over Issues Arising Out of the *Equifax* Settlement Administration ................................................................................................................. 15

V. Claims Arising Out of the *Lerman* Settlement Are Barred ............................................... 17

CONCLUSION.......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. USAA Cas. Ins. Co.*,
221 F.R.D. 250 (D.D.C. 2004)....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................14

*United States ex rel. Bailey v. Veterans Med. Transcription Servs., Inc.*,
2024 WL 4864480 (D.C. Cir. Nov. 22, 2024)....................4

**Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018)....................7

*Cooper v. Fed. Reserve Bank of Richmond*,
467 U.S. 867 (1984)....................17

*U.S. ex rel. Davis v. Dist. of Columbia.*,
591 F. Supp. 2d 30 (D.D.C. 2008)....................7

*Dentons US LLP v. Republic of Guinea*,
208 F.Supp.3d 330 (D.D.C. 2016)....................13

*In re Equifax, Inc., Customer Data Security Breach Litig.*,
2023 WL 2631070 (N.D. Ga. Mar. 22, 2023)....................15

**Est. of Mickens v. U.S. Bank Nat'l Ass'n*,
2021 WL 3418955 (D.D.C. Aug. 5, 2021)....................3, 4

*Evangelou v. Dist. of Columbia*,
901 F. Supp. 2d 159 (D.D.C. 2012)....................7

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....................14

*In re Google Phone Litig.*,
2012 WL 3155571 (N.D. Cal. Aug. 2, 2012)....................12

**Hinton v. Corr. Corp. of Am.*,
624 F. Supp. 2d 45 (D.D.C. 2009)....................12

*United States ex rel. Joseph v. Cannon*,
642 F.2d 1373 (D.C. Cir. 1981)....................4

*Jung v. Ass'n of Am. Med. Coll.*,
300 F. Supp. 2d 119 (D.D.C. 2004) ....................................................................9

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ............................................................................7

*Kumar v. George Wash. Univ.*,
174 F. Supp. 3d 172 (D.D.C. 2016) ....................................................................15

*Marsh v. Hollander*,
339 F.Supp.2d 1 (D.D.C. 2004) ........................................................................12

*Marshall v. Honeywell Technology Solutions, Inc.*,
536 F.Supp.2d 59 (D.D.C. 2008) ......................................................................12

*Nnaka v. Fed. Republic of Nigeria*,
238 F. Supp. 3d 17 (D.D.C. 2017) ....................................................................15

*Parker v. U.S. Dep't of Agriculture*,
404 F. Supp. 3d 31 (D.D.C. 2019) ....................................................................17

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ............................................................................12

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
261 F.3d 355 (3d Cir. 2001)..............................................................................16

*Siddiqi v. Lane*,
748 F. Supp. 637 (N.D. Ill. 1990) ....................................................................16

*Toumazou v. Turkish Rep. of N. Cyprus*,
71 F. Supp. 3d 7 (D.D.C. 2014) ......................................................................3, 4

**TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)......................................................................................13, 14

*United States v. Int'l Bhd. of Teamsters*,
907 F.2d 277 (2d Cir. 1990)..............................................................................16

*Vanover v. Hantman*,
77 F. Supp. 2d 91 (D.D.C. 1999), *aff'd*, 38 F. App'x. 4 (D.C. Cir. 2002)..............................12

*Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*,
321 F. Supp. 3d 49 (D.D.C. 2018) ......................................................................4

**Western Associates Ltd. Partnership v. Market Square Associates*,
235 F.3d 629 (D.C. Cir. 2001) ..........................................................................10

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
389 F.3d 1251 (D.C. Cir. 2004) .....................................................................................4

*Willoughby v. Potomac Elec. Power Co.*,
853 F. Supp. 174 (D. Md. 1994) ...................................................................................16

**Other Authorities**

Peter Keating, ESPN.com, *Documents Allege Lead Attorney in NFL Concussion Deal Did Not Disclose Conflict of Interest* (Apr. 26, 2018),
https://www.espn.com/espn/otl/story/_/id/23324920/court-documents-lay-another-ugly-allegation-nfl-concussion-deal ...............................................................8

JND Legal Administration ("JND") should never have been named as a defendant in this case. The Administrator Defendants have asserted a number of cross-cutting reasons for dismissal, and JND joins those arguments. JND submits this additional memorandum to highlight five important points relating to JND in particular.

***First,*** plaintiffs' allegations against JND boil down to indiscriminate group pleading about "Administrator Defendants" and heavy use of "upon information and belief" disclaimers for the key premises of their claims. But Rules 8 and 9(b), as well as *Twombly* and *Iqbal*, prohibit Plaintiffs from relying on speculation and innuendo to sweep JND into their false narrative of industry-wide conspiracy. This is especially so when plaintiffs are attempting to wield the loaded gun of treble damages claims and scorched-earth discovery on behalf of massive nationwide classes. Despite measuring in at 212 pages and 591 paragraphs and charging wrongdoing in dozens of class settlements, plaintiffs make scarcely any allegations directly about JND's own conduct, raising just *three* settlements—one of which they do not even have standing to sue over because no plaintiff participated in it as a class member.

***Second***, there is a reason plaintiffs continuously fail to allege actual facts to support any wrongdoing by JND—the very engagement documents governing JND's work squarely contradict plaintiffs' central theory of concealment on which all claims against JND rest. Those documents, which class counsel in the relevant underlying cases reviewed and signed off on, provide that "JND may receive rebates or credits from vendors in connection with volume of work" as well as "financial benefits from banks or other institutions based on settlement funds on deposit" and that "[t]hese credits/rebates/awards are solely the property of JND." *See* Declaration of Robert J. Katerberg, Exs. A, B. Plaintiffs cannot plausibly charge JND with fraudulently concealing benefits

from vendors and banks given these express disclosures and authorizations. Indeed, plaintiffs' counsel in this very case signed off on these same authorizations in other class settlements.[1]

***Third***, plaintiffs lack standing to sue JND. Most of the plaintiffs never participated in any settlement administered by JND and allege nothing connecting JND to their purported injuries. The few plaintiffs who allege participation in JND-administered settlements rely on just two such settlements and on stock boilerplate allegations of injury. They do not even allege that they filed a claim in the relevant settlement, let alone what they received and how its value would supposedly have been different absent JND's allegedly improper conduct. Plaintiffs cannot establish Article III standing through generic conclusory statements lacking any plaintiff-specific content.

***Fourth***, the Court lacks jurisdiction over the issues relating to one of the two JND-administered settlements—the *Equifax* data breach settlement—in which any plaintiff claims to have participated and been injured. Apparently spurred by seeing allegations about the *Equifax* settlement in this case, *Equifax* class counsel recently filed a motion with the settlement court regurgitating those same baseless allegations and invoking the settlement court's exclusive continuing jurisdiction over settlement implementation and administration. In light of the well-founded concerns this Court and class counsel have recognized about "reaching down into ongoing class actions and displacing the judge who has responsibility," Tr., 3/27/26 Hr'g, at 35, the Court should dismiss claims relating to *Equifax*, or at a minimum, abstain from exercising its own jurisdiction over those claims.

[1] The Chairman of Plaintiffs' Executive Committee here approved JND's terms and conditions, including the authorization of rebates and benefits from vendors and banks, in what is reputed to be one of the largest antitrust class settlements in history (the *Blue Cross Blue Shield* settlement referenced in passing in ¶ 25 of the complaint). *See* Katerberg Decl., Ex. C.

***Fifth***, in the only other underlying case in which a plaintiff suggests they were injured by something JND did (*Lerman*), the settlement agreement bars class members from bringing any claim against JND relating to awards and distributions. The sole plaintiff who participated in that settlement and benefited from it should be held to that release.

"Shoot first, ask questions later" should never be tolerated as a pleading strategy in federal civil litigation. But it is particularly unfortunate when, as here, it is used to accuse a company of fraud, racketeering, and malfeasance, smear reputations built over decades, and inflict onerous defense costs and burdens without any factual basis and based almost entirely "on information and belief." The Court should dismiss plaintiffs' claims against JND with prejudice.

## I. The Complaint Does Not Plausibly Allege Any Actionable Conduct by JND

Despite the Complaint's length, verbosity, and rhetoric, it is devoid of any well-pleaded allegations of wrongful or illegal conduct by JND. A review of the Complaint from start to finish, with a focus on what is and what is not alleged about JND, confirms that plaintiffs' allegations fail to state any claim against JND.

### A. The "Nature of the Action" Section Exemplifies Improper Group Pleading (¶¶ 1-18)

Plaintiffs' 18-paragraph "Nature of the Action" introduction summarizing their claims and key allegations never even mentions JND, let alone alleges that JND did anything wrong. Instead, previewing the approach that pervades the entire Complaint, plaintiffs hide behind collective labels like "the Administrator Defendants."

That is improper. "It is well settled that 'a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 . . . by lumping all the defendants together' and 'providing no factual basis to distinguish their conduct.'" *Est. of Mickens v. U.S. Bank Nat'l Ass'n*, 2021 WL 3418955, at *4 (D.D.C. Aug. 5, 2021) (K.B. Jackson, J.) (quoting *Toumazou v. Turkish Rep. of N. Cyprus*,

71 F. Supp. 3d 7, 21 (D.D.C. 2014)). Such grouping of defendants runs afoul of Rule 8 because it fails to "provide each defendant with fair notice of each claim and its basis." *Toumazou*, 71 F. Supp. 3d at 21 (internal quotation marks omitted); *accord Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*, 321 F. Supp. 3d 49, 61 (D.D.C. 2018) (rejecting "collective allegations against unrelated defendants"). So, for example, then-Judge Jackson declined to credit "factual allegations refer[ring] to 'Defendants' collectively without specifying which of U.S. Bank, Ocwen, or BWW allegedly took each action described in the complaint." *Est. of Mickens*, 2021 WL 3418955 at *4. The Complaint here suffers from the exact same problem.

These concerns apply with special force in cases, like this one, revolving around claims of fraud. Rule 9(b) has zero tolerance for referring "to the 'Defendants' collectively without indicating which actions each individual defendant took." *United States ex rel. Bailey v. Veterans Med. Transcription Servs., Inc.*, 2024 WL 4864480, at *1 (D.C. Cir. Nov. 22, 2024); *accord Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 255 (D.D.C. 2004) (dismissing under Rule 9(b) where plaintiff pleaded "blanket belief that the defendants as a group 'misrepresented or withheld material and significant facts'"). A complaint that does not "identify with specificity who precisely was involved in the fraudulent activity" both "fail[s] to give the companies sufficient information to answer the complaint" and also "subject[s] the named individuals to vague, potentially damaging accusations of fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004). Plaintiffs' claims against JND are a textbook example of the kind of "suits brought solely for their nuisance value" and "frivolous accusations of moral turpitude" that Rule 9(b) was designed to prevent. *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981).

The introduction locates the inspiration for this case in an "October 2024 white paper" by a "34-year class action administration expert," Compl. ¶ 11, and declarations by one of JND's competitors describing that company's practices and a "master service agreement" between that company and a fintech company, *id.* ¶¶ 13-14. But none of those documents mentions JND, nor does the Complaint allege—*anywhere*—that JND has a "master service agreement" with any fintech defendant. The fact that the Complaint's introduction, highlighting what plaintiffs apparently consider their most significant points, does not even mention JND is just the first sign that JND was tacked onto this case without the slightest basis in fact or law.

**B. The "Parties" Section Alleges No Wrongdoing by JND (¶¶ 23-57)**

The first time the Complaint mentions JND is in the "Parties" section, in paragraphs identifying several plaintiffs as having participated in settlements administered by JND. Compl. ¶¶ 24, 25, 26, 31, 36, 37, 39, 43. None of these paragraphs allege that JND did anything wrong in connection with those settlements. Likewise, the paragraph identifying JND as a named defendant merely describes it as a company that provides settlement administration services, describes its capabilities, and quotes from its website. *Id.* ¶ 47.[2]

**C. Allegations About JND Promotional Materials Do Not Help Plaintiffs (¶¶ 88-89)**

The Complaint next mentions JND in two paragraphs (¶¶ 88 and 89) citing promotional statements from JND's website. Drawing on JND's statements describing itself as "trustworthy" and a picture caption saying "trust is refreshing," *id.* ¶ 89, plaintiffs leap to the unfounded and unsupported legal conclusion that "JND recognizes its fiduciary role." Those statements are nonactionable puffery and do not establish a fiduciary duty, but tellingly, after paragraph 89, JND

[2] The Complaint erroneously describes JND as "an Oregon limited liability company." Publicly available sources, which should have been reviewed as part of basic pre-complaint diligence, show that JND is in fact a Delaware limited liability company.

drops out of the picture for the next 228 paragraphs of the Complaint. This is a significant and telling omission—it means that throughout the bulk of plaintiffs' description about the purported industry-wide conspiracy, JND is nowhere to be found.

### D. The "Exemplar Settlements Administered by JND" Section Does Not Plausibly Plead Any Misconduct (¶¶ 317-356)

It is not until 317 paragraphs into the complaint that the complaint alleges anything specifically about JND or settlements it administered. Plaintiffs allege three so-called "exemplar settlements" administered by JND: *In re Equifax Data Breach Settlement*, No. 1:17-md-2800 (N.D. Ga.); *Lerman v. Apple, Inc.*, No. 1:15-cv-7381-LB (E.D.N.Y.); and *In re Yahoo! Inc. Securities Litig.*, No. 5:17-cv-373 (N.D. Cal.). Compl. ¶¶ 317-356. The Complaint identifies *Equifax* as a so-called "Digital Disbursement Track" settlement in which JND worked with Blackhawk as a digital prepaid card vendor, whereas *Lerman* and *Yahoo!* were part of the "Bank Interest Track" and Huntington was the bank holding the qualified settlement fund.[3]

For each of the three "exemplar settlements," the Complaint alleges at a granular level various facts about the underlying cases, the terms of the class settlements, and the chronologies of preliminary approval, final approval, and disbursements. *See id*. ¶¶ 317-330 (*Equifax*), 331-343 (*Lerman*), 344-356 (*Yahoo!*). But plaintiffs never connect these details to any allegedly improper conduct, relying on them instead to conjure a superficial image of pleading heft. It is not until the end of each "exemplar settlement" section that any allegations (such as they are) about any *misconduct* emerges. And, critically, those allegations—the ones that do all the real work for

[3] No plaintiff alleges that they were class members or participated in the settlement in the *Yahoo!* securities litigation, and plaintiffs consequently lack standing to pursue claims about that settlement. This motion includes discussion of plaintiffs' allegations regarding *Yahoo!* purely for the sake of completeness.

plaintiffs—are subject to overarching "on information and belief" qualifiers. *See id.* ¶¶ 329 (*Equifax*), 342 (*Lerman*), 355 (*Yahoo!*).

For example, the key allegation about the so-called Bank Interest Track settlements (*Lerman* and *Yahoo!*) is that "[i]nstead of paying interest payments to the QSF, Huntington paid a portion of that money to JND." *Id.* ¶¶ 342, 355. Those allegations have no factual basis, and, in fact, JND and Huntington have each confirmed to a federal court in other litigation that Huntington has never had a financial relationship with JND or paid money to JND. In anticipation of this motion, JND asked plaintiffs either to withdraw their allegations that Huntington paid a portion of interest payments to JND or to clarify the factual basis for those allegations. Plaintiffs responded by standing on their supposed entitlement to plead those allegations purely "on information and belief" and provided no factual basis. *See* Katerberg Decl., Exs. D, E.

Plaintiffs are wrong—they cannot launder conjecture and speculation through "on information and belief" pleading. *See Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."). Rather, "pleadings on information and belief . . . must also be accompanied by a statement of the facts upon which the allegations are based," which is completely missing here. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994); *accord Evangelou v. Dist. of Columbia*, 901 F. Supp. 2d 159, 170 (D.D.C. 2012) ("information and belief" pleading must be "based on factual information that makes the inference of culpability plausible"). This is particularly true for fraud claims: "[a]s a general rule, pleadings made upon 'information and belief' do not satisfy Rule 9(b)'s particularity requirement." *U.S. ex rel. Davis v. Dist. of Columbia.*, 591 F. Supp. 2d 30, 37 (D.D.C. 2008).

Plaintiffs' allegations about *Lerman* and *Yahoo!* are also inconsistent with their group pleading allegations that the "Administrator Defendants" "steered" settlement business to the Bank Defendants in exchange for a *quid pro quo*. *See*, *e.g.*, Compl. ¶¶ 100 (discussing Administrator Defendants' "banking selection process"), 122 (Administrator Defendants "steered QSF deposits to Bank Defendants"), 128 (Administrator Defendants "threatened to pull" business from the Bank Defendants), 441-442 (Administrator Defendants "[s]teer[ed] deposits to banks that pay below-market interest rates" and "confine their deposits exclusively to the two Bank Defendants," while "refusing to use higher-yielding banking alternatives" like Esquire Bank[4]). In *Lerman* and *Yahoo!*, plaintiffs allege merely that JND and Huntington were designated in the respective settlement agreements between class counsel and the defendant and therefore served concurrently. *Id.* ¶¶ 331-32 ("JND was the court-appointed Settlement Administrator, and Huntington served as the bank holding the QSF"), 344-345 (same). There is nothing about JND "selecting" Huntington, "steering" the business to Huntington, or "confining" deposits to Huntington.

Plaintiffs' allegations about the one alleged JND "Digital Disbursements Track" settlement (*Equifax*) are equally out of sync with their generic group pleading allegations. Elsewhere, the Complaint touts so-called "master service agreements" between the "Administrator Defendants" and the FinTech Defendants, characterizing those agreements nefariously as "the governing documents of the entire scheme." *Id.* ¶ 380; *see also id.* ¶¶ 8, 160, 388, 391, 470, 495, 538, 555. Yet throughout the five pages of allegations about the *Equifax* settlement, there is not one mention

[4] The Complaint's reliance on Esquire Bank is especially curious because lead class counsel in this case has been criticized for allegedly steering settlement claimants to Esquire Bank for cash advances despite having an undisclosed interest in Esquire Bank. *See* Peter Keating, ESPN.com, *Documents Allege Lead Attorney in NFL Concussion Deal Did Not Disclose Conflict of Interest* (Apr. 26, 2018), *available at* https://www.espn.com/espn/otl/story/_/id/23324920/court-documents-lay-another-ugly-allegation-nfl-concussion-deal.

of any "master service agreement" between JND and Blackhawk (the issuer of the prepaid digital cards there). Rather, Plaintiffs' description of what was supposedly wrong with the *Equifax* settlement reduces to "upon information and belief" conjecture and discontent with the fact, long known to the settling parties, that the settlement structure did not "treat[] digital payments like uncashed checks." *Id.* ¶ 329.

### E. The "Antitrust Allegations" Show that Plaintiffs' Claims Against JND Are Hollow (¶¶ 406-442)

The next mention of JND is in the opening sentence of the "Antitrust Allegations," which merely identifies JND as one of the four largest settlement administrators in the United States. Compl. ¶ 406. Of course, being a significant participant in an industry does not violate the Sherman Act. Rather than alleging facts showing that JND engaged in the conduct supposedly constituting the conspiracy, plaintiffs repeatedly allege what the "Administrator Defendants" collectively did and then ask the Court to infer that JND must have done the same. But plaintiffs alleging antitrust violations "cannot escape their burden of alleging that each defendant participated in or agreed to join [a] conspiracy by using the term 'defendants' to apply to numerous parties." *Jung v. Ass'n of Am. Med. Coll.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004). Rather, they must allege each "individual defendant joined the conspiracy and played some role in it." *Id.*

The inadequacy of Plaintiffs' allegations against JND becomes particularly apparent when they attempt to identify the supposedly "parallel conduct" supporting their Sherman Act claim. Plaintiffs allege collectively that "[a]ll Administrator Defendants engaged in the same pattern of steering settlement deposits to the same two Bank Defendants," "received kickbacks through the same mechanism—special purpose entities," and "concealed the arrangements in the same manner by failing to disclose the kickbacks to the courts, class counsel, or class members." Compl. ¶ 438.

But the Complaint never plausibly alleges that JND engaged in any of those supposedly parallel activities.

- ***"Steering settlements to the same Bank Defendants."*** As discussed above, all that the Complaint actually alleges about the two JND-administered settlements in which a Bank Defendant is mentioned is that JND was the administrator, Huntington was the bank and each was designated by the parties to the settlement—not that JND "steered" the business to Huntington. *See supra* at 8.

- ***"Kickbacks through the same mechanism—special purpose entities."*** The Complaint is likewise devoid of any allegation that JND received "kickbacks" through "special purpose entities." This is because JND has no special purpose entities and plaintiffs could not allege consistent with Rule 11 that it does.

- ***"Concealed the arrangements in the same manner by failing to disclose the kickbacks."*** Without plausibly alleging that JND *received* any kickbacks (which it does not), the Complaint cannot plausibly allege that JND did anything by failing to disclose things that did not exist.

**F. The "JND Enterprise" RICO Count is Unavailing (¶¶ 515-520)**

The last place the Complaint mentions JND is in the so-called "JND Enterprise" RICO count, a formulaic set of allegations copied-and-pasted from corollary counts alleging RICO "Enterprises" for each of the other Administrator Defendants. Compl. ¶¶ 515-520. This section piles together bare legal conclusions and *non sequiturs* that bring plaintiffs no closer to stating a viable claim against JND than the allegations already discussed. Plaintiffs' wholly insubstantial and unsupported RICO claim against JND is a prime illustration of why RICO claims premised, as here, on mail and wire fraud deserve special scrutiny. *See Western Associates Ltd. Partnership v. Market Square Associates*, 235 F.3d 629, 637 (D.C. Cir. 2001).

Paragraph 517 lays out the assumptions that plaintiffs believe justify their "on information and belief" pleading that JND violated RICO. But those assumptions come nowhere close to supporting the conclusions plaintiffs seek to draw from them. For example, Plaintiffs note that "JND has distributed settlement funds through FinTech Defendants and deposited QSFs with

Huntington." Compl. ¶ 517. Of course, the fact that JND has administered settlements in which Huntington was the bank or one of the FinTech Defendants handled digital disbursements does not put JND in an illegal conspiracy with those companies. Nor do public representations by Blackhawk and Digital Disbursements about working with "more than 60% of class action administrators," combined with the fact that JND is "one of the largest settlement administrators" remotely support any kind of inference that JND engaged in a racketeering scheme. *Id.* And while plaintiffs also rely for their RICO allegations on "the industry-wide characterization of these arrangements as 'standard practice' by multiple settlement administration industry insiders" (anonymous sources for a sensationalistic media story), *id.*, there is no allegation anywhere in the Complaint about any "settlement administration industry insider" accusing JND of any fraud or illegality.

Simply put, Plaintiffs' allegations regarding JND are devoid of any substance and rest instead on guilt-by-association innuendo and unsupported inferences. Plaintiffs fail to state a claim against JND upon which relief could be granted.

## II. The Relevant Engagement Documents Authorize Rebates and Benefits From Vendors

Plaintiffs' claims against JND also fail because the documents through which JND was engaged to administer the relevant class actions expressly authorize JND to receive rebates, credits, and other benefits from banks and vendors. In both of the JND-administered settlements in which any plaintiff claims to have been injured (*Equifax* and *Lerman*), the engagement agreement or proposal through which JND performed its services provided:

> **JND may receive rebates or credits from vendors in connection with volume of work performed in connection with its overall business. JND may also receive financial benefits from banks or other institutions based on settlement funds on deposit. These credits/rebates/awards are solely the property of JND.**

Katerberg Decl., Exs. A, B.[5]

The Court may consider these documents in adjudicating JND's motion to dismiss, even though plaintiffs have not attached them to their complaint. It is well-established that "documents upon which the plaintiff's complaint necessarily relies" are appropriate to consider "even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46-47 (D.D.C. 2009) (quotation marks omitted); *accord Marshall v. Honeywell Technology Solutions, Inc.,* 536 F.Supp.2d 59, 65 (D.D.C. 2008); *Marsh v. Hollander,* 339 F.Supp.2d 1, 5 n.4 (D.D.C. 2004); *Vanover v. Hantman,* 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F. App'x. 4 (D.C. Cir. 2002). Courts routinely grant Rule 12(b)(6) motions based on dispositive provisions in contracts referenced in the complaint. *See, e.g.*, *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (considering "documents governing [HMO] plan membership, coverage, and administration" where complaint referred to "the FHP group plan and its cost containment program"); *In re Google Phone Litig.*, 2012 WL 3155571, at *7 (N.D. Cal. Aug. 2, 2012) (considering Google's Terms of Sale containing warranty disclaimer because complaint alleged "Plaintiffs entered into agreements with Google . . . in connection with the purchase of [the] phones").

Here, Plaintiffs directly and repeatedly rely on JND's bids, proposals, and agreements with underlying class counsel and settling parties, alleging that those documents "disclosed their administrative fees as if those fees represented the complete cost of administration" but "omitted that the payment methods they proposed to use would generate undisclosed financial benefits flowing back to themselves." Compl. ¶ 371; *see also, e.g., id.* ¶¶ 390 (information was "not

---

[5] The *Lerman* version (Ex. B) differs slightly in that it uses the phrase "volume of work performed for all of its Clients" rather than "volume of work performed in connection with its overall business."

disclosed to any . . . class counsel . . . in any settlement during the class period"), 460(d) ("bid[s], proposal[s], [and] communication[s] directed to . . . class counsel" did not disclose "existence" of "undisclosed financial arrangements" or "financial interests"). That premise of concealment and nondisclosure is the fulcrum of the Complaint, without which plaintiffs' claims all collapse. Plaintiffs cannot avoid dismissal by characterizing JND's agreements and proposals one way while asking the Court to disregard what they actually say. *Dentons US LLP v. Republic of Guinea*, 208 F.Supp.3d 330, 340 (D.D.C. 2016).[6]

### III. Plaintiffs Lack Article III Standing to Sue JND

Most of the plaintiffs do not allege that they participated and were injured in any settlement administered by JND. Rather, they allege that they participated in *other* settlements administered by other Administrator Defendants and suffered injury relating to *those* settlements. Those plaintiffs have not even *purported* to assert any injury-in-fact traceable to any conduct by JND and therefore lack Article III standing to assert their claims against JND. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press").[7]

The six remaining plaintiffs allege they participated in *Equifax* (and one additionally in *Lerman*), as to which the Complaint does allege misconduct. But simply being a member of a

---

[6] The documents attached as Exhibits A and B were produced to plaintiffs as part of the early discovery that the Court ordered. In addition, as noted, the Chairman of Plaintiffs' Executive Committee has long been aware of these provisions in JND's engagement agreements. *See supra* note 1.

[7] The plaintiffs who allege injury solely from wrongdoing in other, non-JND-administered settlements are Baker, Coleman, Smith, Ables, Costello, Porter, Trisal, Starzinski, Brown, Hunter, Tennery, Duarte, Whalen, Hetland, and Rieger. Hetland and Rieger each allege that they participated in a JND-administered settlement, but the Complaint does not allege any wrongdoing in connection with those settlements.

class does not establish cognizable injury-in-fact, let alone injury-in-fact traceable to any action by JND. For each of these plaintiffs, the Complaint recites the same rote statement that "[t]he amount of compensation Plaintiff received in each of the class action settlements listed above was diminished by Defendants' illicit kickback schemes alleged herein, resulting in actual economic harm to Plaintiff."[8] This generic formula does not even disclose whether each plaintiff filed a claim, much less what they received, how it compared to the alleged injury they were being compensated for, or that they did not receive the full value the settlement afforded them (*e.g.*, a digital disbursement in the full amount for which they qualified).

In order to have standing, plaintiffs must plausibly allege not just that some kind of violation occurred, but also that it personally and concretely impacted them. *See*, *e.g.*, *TransUnion*, 594 U.S. at 423 (plaintiff must "demonstrate their personal stake" by being "able to sufficiently answer the question: 'What's it to you?'"). The stock allegation that "[t]he amount of compensation Plaintiff received . . . was diminished" simply *assumes* that in a but-for world, the (unidentified) awards they each received for their claims would have increased. But that is pure speculation, ignoring, for example, that replacing digital disbursements with paper checks would *raise* administration costs, that any additional residual funds might have flowed to *cy pres*, or that terms with or among JND, class counsel, vendors, and banks might have been renegotiated in a way that would not benefit plaintiffs at all. "The causation requirement precludes speculative links—that is, where it is not sufficiently predictable how third parties would react" or "cause downstream injury to plaintiffs." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). And in the absence of non-conclusory factual allegations to establish causation, Plaintiffs' speculative chain of inferences is not enough to support standing. *See Ashcroft v. Iqbal*,

---

[8] *See* Compl. ¶¶ 24 (Wolf), 25 (Whitlaw), 31 (Coughlan), 36 (Tejon), 37 (Tosu), 43 (Barclay).

556 U.S. 662, 678-79 (2009).

## IV. The Court Lacks Jurisdiction Over Issues Arising Out of the *Equifax* Settlement Administration

This Court lacks jurisdiction over issues arising out of the *Equifax* settlement because, prompted by the spurious allegations in this case, class counsel in *Equifax* recently "invoke[d] the [settlement] Court's continuing jurisdiction" to raise those same allegations in that Court "on behalf of . . . the Settlement Class," which includes the plaintiffs in this case who participated in the *Equifax* settlement. *See* ECF No. 1293, *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 10, 2026) (attached as Ex. F to Katerberg Decl.).

The motion filed in Georgia on behalf of the plaintiffs in this case who participated in the *Equifax* settlement observes that the settlement court (Hon. Thomas W. Thrash) "retains jurisdiction over this action and the Settling Parties, Settlement Class Members, attorneys, and other appointed entities, for all matters relating to this action, including (without limitation) the administration, interpretation, effectuation or enforcement of the Settlement Agreement and this Final Order and Judgment." *Id*. at 2 (quoting Final Order and Judgment). The *Equifax* Settlement Agreement likewise provides that "administration and consummation . . . shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement." *Id.* (quoting Settlement Agreement).[9] The *Equifax* court considers this jurisdiction "exclusive." *Equifax*, 2023 WL 2631070, at *3 (N.D.

[9] The Court may "take judicial notice of court records in related proceedings," such as the judgments and settlement agreements in underlying cases. *Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17, 26 (D.D.C. 2017). The Court may also consider these materials as incorporated by reference as they are referenced and relied upon in the Complaint. *See* Compl. ¶¶ 318-320; *Kumar v. George Wash. Univ.*, 174 F. Supp. 3d 172, 184 n.5 (D.D.C. 2016).

Ga. Mar. 22, 2023) (enjoining lawsuits in other courts relating to fee allocation). Further, administration of the *Equifax* settlement is continuing, with funds remaining to be distributed.

Having invoked the *Equifax* court's exclusive continuing jurisdiction, the Georgia motion filed on behalf of plaintiffs in this case then describes allegations in the Complaint (and one of the precursor actions in this MDL) about how digital payments were handled in *Equifax*. Katerberg Decl., Ex. F at 3-5. The Georgia motion asks that court to order certain disclosures "[i]n light of the allegations made in [this MDL]." *Id.* at 6.

To be sure, the motion brought in *Equifax* on behalf of the relevant plaintiffs in this case is as meritless as the claims those same plaintiffs are asserting against JND here. Indeed, the motion concedes that the contract expressly allowed JND to receive rebates and credits from vendors, making such amounts "solely the property of JND." *Id.* at 5. What matters for present purposes, however, is that now that the *Equifax* court's continuing exclusive jurisdiction has been invoked over the same allegations made here and on behalf of the same individuals who are plaintiffs in this case, this Court lacks jurisdiction over those matters.[10] Even if this Court were deemed to have concurrent jurisdiction, it would make little sense for litigation to proceed in parallel over the same matters, and on behalf of the same individuals, in both this Court and the settlement court. In addition to creating a risk of inconsistent rulings, it would be fundamentally unfair to JND to

[10] *See*, *e.g.*, *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 367-68 (3d Cir. 2001) (upholding class settlement court's authority to "protect the integrity of a complex class settlement over which [it] retained jurisdiction"); *United States v. Int'l Bhd. of Teamsters*, 907 F.2d 277, 280-81 (2d Cir. 1990) (enjoining collateral lawsuits in other courts regarding implementation of consent decree over which settlement court retained jurisdiction); *Willoughby v. Potomac Elec. Power Co.*, 853 F. Supp. 174 (D. Md. 1994) (transferring suit alleging claims arising out of prior class settlement to settlement court that "retain[ed] jurisdiction over the action for purposes of entering all appropriate orders, judgments, and decrees"); *Siddiqi v. Lane*, 748 F. Supp. 637, 639 (N.D. Ill. 1990) (dismissing count alleging "defendants violate[d] a consent decree issued by another federal district court" that had "explicitly retained jurisdiction of that decree").

have to defend itself against the same allegations on behalf of the same individuals simultaneously in two forums. Notably, class counsel here has conceded that this MDL should be limited to closed class actions to avoid the precise situation the parallel *Equifax* motion creates. *See* Tr., 3/27/26 Hr'g, at 35 (class counsel calling it "entirely reasonable" to limit MDL to closed class actions in response to question about why issues around settlement administration in another class action should not "be taken care of in that class action before that judge"). This Court should therefore dismiss plaintiffs' claims relating to the *Equifax* settlement.

### V. Claims Arising Out of the *Lerman* Settlement Are Barred

As noted, one plaintiff (Wolf) participated in the *Lerman* settlement in addition to *Equifax*. Plaintiffs' purely "on information and belief" speculation that Huntington paid JND interest in *Lerman* is baseless and should never have been included in the Complaint. *See supra* at 7. But claims about *Lerman* are also precluded for yet another reason: settling class members in *Lerman* released "any claim against . . . the Settlement Claims Administrator [*i.e.*, JND] based on any eligibility determinations, distributions, or awards made in accordance with this Settlement." Settlement Agreement and Release ¶ 6.8.6, ECF No. 155-3, *Lerman v. Apple, Inc.*, No. 1:15-cv-7381-LB (E.D.N.Y.) (attached as Ex. G to Katerberg Declaration). Thus, the sole plaintiff who alleges injury arising out of the *Lerman* settlement cannot bring any such claims, and those claims should be dismissed. *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984); *Parker v. U.S. Dep't of Agriculture*, 404 F. Supp. 3d 31, 43-44 (D.D.C. 2019).

## CONCLUSION

Accordingly, the Court should dismiss plaintiffs' claims against JND with prejudice.

Dated: July 17, 2026

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Robert J. Katerberg*
David J. Weiner
Robert J. Katerberg
Sonia Kuester Pfaffenroth
601 Massachusetts Ave. NW
Washington, D.C. 20001-3743
Tel: (202) 942-5000
david.weiner@arnoldporter.com
robert.katerberg@arnoldporter.com
sonia.pfaffenroth@arnoldporter.com

E. Alex Beroukhim (*pro hac vice*)
777 South Figueroa Street 44th Floor
Los Angeles, CA 90017-5844
213-243-4059
Alex.Beroukhim@arnoldporter.com

***Counsel for Defendant JND Legal Administration***