**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION**<br><br>**This Document Relates To:**<br>**ALL CONSOLIDATED ACTIONS** | **Misc. Action No. 25-179 (JDB);**<br>**MDL Docket No. 3162** |

**PLAINTIFFS' OPENING BRIEF REGARDING**
**DEFENDANTS' RULE 26(f) OBLIGATIONS**

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. ARGUMENT .......... 4

A. Rule 26(f) Imposes Disclosure Obligations that Require Transparency and Cooperation .......... 4

B. Practice Confirms That Transparent and Cooperative Disclosures Promote Efficient and Effective Discovery Planning in Complex Litigation .......... 7

C. The Custodian Disclosures Are Inadequate .......... 9

D. The Source Disclosures Are Inadequate .......... 11

IV. CONCLUSION .......... 14

## TABLE OF AUTHORITIES

Cases Page(s)

*Camesi v. University of Pittsburgh Medical Center*,
269 F.R.D. 493 (W.D. Pa. 2010) ..................... 6

*Covad Commc'ns Co. v. Revonet, Inc.*,
254 F.R.D. 147 (D.D.C. 2008) ..................... 6

*In Doe LS 340 v. Uber Technologies, Inc.*,
710 F. Supp. 3d 794 (N.D. Cal. 2024) ..................... 6

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig*.,
2018 WL 1440923 (D. Kan. Mar. 15, 2018) ..................... 11

*In re Pork Antitrust Litig*.,
2022 WL 972401 (D. Minn. 2022) ..................... 13

*In re Seroquel Prods. Liab. Litig.*,
244 F.R.D. 650 (M.D. Fla. 2007) ..................... 5, 6

*In Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*,
272 F.R.D. 350 (W.D.N.Y. 2011) ..................... 6, 14

*Mancia v. Mayflower Textile Servs. Co*.,
253 F.R.D. 354 (D. Md. 2008) ..................... 7

*Oxbow Carbon and Minerals LLC v. Union Pac. R.R. Co*.,
322 F.R.D. 1 (D.D.C. 2017) ..................... 7

**Rules**

Fed. R. Civ. P. 26(a)(1) ..................... 3

Fed. R. Civ. P. 26(b)(1) ..................... 1, 7, 12, 15

Fed. R. Civ. P. 26(b)(2)(B) ..................... 4, 5, 14

Fed. R. Civ. P. 26(f) ..................... passim

Fed. R. Civ. P. 26(f)(2) ..................... 4

Fed. R. Civ. P. 26(f)(3)(C) ..................... 4, 5

Fed. R. Civ. P. 26(g) ..................... 7

Fed. R. Civ. P. 16(b) ........ 4, 5

D. Colo. Rule 26(f) ........ 8

W.D. Pa. L.R. 26.2 ........ 8

**Other Authorities**

Manual for Complex Litigation (Fourth) sec. 11.446 ........ 5

Manual for Complex Litigation section 11.442 ........ 12

## I. INTRODUCTION

Rule 26(f) exists so that discovery can be planned rather than litigated. It is the mechanism through which parties are supposed to candidly exchange information about their data environments, custodians, and information systems so they can develop a meaningful discovery plan before disputes multiply and deadlines compress. That exchange requires transparency and cooperation. The Advisory Committee that recommended adding the ESI provisions to Rule 26(f) was direct: parties should arrive at the conference already informed about relevant ESI sources, systems, and custodians so that the discussion under Rule 26(f)(3)(C) can be meaningful.[1] The 2015 Advisory Committee returned to the same point: "[f]raming intelligent requests for electronically stored information . . . may require detailed information about another party's information systems and other information resources."[2] Moreover, the 2015 amendments to Rules 16 and 26 of the Federal Rules of Civil Procedure were designed to "engage judges in early active case management" and to "address serious new problems associated with vast amounts of ESI."[3]

Plaintiffs ask the Court to confirm the scope of the parties' Rule 26(f) obligations in this MDL. The Court's July 10, 2026 Order addressed the threshold obligation to disclose custodians and sources at the 26(f) conference.[4] Case Management Order No. 2 directed the parties to confer on adequacy and scope of those disclosures.[5] After three months of exchanges, three rounds of disclosures, and nine individualized deficiency letters, the parties have not reached agreement.

This issue is more than a discovery dispute; it is a process failure. No Defendant has ever stated affirmatively what it believes Rule 26(f) requires. No Defendant has ever confirmed that its

---

[1] Fed. R. Civ. P. 26(f) advisory committee's note to 2006 amendment.
[2] Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.
[3] Hon. John G. Roberts, Jr., 2015 Year-End Report on the Federal Judiciary (2015) *available at:* https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.
[4] ECF No. 132.
[5] ECF No. 153, para. 6 and n.3.

disclosures are complete. Information has been released across multiple rounds, each time characterized as a "compromise," each time without a representation of completeness, and each time stopping at a different point without explanation. That objective is defeated when producing parties control the information necessary to plan their own discovery and release it in fragments only when pressed. That is not the transparent and cooperative process the Federal Rules require. As the Court observed in the context of the ESI protocol, our adversarial system does not contemplate such one-sided litigation.[6]

What Rule 26(f) requires, and what Plaintiffs ask this Court to confirm, is that producing parties identify, in good faith and with specificity, the custodians whose work generated the transactions at issue, the data sources through which relevant information flows, the systems in which it resides, the predecessors those systems replaced, how information can be located and retrieved, and the transaction data rooms that may contain the most complete and candid picture of the financial architecture at the center of this case. These are not extraordinary demands. They are the foundation of planning. Without them, discovery cannot be planned. It can only be disputed.

## II. BACKGROUND

On May 28, 2026, Plaintiffs initiated the Rule 26(f) process by serving twenty-two Informal Information ESI Requests, draft requests for production specific to each defendant group, a proposed conference agenda, and proposed in-person, substantive sessions with each defendant group.[7] Defendants declined the in-person format, proposed a single ninety-minute videoconference for all nine defendants and declined to discuss IT infrastructure or ESI sources. At the conference on June 15, 2026, no Defendant identified any custodian beyond those in its

---

[6] ECF No. 132 at 10.

[7] Declaration of Shauna Itri setting forth the parties' correspondence is submitted herewith as Exhibit A.

Rule 26(a)(1) initial disclosures, and no Defendant identified any source of discoverable information.

On July 10, 2026, in the context of addressing disputes regarding negotiations over the ESI Protocol, the Court held that because Rule 26(f) requires a discovery plan addressing ESI, parties should be informed about custodians and sources ahead of the 26(f) conference. In its Order, the Court referenced that other MDL courts have required defendants to share preliminary information about IT infrastructure, sources of discoverable material, and custodians at the Rule 26(f) conference.[8] Defendants then served supplemental disclosures on July 23, 2026. Case Management Order No. 2, dated July 29, 2026, directed the parties to confer on the adequacy of those disclosures and the scope of Rule 26(f) obligations.[9] On August 6, 2026, Plaintiffs served individualized deficiency letters to each Defendant regarding the adequacy of disclosures and the parties conferred on August 17, 2026. Defendants subsequently supplemented their disclosures on August 21 and 27, 2026.

Defendants' piecemeal and inadequate disclosures represent the absence of the transparent and cooperative process that is needed to make discovery planning efficient and effective under Rule 26(f). Defendants have not identified what legal standard they believe governs the scope of their disclosures. They have not confirmed that their disclosures are complete against any standard. They have not explained which categories of information they are declining to provide, on what basis, and with what legal authority. Instead, they have characterized every supplementation as a "compromise," a framing that presupposes a negotiation rather than an obligation. Rule 26(f) is

---

[8] ECF No. 132 at 8.
[9] ECF No. 153, para. 6 and n.3.

not a negotiation. The obligation to identify where relevant information resides does not depend on Plaintiffs' willingness to accept something less.

## III. ARGUMENT

### A. Rule 26(f) Imposes Disclosure Obligations that Require Transparency and Cooperation

Rule 26(f) is the mechanism by which the parties develop a discovery plan that is grounded in a shared understanding of where relevant information resides, what systems contain it, how it can be retrieved, and what predecessor or legacy sources may house relevant ESI from the relevant period. The obligation is mandatory. Rule 26(f)(2) requires the parties to "develop a proposed discovery plan." Rule 26(f)(3)(C) requires that plan to address "any issues about disclosure, discovery, or preservation of electronically stored information." The Rules make identification the precondition for everything that follows. Indeed, Rule 26(b)(2)(B) limits a party's right to withhold ESI only from sources it claims are not reasonably accessible after first identifying those sources.

The Advisory Committee documented both the importance and the failure of Rule 26(f) obligations empirically. In December 2011, the Committee reported that the Federal Judicial Center ("FJC") had "begun an inquiry into actual practices at the outset of litigation, focusing on initial scheduling orders and Rule 16(b) conferences, and also on Rule 26(f) discovery-planning conferences."[10] An FJC docket study examining more than 11,000 civil cases found that the median time from filing to the close of discovery is 312 days in ordinary cases and 359 days in complex cases.[11] A separate attorney survey presented to the Advisory Committee in March 2012

[10] Report of the Civil Rules Advisory Committee (Dec. 2, 2011), *available at* https://www.uscourts.gov/sites/default/files/fr_import/CV12-2011.pdf.

[11] Emery G. Lee III, The Timing of Scheduling Orders and Discovery Cut-Off Dates 1 (FJC Oct. 2011).

found that 73 percent of attorneys reported their Rule 26(f) meeting lasted 30 minutes or less.[12] In response, the Advisory Committee encouraged more substantive front-end engagement, adding ESI preservation to the mandatory discovery plan topics under Rule 26(f)(3)(C) and accelerating scheduling order deadlines under Rule 16(b).[13]

The amendments that followed from those findings reinforced what the Rule's text had always required. Rule 26(b)(2)(B) permits withholding ESI only from sources "that the party identifies as not reasonably accessible because of undue burden or cost." The Advisory Committee was unambiguous: "The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing," and that identification "should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources."[14]

Courts have enforced these obligations directly. The Manual for Complex Litigation directs that the responding party "should be forthcoming and explicit in identifying what data are available from what sources, to allow formulation of a realistic computer-based discovery plan."[15] In *Seroquel*, the court held that "[i]dentifying relevant records and working out technical methods for their production is a cooperative undertaking, not part of the adversarial give and take," that "[i]t is not appropriate to seek an advantage in the litigation by failing to cooperate in the identification

---

[12] Emery G. Lee III, Early Stages of Litigation Attorney Survey (FJC Mar. 2012) (Tab A-7, Mar. 2012 Advisory Committee Addendum).
[13] Report of the Civil Rules Advisory Committee 3-7 (May 8, 2013), *available at* https://www.uscourts.gov/sites/default/files/fr_import/CV05-2013.pdf; Report of the Civil Rules Advisory Committee 4-6 (May 2, 2014), *available at* https://www.uscourts.gov/sites/default/files/fr_import/CV05-2014.pdf.
[14] Fed. R. Civ. P. 26(b)(2)(B) advisory committee's note to 2006 amendment.
[15] *In re Seroquel Prods. Liab. Litig.,* 244 F.R.D. 650, 654-55 (M.D. Fla. 2007) (quoting Manual for Complex Litigation (Fourth) sec. 11.446).

of basic evidence," and that the failure was attributable "primarily [to] AZ, as the creator and owner of the information, which has failed to make a sincere effort to facilitate an understanding of what records are kept and what their availability might be."[16] That court structured its case-management order so that the defendant's "identification of the databases would not be construed as an agreement to produce them."[17]

In *Camesi v. University of Pittsburgh Medical Center*, the court held that "[i]n identifying potentially responsive ESI sources, Defendants must provide a reasonable description regarding the type of information stored therein."[18] In *Doe LS 340 v. Uber Technologies, Inc*., the court confirmed that "the disclosure of information indicating non-custodial sources of the ESI is expected in the ordinary course of discovery."[19] And in this district, Judge Facciola observed that "Rule 26(f), as amended, specifically requires the parties to discuss the form that production of electronically stored information should take," and that courts "have reached the limits of their patience with having to resolve electronic discovery controversies that are expensive, time consuming and so easily avoided by the lawyers' conferring with each other on such a fundamental question."[20] The cost of that failure is not abstract. When parties decline to identify sources at the Rule 26(f) stage, disputes that could have been resolved in a letter resurface at the close of discovery, when the remedy is far more disruptive than the disclosure would have been. In *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc*., a defendant failed to identify its archives as a source it was not searching, then invoked burden when the omission surfaced. The court refused: "parties should not be permitted to conceal potential sources of responsive information in

[16] 244 F.R.D. at 660.
[17] *Id*.
[18] 269 F.R.D. 493, 496 (W.D. Pa. 2010).
[19] 710 F. Supp. 3d 794, 803 (N.D. Cal. 2024).
[20] *Covad Commc'ns Co. v. Revonet, Inc*., 254 F.R.D. 147, 149, 151 (D.D.C. 2008).

the hope that the opposing party does not discover their deliberate omission until the discovery deadline has expired."[21]

The identification obligation is also grounded in Rule 26(g). Compliance with the "spirit and purposes" of the discovery rules "requires cooperation by counsel to identify and fulfill legitimate discovery needs yet avoid seeking discovery the cost and burden of which is disproportionally large to what is at stake in the litigation," and counsel "cannot 'behave responsively' during discovery unless they do both, which requires cooperation rather than contrariety, communication rather than confrontation."[22] Rule 26(g) exists to stop parties from objecting "reflexively, but not reflectively, and without a factual basis."[23] The Court has already found that Defendants "simply gesture toward Rule 26(b)(1)'s requirement of proportionality" without "more specificity as to burden."[24] The August letters prove that disclosure is achievable and that it remains incomplete: every letter reserves the right to modify, none represents completion, and there are gaps present across every defendant.

### B. Practice Confirms That Transparent and Cooperative Disclosures Promote Efficient and Effective Discovery Planning in Complex Litigation

Courts presiding over complex cases have consistently structured early ESI disclosures to promote the kind of transparency and cooperation that effective discovery planning requires. District courts across every circuit have adopted local rules, standing orders, guidelines, or ESI checklists that specifically require parties to address custodians, data sources, system architecture,

---

[21] 272 F.R.D. 350, 359 (W.D.N.Y. 2011).
[22] *Mancia v. Mayflower Textile Servs. Co*., 253 F.R.D. 354, 357-58 (D. Md. 2008).
[23] *Id*. at 358.
[24] ECF No. 132 at 8. "The basic allocation of the burden on the party resisting discovery" requires "specifically object[ing] and show[ing] that . . . a discovery request would impose an undue burden or expense or is otherwise objectionable." *Oxbow Carbon and Minerals LLC v. Union Pac. R.R. Co*., 322 F.R.D. 1, 6 (D.D.C. 2017)

and production formats at or before the Rule 26(f) conference, reflecting a settled judicial consensus that early, specific, and substantive ESI disclosure is not a burden but a foundation for effective discovery planning.[25] The approach these courts have taken is not unusual; it reflects

[25] *See, e.g.*, N.D. Cal. ESI Checklist for Rule 26(f) Meet and Confer (requiring identification of custodians by name or role, description of systems, and disclosure of how potentially discoverable information is stored and collected) *available at* https://cand.uscourts.gov/sites/default/files/wp-content/uploads/forms/e-discovery-esi-guidelines/ESI_Checklist-12-1-2015.pdf; D.N.J. L. Civ. R. 26.1 (requiring structured disclosure of discovery plans addressing specified ESI issues including custodians, systems, and non-custodial sources) *available at* https://www.njd.uscourts.gov/sites/njd/files/CompleteLocalRules.pdf; D. Conn. Local Rules and Appendix *available at*: https://ctd.uscourts.gov/sites/default/files/Revised-Local-Rules-06-01-2020.pdf; D. Del. Default Standard for Discovery, Including ESI (requiring early identification of custodians, custodial sources, non-custodial sources, and system descriptions) *available at* https://www.ded.uscourts.gov/sites/ded/files/EDiscov.pdf; W.D. Pa. L.R. 26.2 (governing discovery of ESI including custodian identification and data-source disclosure) *available at* https://www.pawd.uscourts.gov/sites/pawd/files/lrmanual20181101.pdf; D. Md. Principles for ESI Discovery (emphasizing cooperation and proportionality in early ESI planning) *available at* https://www.mdd.uscourts.gov/sites/mdd/files/ESI-Principles.pdf; N.D. Ohio L.R. App. K (Default Standard for Discovery of ESI) *available at* https://www.ohnd.uscourts.gov/sites/ohnd/files/AppendixK.pdf; D. Colo. Rule 26(f) ESI Checklist (addressing preservation, custodians, metadata, and production format) *available at* https://www.cod.uscourts.gov/Portals/0/Documents/Forms/CivilForms/E-Discovery_Checklist.pdf; S.D. Fla. Rule 26(f) Checklist; *available at* https://www.flsd.uscourts.gov/sites/flsd/files/forms/ESI-Checklist.Rule-16.1..pdf; D.N.H. Checklist for Rule 26(f) Meet and Confer *available at* https://www.nhd.uscourts.gov/pdf/ESI_Checklist.pdf; D. Haw. eDiscovery Rule 26(f) Checklist and Model ESI Order *available at* https://www.hid.uscourts.gov/files/1sidefile1/ESI_Checklist.pdf; D. Utah ESI Checklist *available at* https://www.utd.uscourts.gov/sites/utd/files/ESI%20Checklist.pdf; W.D. Mo. ESI Checklist and ESI Principles *available at* https://www.mow.uscourts.gov/sites/mow/files/DC_Civil%20ESI%20Principles.pdf; N.D. Iowa ESI Template Order *available at* https://www.iand.uscourts.gov/sites/iand/files/ESI%20template%20order.pdf; D. Kan. ESI Guidelines *available at* https://www.ksd.uscourts.gov/sites/ksd/files/Guidelines-for-cases-involving-ESI-July-18-2013.pdf; W.D. Wash. Model Discovery Protocol; E.D. Mich. Model Order Re Discovery of ESI *available at* https://www.wawd.uscourts.gov/sites/wawd/files/020123%20WAWD%20Local%20Civil%20Rules%20CLEAN.pdf; M.D. Tenn. Administrative Order Regarding eDiscovery *available at* https://www.tnmd.uscourts.gov/sites/tnmd/files/AO%20174-1%20entered%209-12-18.pdf; E.D. Tex. (Judges Gilstrap and Schroeder) *available at* https://www.txed.uscourts.gov/sites/default/files/judgeFiles/RS%20-%20Standing_Order_re_Meet_and_Confer.pdf; and S.D.N.Y. (Magistrate Judges Lehrburger,

what Rule 26(f) requires and what experience in complex litigation has confirmed works.[26] This Court cited the *Depo-Provera* standard directly on July 10, 2026, a standard that reflects a consistent and well-developed practice across complex litigation courts nationwide.[27]

**C. The Custodian Disclosures Are Inadequate**

The Consolidated Complaint alleges that settlement administrators received undisclosed financial benefits, interest-sharing, breakage splits, and vendor compensation, through relationships with banks and fintechs that were concealed from the courts presiding over underlying settlements. The custodians relevant to those allegations span the functions through

---

Willis, Wang, Cave, and Parker) *available at* https://www.nysd.uscourts.gov/sites/default/files/practice_documents/rwfJointElectronicDiscoverySubmission%28pdffillable%29.pdf.

[26] *See*, *e.g.*, Case Mgmt. Order No. 1 at 6-8, *In re Depo-Provera (Depot Medroxyprogesterone Acetate) Prods. Liab. Litig.,* No. 3:25-md-03140-MCR-HTC (N.D. Fla. Feb. 23, 2025), ECF No. 72 (requiring defendants to share "preliminary information about their IT infrastructure, as well as the locations of potentially discoverable material and how best to collect and retrieve it," with IT personnel required to attend, and to address search methodology and TAR protocol); Case Mgmt. Order No. 1, *In re 3M Combat Arms Earplug Prods. Liab. Litig*., No. 3:19-md-02885-MCR-GRJ (N.D. Fla. June 17, 2019), ECF No. 86 (multi-day Rule 26(f) conference with IT personnel; disclosure of "information about their IT infrastructure, as well as the locations of potentially discoverable material and how best to collect and retrieve it . . . the number and identities of custodians whose data will be preserved and collected"); Stipulation and Order, para. 7(a), *In re Samsung Customer Data Sec. Breach Litig.,* No. 1:23-md-03055 (D.N.J. June 26, 2023), ECF No. 66 (requiring disclosure of custodian identities and roles, "the programs and systems used by these departments or individuals," and "the locations and descriptions of non-custodial data sources"); Pretrial Order No. 49, *In re Taxotere (Docetaxel) Prods. Liab. Litig*., No. 2:16-md-02740-JTM-MBN (E.D. La. July 6, 2017), ECF No. 611-1 (requiring custodian list with job title, description, and employment period; database name, type, software platform, software version, and business purpose); Pretrial Order No. 95, *In re Generic Pharms. Pricing Antitrust Litig*., No. 2:16-md-02724-CMR (E.D. Pa. July 12, 2019), ECF No. 1045 (requiring producing party to "disclose the Potential Custodians it proposes" and "disclose and identify the Custodial Data Sources including structured and unstructured data" and "Non-Custodial Data Sources"); Pretrial Order No. 18, *In re Philips Recalled CPAP, Bi-Level Pap, and Mechanical Ventilator Prods. Liab. Litig*., No. 2:21-mc-01230-JFC (W.D. Pa. July 21, 2022), ECF No. 660 (requiring "Initial ESI Conference" to address "identity and role of custodians," "selection of custodial and non-custodial sources," and "identification of noncustodial data sources").

[27] ECF No. 132 at 8.

which the alleged conduct was carried out, and the arrangements were managed.

The record at issue was generated by: the people who selected banks and fintechs and negotiated the terms of those relationships; the people who managed those relationships and accounts day to day; the people who accounted for and booked the resulting revenue; the people who prepared financial statements, management accounts, and tax filings reflecting settlement-related income; the people who prepared bids and proposals in underlying cases; the people who executed and managed individual QSF accounts; and the people who prepared and signed declarations and court submissions in underlying class action settlements describing the nature and terms of the administrators' services.

Meanwhile, several defendant groups identified no custodian from finance, accounting, treasury, records management, or compliance. For several defendants, the identified custodians are confined entirely to sales, business development, and executive roles. Two groups that did reach finance or operations functions identified only titleholders without supplying role dates or subject-matter descriptions sufficient to evaluate whether the relevant records are covered. Several defendants confirmed their custodian lists were built by reference to the Consolidated Complaint's allegations but have not disclosed which custodians handle which categories of conduct alleged. The question is whether the disclosures cover the people who handled the money, kept the books, made the decisions about what to disclose to courts, and prepared the representations in underlying settlements. On the current record, the answer for most defendants is no. *In re EpiPen* confirms the sequence Defendants resist. The standard permitting a requesting party to seek additional custodians presupposes that the producing party has first identified its own. The requesting party bears "the initial threshold burden of showing that the disputed custodian's ESI likely includes

information relevant to the claims or defenses."[28] A party cannot meet that burden if it has not been told who the candidates are or what subject matter the disclosed custodians cover.

### D. The Source Disclosures Are Inadequate

The same opacity that characterizes the custodian disclosures extends to the sources themselves. The subject matter descriptions provided for non-custodial sources are generic rather than substantive. For example, several defendants identified a customer relationship management platform without stating whether it records vendor compensation terms, referral fee arrangements, or breakage calculations. Several identified a claims administration platform without stating whether it contains the financial terms of the bank and fintech relationships at issue. Rule 26(f)(3)(C) requires identifying sources "through which relevant information flows," which means connecting source descriptions to the subject matter of the claims, not merely describing platform functions.

Additionally, several defendants underwent acquisitions during or before the relevant period, carrying predecessor entities, legacy systems, and inherited data architectures that have not been disclosed. Equally absent is any description of data migration. When systems are replaced, data from predecessor platforms must go somewhere. No defendant has described what happened to data from any predecessor system. For several defendants, the data migration question is not theoretical; it is the central gap in their disclosure. A producing party that identifies its current claims platform but says nothing about the data for the period before that platform came into use has not disclosed where the relevant information resides.

---

[28] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018).

No defendant has addressed how relevant material can be located or retrieved from any disclosed source or provided any estimate of the volume of potentially relevant data by source. These are not peripheral requests. MDL courts routinely require both at the Rule 26(f) stage: defendants in complex matters are expected to identify not just where data resides but how it can be accessed and collected, and to provide the volume information necessary for meaningful proportionality analysis.[29] Indeed, in *Depo-Provera*, the case management order this Court referenced in its July 10th Order, required disclosure of "the locations of potentially discoverable material and how best to collect and retrieve it." The Federal Rules compel the same. The Advisory Committee was explicit that proportionality uncertainties "should be addressed and reduced in the parties' Rule 26(f) conference and in scheduling and pretrial conferences with the court."[30] Manual for Complex Litigation section 11.442 adds that a preservation order "will likely be ineffective if it is formulated without reliable information from the responding party regarding what data-management systems are already in place, the volume of data affected, and the costs and technical feasibility of implementation." No defendant has provided either. Without this information, effective and targeted search terms and TAR protocols cannot be developed. Without volume estimates, proportionality cannot be assessed. Without both, no discovery plan can be built.

Mobile device disclosures present a specific and significant gap in this case. Several defendants acknowledge that custodians used personal devices for substantive business communications but do not identify whether Mobile Device Management ("MDM") software was in place and when it was implemented. That information is material for two reasons. First, where MDM software exists, it impacts whether the company has the technical ability to access, collect,

---

[29] *See*, *e.g.*, *supra* note 27.
[30] Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

or remotely wipe device data in response to a litigation hold and whether the hold, in fact, reached personal device content. Second, where no MDM software exists, or where it was implemented after the litigation hold date, a company's ability to preserve or collect personal device data may depend entirely on whether its BYOD policy contractually established possession, custody, or control over that content. Courts have held that whether an employer can be compelled to produce text messages and other data from employees' personal devices turns on the scope and terms of its BYOD policy, specifically, whether that policy asserts the employer's ownership over or access to device data beyond company-synced information.[31] Where no MDM exists, and the BYOD policy does not establish control, the company may lack standing to collect the data at all, leaving personal device content available only through third-party subpoenas to individual employees, at additional burden and delay to the litigation. No defendant has provided the MDM software information, its implementation date, or the terms of any BYOD policy in sufficient detail to evaluate whether personal device data has been preserved or can be collected without third-party process.

Additionally, transaction data rooms are directly relevant to this litigation and are an independent source of information that cannot be replicated from operational systems. When a buyer evaluates the purchase of a settlement administrator, the seller assembles a data room organized to present the business with the specificity and accuracy that arm's-length transactions demand, covering financial records, vendor contracts, compensation arrangements, fee structures, interest arrangements, and breakage metrics, because misrepresentation in a disclosure schedule creates direct liability to the buyer. The Consolidated Complaint places that same financial architecture at the center of this case. Beyond acquisition due diligence, institutional buyers often maintain ongoing data room access after closing to monitor the business they acquired, meaning

[31] *See In re Pork Antitrust Litig.*, 2022 WL 972401, at *3-4 (D. Minn. 2022).

data rooms may contain not just pre-acquisition disclosures but also post-acquisition financial reporting and vendor relationship updates as well. Here, only one defendant acknowledged that data room materials even exist while the remaining defendants refused to identify or disclose any data room materials, characterizing the entire category as duplicative without identifying what it purportedly duplicates. That objection cannot be accepted without identifying what current operational sources allegedly contain the same information.[32]

## IV. CONCLUSION

Rule 26(f) asks the parties to plan discovery together. That is not possible when one side alone knows what to plan for. Plaintiffs respectfully request an order directing each Defendant, within fourteen days, to provide complete disclosures addressing:

1. All custodians who hold or held information potentially relevant to the claims and defenses, with each custodian's name, title, tenure, functional responsibilities, subject matter of information held, and associated custodial sources;

2. Each system and repository in which relevant information may reside, including the period during which each has been in use, a description of the subject matter of the information it holds linked to the document categories identified, the system it replaced, and where information from replaced systems now resides, and how relevant material in each source can be located and retrieved;

3. Any legacy, archival, or decommissioned system that holds information from the relevant period, what happened to data when any predecessor system was replaced or decommissioned, and what steps have been taken to preserve information from those systems;

4. Transaction data rooms from any acquisition or investment transaction involving the defendant or any predecessor business during the relevant period, including the categories of materials the data room contained, where those materials are maintained, and whether any data room materials have been preserved pursuant to a litigation hold;

5. For each defendant's BYOD and mobile device policy, whether MDM software is in place, the date it was implemented, whether the disclosed custodians' personal devices are subject to that software, and what preservation steps have been taken for personal device data; and

[32] A source cannot be dismissed as cumulative of unidentified material, Fed. R. Civ. P. 26(b)(2)(B) advisory committee's note to 2006 amendment; *Star Direct Telecom*, 272 F.R.D. at 359.

6. A good-faith estimate of the volume of potentially relevant data by source, sufficient to permit the parties to engage in the proportionality analysis required by Rule 26(b)(1) and to develop search methodology and, where appropriate, a TAR protocol.

Dated: September 8, 2026

Respectfully Submitted,

*/s/* Christopher A. Seeger
Christopher A. Seeger
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: 212-584-0700
Email: cseeger@seegerweiss.com

Shauna Itri
Seeger Weiss LLP
325 Chestnut Street
Suite 917
Philadelphia, PA 19106
Telephone: 267-973-4265
Email: sitri@seegerweiss.com

*Plaintiffs' Lead Counsel*

David Boies
Adam Shaw
BOIES SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: 914-749-8201
Email: dboies@bsfllp.com
Email: ashaw@bsfllp.com

Bryan F. Aylstock
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ
17 E. Main St.
Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Email: baylstock@awkolaw.com

Kiley Grombacher
BRADLEY/GROMBACHER, LLP
31365 Oak Crest Drive
Suite 240
Westlake Village, CA 91361
Telephone: 805-270-7100
Email:
kgrombacher@bradleygrombacher.com

Eric Lechtzin
EDELSON LECHTZIN LLP
411 S. State Street
Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Email: elechtzin@edelson-law.com

David S. Stone
STONE & MAGNANINI LLP
400 Connell Drive
Suite 6200
Berkeley Heights, NJ 07922
Telephone: (973) 218-1111
Email: dstone@smcomplex.com

*Plaintiffs' Executive Committee*