**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION** | **Misc. Action No. 25-179 (JDB); MDL Docket No. 3162** |
| **This Document Relates To: ALL CONSOLIDATED ACTIONS** | |

**PLAINTIFFS' OPPOSITION TO KROLL, LLC AND KROLL SETTLEMENT ADMINISTRATION LLC'S MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 2

I. KROLL, LLC IS A PROPER DEFENDANT ........................................ 2

A. Kroll's Veil-Piercing-or-Nothing Rule Is Not the Law ........................................ 2

B. The Complaint Pleads Kroll's Own Conduct ........................................ 3

C. Pleading the Affiliated Kroll Entities Collectively Is Proper ........................................ 5

1. The Parent's alleged direct participation presents fact-intensive questions ........................................ 6

2. Alternatively, any dismissal of KLLC should be without prejudice, with leave to amend ........................................ 7

II. THE NON-KSA PLAINTIFFS DO NOT DEFEAT ARTICLE III STANDING ........................................ 7

III. KROLL'S ATTACK ON THE FRAUDULENT CONCEALMENT CLAIM FAILS ........................................ 8

A. The Court Should Not Consider Kroll's Exhibit A ........................................ 8

B. Kroll's Disclosure Language, Even If Considered, Does Not Establish Disclosure ........................................ 9

C. Rule 12(b)(6) Does Not Permit the Piecemeal Dismissal Kroll's Motion Requests ........................................ 12

CONCLUSION ........................................ 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*2301 M Cinema LLC v. Silver Cinemas Acquisition Co.*,
342 F. Supp. 3d 126 (D.D.C. 2018) .......... 7

**Am. President Lines, LLC v. Matson, Inc.*,
633 F. Supp. 3d 209 (D.D.C. 2022) .......... 4

**Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) .......... 8, 9

**Bonilla-Santiago v. BLB Privatized Hous., LLC*,
2022 WL 990681 (D.D.C. Mar. 31, 2022) .......... 5

*Brandon Mill LLC v. FDIC*,
2019 WL 3458688 (D.D.C. July 31, 2019) .......... 3, 5

*Buffalo Trump Tower One, LLC v. TRG Sunny Isles V, Ltd.*,
2009 WL 10667160 (S.D. Fla. Mar. 19, 2009) .......... 11

**Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 11

**Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) .......... 7

*Coubaly v. Cargill, Inc.*,
610 F. Supp. 3d 173 (D.D.C. 2022) .......... 7

*Daves v. Dallas Cnty., Texas*,
22 F.4th 522 (5th Cir. 2022) .......... 7

*Doe v. Bank of Am. Corp.*,
273 F. Supp. 3d 203 (D.D.C. 2017) .......... 4

**EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*,
621 F. Supp. 3d 30 (D.D.C. 2022) .......... 11

**Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) .......... 7

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 7

**FTC v. Facebook, Inc.*,
581 F. Supp. 3d 34 (D.D.C. 2022) .......... 12

*Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*,
836 F.3d 261 (3d Cir. 2016) .......... 9

*IGOLF, Inc. v. Bushnell Holdings, Inc.*,
2025 WL 875913 (S.D. Cal. Mar. 4, 2025) .......... 4, 7

*In re Willis Towers Watson plc Proxy Litig.*,
937 F.3d 297 (4th Cir. 2019) .......... 12

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 8

**Liberty Prop. Tr. v. Republic Props. Corp.*,
577 F.3d 335 (D.C. Cir. 2009) .......... 6

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962) .......... 11

*Real World Media LLC v. Daily Caller, Inc.*,
744 F. Supp. 3d 24 (D.D.C. 2024) .......... 8

**Scott v. J.P. Morgan Chase & Co.*,
296 F. Supp. 3d 98 (D.D.C. 2017) .......... 10

**Sears v. Magnolia Plumbing, Inc.*,
778 F. Supp. 2d 80 (D.D.C. 2011) .......... 6

*United Mine Workers of Am. v. Coronado Coal Co.*,
259 U.S. 344 (1922) .......... 3

**United States ex rel. Heath v. AT&T, Inc.*,
791 F.3d 112 (D.C. Cir. 2015) .......... 6

*United States v. Bestfoods*,
524 U.S. 51 (1998) .......... 2, 3, 6

**Weiss v. Bank of Am. Corp.*,
153 F. Supp. 3d 831 (W.D. Pa. 2015) .......... 11

*WhaleCo Inc. v. Shein Tech. LLC*,
2025 WL 2801861 (D.D.C. Sept. 30, 2025) .......... 6

**INTRODUCTION**

Kroll[1] has spent years presenting itself to appointing settlement courts and settlement counsel as a single settlement administrator, marketed under a single name. Sued by class members whose settlement funds it held, Kroll now asks this Court to treat it as two companies and to conclude that Plaintiffs named the wrong one.

Kroll does not use this motion to deny that it received payments from the Banks and FinTechs that Plaintiffs allege reduced class distributions. It does not deny the arrangements existed. It does not deny they were systematic. It argues instead that Kroll's proposals "often did disclose the very payments Plaintiffs allege were wholly concealed," Kroll Br. 5,[2] and it reserves any challenge to the "scope, knowledge, and existence" of those payments for "a later time, if necessary." Kroll Br. 4 n.4.[3] What Kroll contests is which Kroll entity took the money, a fact that appears in Kroll's own books and nowhere else. Asking Plaintiffs to plead it before any discovery is not a test of the Complaint; it is a demand for information that a motion to dismiss cannot reach.

The rest of the motion depends on material outside the pleading. To get the parent dismissed, Kroll asserts that "KSA, not Kroll, plainly was the settlement administrator for the settlements in the Complaint," Kroll Br. 5, though the Complaint says no such thing and pleads both entities together as "Kroll." To cut down the fraudulent concealment claim, Kroll attaches an unsigned, uncaptioned page of standard commercial terms and conditions to its brief, drawn from

---

[1] Defendants Kroll LLC and Kroll Settlement Administration LLC will be referred to as "KLLC" and "KSA" respectively and Kroll collectively.

[2] References to Kroll, LLC and Kroll Settlement Administration LLC's Motion to Dismiss Plaintiffs' Consolidated Class Action complaint are to "Kroll Br."

[3] That reservation is itself telling: Kroll cannot simultaneously invoke an exhibit to establish adequate disclosure of arrangements whose scope, knowledge, and existence it refuses to confirm, and ask this Court to rule that those arrangements — whatever they are — were adequately disclosed. A party that reserves the right to deny an arrangement exists cannot use that arrangement's alleged disclosure to defeat a fraud claim about concealing it.

a settlement the CCAC[4] never mentions submitted without any declaration confirming it was transmitted to or received by class counsel or defense counsel in any of the seven settlements Kroll identifies, and buried in Section 6 of a thirteen-section vendor contract between a heading titled "BANK ACCOUNTS" and one titled "TERMINATION" — not in any section titled "Compensation," "Conflicts of Interest," or "Disclosure." And its standing argument asks the Court to drop twelve of the twenty-one named plaintiffs while conceding that the other nine may sue. The motion should be denied.

## ARGUMENT

### I. KROLL, LLC IS A PROPER DEFENDANT

KLLC and KSA are one settlement-administration business, Kroll, wearing two names. They share a brand, an address, and a website, and the CCAC pleads them together as "Kroll." ¶ 48. Now that the business is a defendant, Kroll asks to be treated as two: "[t]he Complaint alleges nothing about Kroll," Kroll Br. 1, and that KLLC is here for nothing more than "parent status, standing alone." Kroll Br. 5. Neither statement survives a reading of the CCAC, and the rule Kroll builds on them is not the law.

#### A. Kroll's Veil-Piercing-or-Nothing Rule Is Not the Law

Kroll's motion rests on a false dichotomy: that a parent is liable only if a court pierces the corporate veil, and that any allegation short of veil-piercing amounts to liability based on "parent status, standing alone." Kroll Br. 5. Kroll is correct that parent status alone confers no liability. But that proposition has no traction here, because it is not Plaintiffs' theory. A corporation answers for its own conduct and for the acts of its own agents. Owning a subsidiary neither creates that liability nor dissolves it.

---

[4] The Consolidated Class Action Complaint will be referred to as "the Complaint" or "CCAC", and references to the allegations in the CCAC will be made by unattributed paragraph references, "¶¶"

Kroll's own authority says as much. *Bestfoods* holds that deriving one corporation's liability from another's acts requires piercing the veil. *United States v. Bestfoods*, 524 U.S. 51, 63-64 (1998). But the Court separated those cases from the ones in which "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management" and "the parent is directly a participant in the wrong complained of," *Id.* at 64-65. "In such instances, the parent is directly liable for its own actions." *Id.* at 65. The Court placed that rule outside corporate law altogether: a "corporation is [itself] responsible for the wrongs committed by its agents in the course of its business." *Id.* (quoting *United Mine Workers of Am. v. Coronado Coal Co.*, 259 U.S. 344, 395 (1922)). Veil piercing limits when one corporation answers for another. It has never limited when a corporation answers for itself.

Kroll concedes the rule it needs the Court to overlook. Its brief acknowledges that claims proceed where plaintiffs "plead direct liability against a parent," meaning where they allege "that the parent itself participated in the challenged conduct." Kroll Br. 6. So does the authority Kroll cites for that proposition. *Brandon Mill LLC v. FDIC*, 2019 WL 3458688, at *7 (D.D.C. July 31, 2019). The question before the Court is not whether KLLC owns KSA. It is whether the Complaint alleges that KLLC participated in the conduct at issue. It does, in detail.

### B. The Complaint Pleads Kroll's Own Conduct

Kroll did not inherit this business. It bought it. The Complaint alleges that "[i]n 2019, Kroll acquired the Heffler Claims Group, a leading settlement administrator," citing the acquisition announcement hosted on kroll.com, the Kroll-branded domain identified in the Complaint. ¶ 48 & n.13. That acquisition occurred "while administration of [the *Yahoo!*] settlement was ongoing," *id.* ¶ 187, after which "Kroll (which now owned Heffler) implemented a massive notice campaign." ¶ 192.

Every trust-inducing representation the Complaint challenges traces to the Kroll-branded website. KLLC and KSA "maintain their principal place of business" at the same address: 285 Fulton Street, 31st Floor, New York. ¶ 48. The business is marketed on kroll.com under the "Kroll" brand, where Kroll advertises that "it has managed more than 4,000 settlements, processed more than 100 million claims, and distributed more than $30 billion," ¶ 48 & n.14, calls itself "the leader in complex settlement administration," ¶ 93 & n.42, and invites clients to "choose Kroll" as a "trusted administrator." ¶ 94 & n.44. The conduct at the heart of this case ran through that same site, which promoted "prepaid Visa cards as a worthy alternative to checks" while saying "nothing about the breakage that could consume the entire settlement amount for class members who never redeemed their cards." ¶ 147.

The Complaint does not allege that KLLC merely owned KSA while KSA administered settlements. It alleges that Kroll "exercised substantial discretion and control" over each of the three exemplar settlements: "calcula[ting] the Net Settlement Fund after deducting fees and administrative costs, including its own administrative costs and fees; determin[ing] the validity of claims; and direct[ing] the timing and method of distributions to class members." ¶¶ 180, 195, 211. "[I]n its administration of class action settlements, Kroll directed digital payment disbursements through co-conspirators Blackhawk Network and Digital Disbursements, and caused settlement funds to be deposited with co-conspirators Huntington National Bank and Western Alliance Bank." *Id.* ¶ 48. And "the Administrator Defendants, and/or their subsidiaries and affiliates, received remuneration, compensation, or incentives from the FinTech Defendants and Bank Defendants that reduced payouts to class members." ¶ 44. None of that describes a passive owner.

Kroll's authorities do not describe this case. Each dismissed a parent because the complaint said nothing about it. *Doe v. Bank of Am. Corp.*, 273 F. Supp. 3d 203, 209 (D.D.C. 2017) (plaintiffs

"pled no facts under either a direct or derivative theory of liability"); *Am. President Lines, LLC v. Matson, Inc.*, 633 F. Supp. 3d 209, 234 (D.D.C. 2022) (complaint "fail[ed] to allege facts indicating that any of the alleged anti-competitive conduct was undertaken by, or can be traced to," the parent); *IGOLF, Inc. v. Bushnell Holdings, Inc.*, 2025 WL 875913, at *2 (S.D. Cal. Mar. 4, 2025) (plaintiff "cannot rest solely on the parent-subsidiary relationship to create liability"). The Complaint here does none of that, and at the pleading stage the reasonable inference is that KLLC participated in or benefited from the business the Complaint attributes collectively to Kroll. *See Brandon Mill,*2019 WL 3458688, at *7.

### C. Pleading the Affiliated Kroll Entities Collectively Is Proper

Kroll's fallback is that Plaintiffs used one name for two entities, "defin[ing] Kroll and KSA collectively as 'Kroll' and then levy[ing] every allegation against both of them." Kroll Br. 6. Its reliance on appointment orders naming "Kroll Settlement Administration LLC" rather than "Kroll, LLC," *id.* at 2-3 & n.2, proves nothing. No one disputes that KSA was the appointed administrator. The question is whether KLLC participated in or benefited from the business those appointments generated, and on the collective term is no pleading defect.

Most significantly, Kroll's own Terms and Conditions define the contracting party collectively: "[a]ll services to be provided by Kroll Settlement Administration LLC (together with its affiliates, 'Kroll')" are subject to the Terms. Kroll Br., Ex. A. Every operative right and obligation runs to that collective "Kroll," including the banking role at the center of the Complaint. *Id.* § 6. The term "affiliates" is broader than the immediate parent-subsidiary relationship — it encompasses any entity under common ownership or control, including holding companies and related investment vehicles and possibly officers. Section 6 assigns the authority to establish accounts and the potential to "derive financial benefits" to "Kroll," a term the preamble defines as KSA "together with its affiliates." *Id.* pmbl., § 6. Kroll cannot fault Plaintiffs for pleading in the

collective that Kroll itself chose. *Bonilla-Santiago v. BLB Privatized Hous., LLC*, 2022 WL 990681, at *3 (D.D.C. Mar. 31, 2022).

The D.C. Circuit sustained a fraud complaint against a corporate parent and nineteen subsidiaries without entity-by-entity allocation, holding that "identifying precisely who pulled" the corporate levers "is not an inexorable requirement of Rule 9(b)." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015). The Complaint pleads the settlements, banking partners, payment platforms, interest rates, and omissions comprising the scheme. ¶¶ 171-216.

**1. The Parent's alleged direct participation presents fact-intensive questions**

The "general principle" of corporate separateness on which Kroll relies, *Bestfoods*, 524 U.S. at 61, is where the analysis begins, not where it ends. *Bestfoods* preserves direct parent liability, *id.* at 64-65, and even after a full trial below the Supreme Court declined to resolve the question, vacating and remanding for further factual development of the parent's role. *Id.* at 72-73. Kroll asks this Court to decide on the pleadings what the Supreme Court would not decide after trial.

Courts in this District take the same approach: because such determinations are "fact intensive," "courts understandably have been reluctant to dismiss affiliated corporate entities at the Rule 12(b)(6) stage prior to discovery." *Sears v. Magnolia Plumbing, Inc.*, 778 F. Supp. 2d 80, 85 (D.D.C. 2011). So does the D.C. Circuit, which left the relationships among affiliated entities to be determined "[o]n remand, and on a more developed record." *Liberty Prop. Tr. v. Republic Props. Corp.*, 577 F.3d 335, 341-42 & n.2 (D.C. Cir. 2009).

That reluctance has force here, because the facts needed to determine KLLC's role are exclusively within Defendants' possession. As Plaintiffs explained to the Court, even the identity of the underlying settlements is "in the sole possession of the defendants." 7/28/26 CMC Tr. at

16:1-2. Where such facts "are peculiarly within the possession and control of the defendants," a plaintiff may plead them "on 'information and belief,'" *WhaleCo Inc. v. Shein Tech. LLC*, 2025 WL 2801861, at *8 (D.D.C. Sept. 30, 2025), and the Complaint does. ¶¶ 44, 523(i)-(viii). Kroll asks the Court to dismiss KLLC for failing to plead facts Kroll holds and has not produced.

#### 2. Alternatively, any dismissal of KLLC should be without prejudice, with leave to amend

Even if the Court found the present allegations insufficient, the with-prejudice dismissal Kroll seeks would be unwarranted. Leave to amend "shall be freely given when justice so requires," *Foman v. Davis*, 371 U.S. 178, 182 (1962), and dismissal with prejudice is warranted only where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam) (citation omitted). KSA remains a defendant regardless, so repleading imposes no burden. *See 2301 M Cinema LLC v. Silver Cinemas Acquisition Co.*, 342 F. Supp. 3d 126, 131-32 (D.D.C. 2018); *IGOLF*, 2025 WL 875913, at *1.

## II. THE NON-KROLL PLAINTIFFS DO NOT DEFEAT ARTICLE III STANDING

Kroll next asserts that 12 of the 21 named plaintiffs lack standing because they do not allege participation in a settlement Kroll administered. Kroll Br. 6-7. The argument concedes what defeats it: the other nine do. At the pleading stage, all that is required is that at least one named representative have standing against Kroll. Nine do, and that is eight more than Article III requires. "[F]or each named defendant, at least one named plaintiff must have standing to sue." *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 542 (5th Cir. 2022) (*en banc*); *accord Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007). Kroll's reliance on *Coubaly v. Cargill, Inc.*, 610 F. Supp. 3d 173, 180 (D.D.C. 2022), which requires each plaintiff to link each defendant to a particular injury, does not help it. That standard

is satisfied because nine named Plaintiffs allege participation in KSA-administered settlements and injury traceable to Kroll's conduct. *Coubaly* does not require that every named plaintiff have standing against every defendant; it requires that for every named defendant, at least one named plaintiff have standing. That standard is met nine times over. What Kroll seeks is not dismissal for want of jurisdiction. It is the unwinding of the Panel's consolidation order, one plaintiff at a time.

## III. KROLL'S ATTACK ON THE FRAUDULENT CONCEALMENT CLAIM FAILS

Kroll asks the Court to dismiss Plaintiffs' fraudulent concealment claim "[f]or at least the seven settlements listed in footnote 5," on the theory that "KSA disclosed, in bids and proposals, the potential payments from financial institutions." Kroll Br. 8. The exhibit is not properly before the Court, it discloses nothing Plaintiffs allege was concealed, and the partial dismissal Kroll seeks is procedurally unavailable.

### A. The Court Should Not Consider Kroll's Exhibit A

A document outside the complaint may be considered on a Rule 12(b)(6) motion only if it is specifically referenced in the complaint or integral to the claim, and its authenticity is undisputed. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). Courts read this exception narrowly, because "[d]efendants face an alluring temptation to pile on numerous documents to their motions to dismiss," a "tactic [that] can lead to 'premature dismissals of plausible claims.'" *Real World Media LLC v. Daily Caller, Inc.*, 744 F. Supp. 3d 24, 32 (D.D.C. 2024) (Bates, J.) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)).

Exhibit A satisfies none of the three requirements for incorporation by reference. First, the CCAC does not reference the document. Plaintiffs allege that the Administrators "submitted bids and proposals to class counsel and settling parties that disclosed their administrative fees as if those fees represented the complete cost of administration." ¶ 371. That identifies a category. It does not name the *Naturelo* settlement, describe any document from it, or quote a word of one.

Incorporation by reference requires a specific reference to the document itself, not a categorical reference to a class of documents to which it happens to belong. *Banneker Ventures, LLC*, 798 F.3d at 1133.

Second, the exhibit is not integral to Plaintiffs' claims. A document is integral only if it forms the basis for the claim. *Banneker Ventures, LLC*, 798 F.3d at 1133. Plaintiffs' fraudulent concealment claim turns on whether KSA concealed its compensation, not on what any particular contract said. ¶¶ 475–76. Kroll offers the exhibit for the opposite purpose, to build a defense from a document Plaintiffs never invoked. A document "integral only to the Defendants' attack" does not qualify. *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 273–74 (3d Cir. 2016).

Third, the exhibit's authenticity is disputed. Exhibit A is an unsigned excerpt titled only "Terms and Conditions."[5] Nothing on its face identifies the settlement, the parties, the date, or the case in which it was filed, and it bears no caption, no reference to Wallin, and no signature block. Kroll submits no declaration confirming this document was transmitted to, received by, or reviewed by class counsel or defense counsel in any of the seven settlements it identifies in footnote 5. The only place the word "Naturelo" appears is in Kroll's own brief, Kroll Br. 5 & n.5. *Banneker Ventures*, 798 F.3d at 1133-34.

**B. Kroll's Disclosure Language, Even If Considered, Does Not Establish Disclosure**

Kroll's motion invites the Court to resolve the disclosure adequacy question as a matter of law on this motion to dismiss. The Court should accept that invitation and rule against Kroll. The disclosure adequacy question is objective: the test is what a reasonable class member, supervising

[5] Kroll also offers Exhibit A as an "exemplar" that is "virtually identical to the disclosure in six other settlements discussed in the Complaint." Kroll Br. 5 n.5. But Kroll submits no declaration confirming the actual language in any of those six settlements. "Virtually identical" is not identical. An unsigned exemplar that may or may not reflect the actual terms provided in any specific settlement does not establish what was disclosed in any settlement that matters for purposes of this motion.

court, or counsel reading Kroll's Terms and Conditions would have understood. Applying that objective standard to the face of Kroll's representations, if there was a disclosure, it wasn't adequate.

The Terms and Conditions are standard commercial boilerplate, not a disclosure. Section 6 is titled "BANK ACCOUNTS" and appears as the sixth of thirteen numbered sections, sandwiched between "CONFIDENTIALITY" and "TERMINATION" in a standard vendor services contract. Ex. A. It is not in a section titled "Compensation," "Conflicts of Interest," or "Financial Arrangements." It is not a disclosure to any court — it ***may*** have appeared (Kroll doesn't know) in a bilateral proposal to a "client" (presumably defense and/or settlement class counsel), not in any fee application, administrator declaration, distribution plan, class notice, or court submission in any settlement. ¶¶ 10, 366-369. No court was ever told about this provision. Counsel in the underlying settlements may or may not have received it — Kroll submits no evidence they did. Defense counsel in the underlying settlements, who also had duties to the court and to their clients, received whatever class counsel received. Neither received adequate disclosure of the specific arrangements alleged.

A properly incorporated document that leaves "unanswered key questions" central to a plaintiff's theory does not warrant dismissal. *Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 107-08 (D.D.C. 2017). Kroll's exhibit states only that KSA "may derive financial benefits from financial institutions in connection with the deposit and/or investment of settlement funds with such institutions." Ex. A ¶ 6. Every operative verb is permissive. The clause names no institution, states no rate, describes no mechanism (*i.e.,* that eCard funds leave the QSF and if they are unclaimed are never returned to the QSF and instead line the Defendants pockets) and says nothing about interest rate differentials (*i.e.*, that financial incentives means the QSF gets less interest to

line the Administrators pockets) or about breakage, interchange, or eCards. Plaintiffs allege the concealment of specific facts. ¶ 475(a)-(e). The clause answers none of these. *Weiss v. Bank of America Corporation* is closely analogous. Borrowers there were told that an affiliated reinsurer "may assume a portion of the risk" associated with their mortgage insurance and "may receive a percentage of the mortgage insurance premium" in exchange. 153 F. Supp. 3d 831, 849 (W.D. Pa. 2015). The court held that disclosure insufficient, because it did not reveal that the reinsurer would assume little or no risk in return. *Id.* Kroll's clause is the same instrument, with the disputed part left out. *See also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (disclosures "must have only one plausible interpretation"). *See EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, 621 F. Supp. 3d 30, 60 (D.D.C. 2022).

Kroll's reservation in footnote 4 confirms the problem. Kroll simultaneously argues the Terms and Conditions established adequate disclosure and reserves the right to later challenge "the scope, knowledge, and existence" of the payments. Kroll Br. 4 n.4. These positions are irreconcilable. If the arrangements' existence is genuinely in dispute, the Court cannot resolve whether they were adequately disclosed without first resolving whether they existed and what their scope was. Kroll cannot invoke its exhibit to establish disclosure while reserving the right to deny there was anything to disclose.

Kroll's lead case proves the distinction: *Buffalo Trump Tower* dismissed a fraud claim because the fact alleged to be concealed, a three-year extension of a construction deadline, appeared in the contract. *Buffalo Trump Tower One, LLC v. TRG Sunny Isles V, Ltd.*, 2009 WL 10667160, at *1 (S.D. Fla. Mar. 19, 2009) Kroll Br. 8. Kroll's reliance on *Link v. Wabash Railroad Company* fares no better. Kroll Br. 7. The statement that a client is charged with "notice of all facts" chargeable to counsel resolved only whether dismissal for counsel's failure to appear at a

pretrial conference unjustly penalized the client. 370 U.S. 626, 633–34 (1962). The Fourth Circuit has declined to extend it as Kroll proposes, doubting that a principle "developed in the context of individual clients" "should be applied in the same way for class actions." *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 309 (4th Cir. 2019). Kroll's theory would charge absent class members in nine other settlements with knowledge of a document none of them ever saw.

### C. Rule 12(b)(6) Does Not Permit the Piecemeal Dismissal Kroll's Motion Requests

Kroll asks the Court to dismiss the claim "[f]or at least the seven settlements listed in footnote 5," while leaving it intact as to the rest. Kroll Br. 8. Count III is pled as a single claim, against all Defendants alleging one continuing scheme of concealment. ¶¶ 473–80. It is not pled settlement by settlement, as Kroll's motion presupposes. Rule 12(b)(6) does not permit a court to dismiss part of a single pleaded claim while leaving the same claim standing: "once a court determines that a claim states a viable basis for relief, it cannot further parse out whether other portions of the claim would suffice on their own." *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 60 (D.D.C. 2022). That narrowing belongs to Rule 56. Kroll does not argue that Count III fails to state a claim. It asks the Court to carve one claim into settlement-by-settlement pieces on the strength of an unauthenticated document that, on Kroll's own account, does not cover three of the ten settlements it identifies. Kroll Br. 5 n.5, 8. That is partial summary judgment without a record.

## CONCLUSION

For the foregoing reasons, Kroll's motion to dismiss should be denied in its entirety. If the Court is inclined to dismiss any claim or any defendant, Plaintiffs respectfully request leave to amend.

Dated: September 15, 2026

Respectfully Submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: 212-584-0700
Email: cseeger@seegerweiss.com

Shauna Itri
Scott A. George
**SEEGER WEISS LLP**
325 Chestnut Street
Suite 917
Philadelphia, PA 19106
Telephone: 267-973-4265
Email: sitri@seegerweiss.com

*Plaintiffs' Lead Counsel*

David Boies
Adam Shaw
**BOIES SCHILLER & FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: 914-749-8201
Email: dboies@bsfllp.com
Email: ashaw@bsfllp.com

Bryan F. Aylstock
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ**
17 E. Main St.
Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Email: baylstock@awkolaw.com

Kiley Grombacher
**BRADLEY/GROMBACHER, LLP**
31365 Oak Crest Drive
Suite 240
Westlake Village, CA 91361
Telephone: 805-270-7100
Email:
kgrombacher@bradleygrombacher.com

Eric Lechtzin
**EDELSON LECHTZIN LLP**
411 S. State Street
Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Email: elechtzin@edelson-law.com

David S. Stone
**STONE & MAGNANINI LLP**
400 Connell Drive
Suite 6200
Berkeley Heights, NJ 07922
Telephone: (973) 218-1111
Email: dstone@smcomplex.com

*Plaintiffs' Executive Committee*