**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION** | **Misc. Action No. 25-179 (JDB); MDL Docket No. 3162** |
| **This Document Relates To: ALL CONSOLIDATED ACTIONS** | |

**PLAINTIFFS' OPPOSITION TO JND LEGAL ADMINISTRATION'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. THE COMPLAINT PLAUSIBLY ALLEGES ACTIONABLE CONDUCT BY JND ..... 1

A. The Complaint Pleads JND's Conduct Specifically and Gives JND Fair Notice ..... 1

B. The "Parties Section" and Puffery Arguments Fail ..... 3

C. The Complaint Plausibly Pleads Misconduct in Each JND-Administered Exemplar Settlement ..... 3

D. The RICO and Antitrust Allegations Show Parallel Conduct ..... 5

II. JND'S ENGAGEMENT DOCUMENTS DID NOT AUTHORIZE OR DISCLOSE THE COMPENSATION PLAINTIFFS ALLEGE ..... 6

A. JND's Exhibits Do Not satisfy the Incorporation-by-Reference ..... 6

B. Even If Considered, the Documents Do Not Establish Disclosure ..... 7

III. PLAINTIFFS HAVE ARTICLE III STANDING ..... 9

IV. *EQUIFAX* COURT RETENTION DOES NOT DIVEST THIS COURT OF JURISDICTION ..... 9

V. THE *LERMAN* RELEASE DOES NOT BAR PLAINTIFFS' CLAIMS ..... 11

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

**Acosta Orellana v. CropLife Int'l*,
711 F. Supp. 2d 81 (D.D.C. 2010) ........ 3

**Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) ........ 8, 10

**Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4, 7

**Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ........ 12

**E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*,
496 F. Supp. 3d 338 (D.D.C. 2020) ........ 4

*Edge Inv., LLC v. D.C.*,
927 F.3d 549 (D.C. Cir. 2019) ........ 14

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
953 F.3d 660 (10th Cir. 2020) ........ 13

*Equitas Disability Advocates, LLC v. Daley, Debofsky & Bryant, P.C.*,
177 F. Supp. 3d 197 (D.D.C. 2016) ........ 13

*Estate of Levin v. Wells Fargo Bank, N.A.*,
156 F.4th 632 (D.C. Cir. 2025) ........ 14

*Franklin-Mason v. Mabus*,
742 F.3d 1051 (D.C. Cir. 2014) ........ 13

*Galan v. Deepwater Horizon Med. Benefits Settlement Claims Adm'r*,
2023 WL 8434048 (5th Cir. Dec. 5, 2023) ........ 13

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
492 U.S. 229 (1989) ........ 7

*Haysbert v. Word*,
2021 WL 254105 (D.D.C. Jan. 25, 2021) ........ 13

**In re Domestic Airline Travel Antitrust Litig.*,
221 F. Supp. 3d 46 (D.D.C. 2016) ........ 9

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) .......... 13

*Johnson-Richardson v. Univ. of Phoenix*,
334 F.R.D. 349 (D.D.C. 2020) .......... 8

*Kaempe v. Myers*,
367 F.3d 958 (D.C. Cir. 2004) .......... 9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 9

*Kline v. Burke Constr. Co.*,
260 U.S. 226 (1922) .......... 14

**Kowal v. MCI Commc'ns Corp.,*
16 F.3d 1271 (D.C. Cir. 1994) .......... 2

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
2026 WL 1784297 (D.D.C. June 22, 2026) .......... 13

*Manderville v. PCG & S Group, Inc.*,
146 Cal. App. 4th 1486 (2007) .......... 15

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989) .......... 12

*Pigford v. Vilsack*,
777 F.3d 509 (D.C. Cir. 2015) .......... 13

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) .......... 14

**Reves v. Ernst & Young*,
507 U.S. 170 (1993) .......... 6

*SEC v. Banner Fund Int'l*,
211 F.3d 602 (D.C. Cir. 2000) .......... 14

**U.S. ex rel. Williams v. Martin-Baker Aircraft Co.,*
389 F.3d 1251 (D.C. Cir. 2004) .......... 2

**U.S. ex rel. Heath v. AT&T, Inc.*,
791 F.3d 112 (D.C. Cir. 2015) .......... 2

*United States v. All Assets Held at Credit Suisse, (Switzerland)*,
45 F.4th 426 (D.C. Cir. 2022) .......... 14

*United Subcontractors, Inc. v. Rust Consulting, Inc.*,
2017 WL 3449612 (N.D. Ga. Aug. 2, 2017) ..... 13

**Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*,
321 F. Supp. 3d 49 (D.D.C. 2018) ..... 2

**W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
235 F.3d 629 (D.C. Cir. 2001) ..... 7

**Weiss v. Bank of Am. Corp.,*
*153 F.* Supp. 3d 831 (W.D. Pa. 2015) ..... 10

**Statutes**

18 U.S.C. § 1964(c) ..... 13

28 U.S.C. § 1332(d) ..... 12

28 U.S.C. § 1407 ..... 14

Cal. Civ. Code § 1542 ..... 14

Cal. Civ. Code § 1668 ..... 15

## INTRODUCTION

The CCAC[1] tells JND[2] exactly what it did, where, and with whom: JND directed digital payment disbursements through co-conspirator FinTechs and caused settlement funds to be deposited with co-conspirator Banks and the allegations rest on alleged facts, not conjecture. ¶¶ 11-14, 47, 317-367. JND's motion then argues ***not*** that it received no compensation from vendors or banks, but that such compensation was "authorized" and "disclosed," JND Br.[3] § II, and that is not a defense to this lawsuit. It is an admission that the arrangements Plaintiffs allege were real, systematic, and operating across JND's book of business. Whether the buried boilerplate constituted adequate disclosure to the courts, class counsel, and class members who were never told any of this is a question that cannot be resolved against Plaintiffs.

## ARGUMENT

### I. THE COMPLAINT PLAUSIBLY ALLEGES ACTIONABLE CONDUCT BY JND

#### A. The Complaint Pleads JND's Conduct Specifically and Gives JND Fair Notice

The Complaint adequately pleads JND's specific conduct. JND directed digital payment disbursements through the co-conspirator FinTechs and caused settlement funds to be deposited with the co-conspirator Banks and the allegations rest on alleged facts, not conjecture. ¶¶ 11-14, 47, 317-367. JND's own lead authority confirms that the group-pleading concern applies only to "unrelated defendants," not "when the defendants are part of a single enterprise." *Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*, 321 F. Supp. 3d 49, 61 (D.D.C.

---

[1] The Consolidated Class Action Complaint will be referred to as "the Complaint" or "CCAC", and references to the allegations in the CCAC will be made by unattributed paragraph references, "¶¶"

[2] Defendant JND Holdings, LLC, d/b/a JND Legal Administration will be referred to as "JND"

[3] References to JND Legal Administration's Individual Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint shall be to "JND Br."

2018). Rule 9(b) is satisfied: the exemplar sections supply who (JND, Banks, FinTechs), what (undisclosed rebate and interest arrangements), when and where (non-reversionary settlements across JND's book of business), and how (the mechanisms at ¶¶ 58-79, 96-102, 121-131, 153-169). *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004); *U.S. ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015).

Information-and-belief allegations are proper where "the necessary information lies within the defendant's control" and are "accompanied by a statement of the facts upon which the allegations are based." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994). Both requirements are satisfied: the governing compensation schedules are within JND's exclusive possession, as the omitted schedules in JND's own exhibits confirm. *See* Katerberg Decl., Exs. A-C. The supporting facts rest on sworn co-defendant CEO declarations, ¶¶ 13-14, the Hilsee white paper, ¶ 11, and the Forbes investigation. ¶ 12. Relaxed pleading is also permissible where defendants are alleged to have acted in concert and facts are "peculiarly within the knowledge of the opposing party." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 98 (D.D.C. 2010). JND's own motion removes any residual doubt: JND argues not that it received no compensation but that it was "authorized" and "disclosed." JND Br. § II. A defendant defending on the ground that the pleaded conduct was permitted cannot simultaneously argue it is not plausibly alleged.

The Huntington unsworn letter, the transcript, and the JND CEO declaration from *Burnett v. National Association of Realtors* do not warrant dismissal: they are extrinsic evidence improper on a Rule 12(b)(6) motion, self-serving statements from a defendant and a co-alleged conspirator in a different case, addressing a different account relationship (Huntington did not receive the QSF) and cabined to the phrase "in this matter" and to payments to "JND Legal Administration" as a specific named entity. Even if considered, they create only a factual dispute, not a basis for

dismissal. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). JND's own engagement clause authorizes "financial benefits from banks or other institutions based on settlement funds on deposit," Katerberg Decl., Ex. A § 3, and authorizes that program "for all of its clients," *id*., Ex. B § 3, confirming an arrangement that is book-of-business-wide, rather than cabined to any single matter. JND cannot simultaneously invoke the "all of its clients" authorization to establish the arrangements existed and rely on an "in this matter" denial to foreclose the mechanisms those arrangements contemplate.

### B. The "Parties Section" and Puffery Arguments Fail

Paragraph 47 is a conduct allegation identifying acts (directing disbursements; causing deposits), counterparties (FinTechs; Banks), their alleged character (co-conspirators), and mapping directly onto the three exemplar settlements. ¶¶ 317-356. No rule requires the Parties section in a complaint to independently state a claim. The consolidated Administrator opposition fully addresses the fiduciary duty framework. *See* Admin. Opp. § I. The fiduciary allegations rest on JND's custodial role, ¶¶ 82-84, 100-102, not on its website, and the puffery doctrine has no application to party's own statements offered to support an inference about the nature of its role. *E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 496 F. Supp. 3d 338, 401 (D.D.C. 2020).

### C. The Complaint Plausibly Pleads Misconduct in Each JND-Administered Exemplar Settlement

The exemplar settlements illustrate a scheme JND's own submissions have already confirmed; they are not the sole evidentiary foundation for the claims. JND's motion argues its engagement documents authorize vendor and bank compensation across its client base, JND Br. § II. Whether those arrangements operated in any specific exemplar settlement is a factual question for discovery. JND's book-of-business admissions establish the scheme's existence independently of any individual settlement, so the claims do not depend on proving specific misconduct in any

single settlement before discovery. This Court has already found the theory sufficiently plausible to order early discovery of agreements relating to the handling of settlement funds across all named-plaintiff settlements. ECF 153 (CMC Order at 2-3 (July 29, 2026)).

The information-and-belief allegations satisfy *Kowal*. Each exemplar section alleges specific settlement structures, identifies settlement agreements, sets out deposit and distribution chronologies, specifies interest rates relative to the federal funds rate, and identifies the parties and their roles. ¶¶ 317-356. Those allegations rest on a co-defendant CEO's sworn declarations, ¶¶ 13-14, the Hilsee white paper, ¶ 11, the *Forbes* investigation, ¶ 12, and the November 2020 Blackhawk email. ¶ 157. The specific terms of JND's financial arrangements with FinTechs and Banks are exclusively within JND's possession and control — as demonstrated by the master service agreements that appear in no court record ever, ¶ 380, and the omitted compensation schedules in JND's own exhibits. *See* Katerberg Decl., Exs. A-C. The *Lerman* and *Yahoo!* allegations are consistent with the steering theory, and the theory does not depend on steering at all. JND argues these allegations are "inconsistent" with the CCAC's steering theory because Huntington was designated in the settlement agreements rather than selected by JND. That argument misreads the theory on both counts. *First*, the CCAC does not limit its theory to cases in which each administrator personally selected each bank; it alleges enterprise-level arrangements coordinating deposit direction across books of business. ¶¶ 8, 407-409, 431. Second, the central misconduct in these settlements is not steering, but the spread: the Banks paid below-market interest and secretly paid a portion to Administrators, and that arrangement operated regardless of how the designation originated. ¶¶ 342, 355. Whether the designation resulted from unilateral selection, collaborative recommendation, or joint designation is a factual question inappropriate to resolve on a motion to dismiss. The *Equifax* allegations do not require a master service agreement. The CCAC alleges

JND chose Blackhawk to issue digital payments, received undisclosed compensation for that selection, steered class members from checks to prepaid cards, and issued the entire second distribution exclusively through Blackhawk. ¶¶ 327-329.

**D. The RICO and Antitrust Allegations Show Parallel Conduct**

These arguments are addressed in the consolidated Administrator opposition, incorporated herein. *See* Admin. Opp. §§ II.C, III.B-C. The JND-specific allegations are well-pleaded. In *Equifax*, JND selected Blackhawk; sent emails steering class members from checks toward PayPal or prepaid cards; used Blackhawk exclusively for the second distribution; received undisclosed compensation; and concealed that compensation in JND CEO Jennifer Keough's December 5, 2019 final-approval declaration. ¶¶ 317-330, 515-519. Under *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), the "conduct" element requires only "some part in directing" the enterprise's affairs. JND directed the JND Enterprise's financial affairs by selecting the FinTechs, structuring the compensation arrangement, steering class members, and concealing the arrangement from the court. Those acts satisfy *Reves*. JND's "no special purpose entities" assertion is a factual dispute. *Twombly*, 550 U.S. at 556. The JND Enterprise satisfies both open-ended and closed-ended continuity: three exemplar settlements across multiple years establish a closed-ended pattern, ¶¶ 317-356, and standing MSA arrangements with no planned endpoint establish an open-ended threat, ¶¶ 8, 168. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989). JND's reliance on *Western Associates* adds nothing. That decision addressed whether an ordinary, finite business dispute — one scheme, one injury, one victim group — satisfied RICO's continuity requirement. *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 635 (D.C. Cir. 2001).

## II. JND'S ENGAGEMENT DOCUMENTS DID NOT AUTHORIZE OR DISCLOSE THE COMPENSATION PLAINTIFFS ALLEGE

### A. JND's Exhibits Do Not Satisfy the Incorporation-by-Reference

JND's engagement document argument is a double-edged sword. By submitting Exhibits A through C, JND confirms three things: the arrangements were systematic, because the same boilerplate appears across multiple engagements; JND understood disclosure was legally necessary, because otherwise the "may receive" language serves no purpose; and the disclosures were facially inadequate. On a motion to dismiss under Rule 12(b)(6), the Court generally may not look outside the four corners of the complaint. *Johnson-Richardson v. Univ. of Phoenix*, 334 F.R.D. 349, 358 (D.D.C. 2020). A document outside the complaint may be considered only if it is incorporated by reference in the complaint or integral to the plaintiff's claim and only if its authenticity is undisputed. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Courts construe this doctrine narrowly because the "unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

JND's Exhibits A through C fail that standard on three independent grounds. *First*, each exhibit cross-references various schedules governing the specific terms of payment, pricing and fees, as integral parts of the parties' bargain and each copy omits them. *See* Katerberg Decl., Ex. A (Schedule 1 omitted); Ex. B (Pricing and Fee Schedules omitted); Ex. C (Pricing Schedule designated Confidential). A copy that omits component parts its own text identifies as governing compensation cannot supply the undisputed authenticity the doctrine requires. *Second*, the CCAC does not rely on these documents. Plaintiffs' accounts of *Equifax* and *Lerman* cite publicly filed settlement agreements, court declarations, and settlement websites. ¶¶ 317-343. Documents

"merely" referred to as a general "source of certain factual allegations" are not integral to the claims. *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 71 (D.D.C. 2016). *Third*, JND offers these exhibits only to establish a defense and a document integral only to the Defendants' attack on the complaint does not qualify under the integral-document exception. *See Banneker Ventures*, 798 F.3d at 1133.

**B. Even If Considered, the Documents Do Not Establish Disclosure**

The disclosure adequacy question is objective: the test is what a reasonable class member, supervising court, or settlement counsel reading JND's engagement documents would have understood, not what settlement counsel subjectively knew or did not know. Applying that objective standard, JND's defense fails as a matter of law. The documents name no vendor, state no rate, and describe no description for any of the specific arrangements alleged (*i.e.* the "financial incentives" from Banks were kickbacks from interest that should have accrued to the QSF and "rebates" from Fintechs are kickbacks from breakage that should have been left in the QSF). JND invites the court to make that determination now from the face of the documents JND submitted, and that determination should go against JND, not against Plaintiffs.

**Exhibit A.** Every operative verb is permissive. "May receive" does not disclose that JND did receive compensation, from whom, in what amount, or through what mechanism. *Weiss v. Bank of Am. Corp.*, 153 F. Supp. 3d 831, 849 (W.D. Pa. 2015). The clause names no vendor, states no rate, and says nothing about breakage, interchange, inactivity fees, or the debit-at-issuance structure. ¶¶ 327-330. Nor does it say that JND will not receive compensation in any particular settlement — it says JND "may receive" rebates or credits from vendors in connection with the volume of work performed across its overall business. This generic, boiler plate language discloses to a reasonable reader only that JND may receive ordinary "rebates or credits" tied to its aggregate vendor relationships, not an undisclosed agreement for JND to retain unredeemed claimant

breakage that should never have left the QSF, while "financial benefits from banks or other institutions based on settlement funds or deposits" suggest nothing more than routine administrative banking practices, not an arrangement whereby JND personally profits from interest generated by money belonging to the QSF.

**Exhibit B.** Substituting "for all of its Clients" for "its overall business" changes nothing. A reasonable reader of either formulation would not understand that JND was receiving kickbacks in form of interest that should have accrued to the QSF or breakage. The "for all of its Clients" formulation confirms the rest: the authorization is a book-of-business program, not a settlement-specific disclosure. That is precisely the distinction that renders Huntington's "in this matter" denial irrelevant to the Plaintiffs' actual theory — the denial is case-specific while the authorization is portfolio-wide. Katerberg Decl., Exs. A-B.

**Exhibit C inverts JND's argument.** The tracked changes in Section 2 ensure JND would be paid "solely from the Notice and Administration Fund," "which shall be the sole source of payment for JND." Katerberg Decl., Ex. C §§ 2, 15. The absence of tracked changes in Section 4, the "may receive" clause JND now invokes, is not evidence of approval. It is evidence that a sophisticated counsel left that language untouched while negotiating the exclusivity provisions that directly conflict with it. JND cannot invoke the one clause opposing counsel left untouched to establish authorization for outside compensation in form of undisclosed kickbacks while ignoring that the same counsel's negotiated language in the same document was designed to foreclose exactly that outcome. JND's own record confirms the gap between authorization and disclosure: class counsel in *Equifax* stated JND "has provided Class Counsel with limited information regarding these arrangements, but has not disclosed specific amounts," and that whether the

provision "permitted JND to engage in the conduct as alleged . . . are questions for another day." Katerberg Decl., Ex. F at 4-5.

## III. PLAINTIFFS HAVE ARTICLE III STANDING

JND concedes some named Plaintiffs participated in JND-administered settlements — that concession ends the standing inquiry. Standing is measured at the time the complaint is filed. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). At least eight named Plaintiffs allege participation in JND-administered settlements. ¶¶ 24-26, 31, 36-37, 39, 43. "[O]nly one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007). Each of those Plaintiffs alleges that the compensation received in a JND-administered settlement was diminished by the scheme and JND operated in those settlements under engagement terms authorizing "financial benefits from banks based on settlement funds on deposit" and "rebates and credits from vendors" across "all of its clients," Katerberg Decl., Exs. A-B. That is a plausible injury traceable to JND's conduct. Whether JND received specific compensation in that particular settlement is a factual question for discovery, not a standing determination for the pleadings. The consolidated standing argument is in Plaintiffs' other oppositions and incorporated herein. *See* FinTech Opp. § IV.

## IV. *EQUIFAX* COURT RETENTION DOES NOT DIVEST THIS COURT OF JURISDICTION

JND argues that a motion class counsel filed in the Equifax settlement court on July 10, 2026, a week before JND filed this brief, stripped this Court of jurisdiction it already held. That cannot be right. Jurisdiction over these claims comes from CAFA and RICO. 28 U.S.C. § 1332(d); 18 U.S.C. § 1964(c). A retention clause in another court's order cannot repeal a statute. *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054-55 (D.C. Cir. 2014); *Elna Sefcovic, LLC v. TEP Rocky*

*Mountain, LLC*, 953 F.3d 660, 669 (10th Cir. 2020); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). The "exclusive jurisdiction" language is forum-selection language, not a jurisdictional bar. *Equitas Disability Advocates, LLC v. Daley, Debofsky & Bryant, P.C.*, 177 F. Supp. 3d 197, 207 (D.D.C. 2016). This Court applied exactly that framework to an "exclusive jurisdiction and venue" clause, enforcing it through forum non conveniens rather than treating it as a jurisdictional bar. *Haysbert v. Word*, 2021 WL 254105, at *2 (D.D.C. Jan. 25, 2021) (Bates, J.).

The reservation JND invokes reaches enforcement of the *Equifax* decree — not freestanding statutory claims against nonparties requiring no settlement term to be read or applied. Even an express retention to enforce a decree's terms confers no "free-ranging 'ancillary' jurisdiction" and is "limited by the explicit terms of the parties' agreement." *Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015). JND did not sign the settlement; administering a settlement does not make the administrator a party bound by it. A retention over disputes "arising out of or relating to the Settlement" does not let the court try "an independent proceeding based in tort between non-parties to the settlement." *United Subcontractors, Inc. v. Rust Consulting, Inc.*, 2017 WL 3449612, at *6, *9 (N.D. Ga. Aug. 2, 2017); *accord Galan v. Deepwater Horizon Med. Benefits Settlement Claims Adm'r*, 2023 WL 8434048, at *2 (5th Cir. Dec. 5, 2023). The category here is racketeering, antitrust, and fraud.

JND's comity argument concedes the very power a Rule 12(b)(1) motion contests. *Sefcovic*, 953 F.3d at 665-66, 668. Nothing is pending before the Equifax court — the settlement is concluded, funds disbursed, case closed. *League of Women Voters v. U.S. Dep't of Homeland Sec.*, 2026 WL 1784297, at *34-35 (D.D.C. June 22, 2026). For the treble-damages claims Plaintiffs assert, a district court may do no more than stay the federal litigation on comity grounds —

dismissal is unavailable as a matter of law. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730-31 (1996). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and "[o]nly the clearest of justifications will warrant" abstention. *Edge Inv., LLC v. D.C.*, 927 F.3d 549, 552 (D.C. Cir. 2019). None exists here. Deference would fragment one centralized MDL action spanning dozens of settlements into dozens of pieces, inverting the JPML's determination that these claims are appropriately resolved here. 28 U.S.C. § 1407. For in personam claims — including the money damages sought here — parallel proceedings in different federal courts proceed simultaneously, resolved through preclusion rather than by one court divesting another. *United States v. All Assets Held at Credit Suisse (Switzerland)*, 45 F.4th 426, 437 (D.C. Cir. 2022); *Kline v. Burke Constr. Co.*, 260 U.S. 226, 230 (1922).

Prior exclusive jurisdiction is confined to in rem proceedings. *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 637-38 (D.C. Cir. 2025). These claims seek money judgments against defendants personally. The settlement funds have been distributed. There is no res for two courts to contest. *SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000).

## V. THE *LERMAN* RELEASE DOES NOT BAR PLAINTIFFS' CLAIMS

The release does not encompass these claims by its own terms. The *Lerman* release bars only claims "based on any eligibility determinations, distributions, or awards made *in accordance with this Settlement.*" (Emphasis added.) Fraud, racketeering, and conspiracy claims arising from undisclosed compensation arrangements are not challenges to eligibility determinations or awards. Whether the same is true of any other JND-administered settlement is a question discovery will address; the principle itself is categorical. California Civil Code § 1542 independently bars the defense: a general release does not extend to claims that "the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release." JND's systematic concealment is precisely why Plaintiffs could not have known of these claims at the time of any

release was executed. Section 1668 renders the defense void as against public policy: "[a]All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud...are against the policy of the law." Cal. Civ. Code § 1668; *Manderville v. PCG & S Group, Inc.*, 146 Cal. App. 4th 1486, 1500 (2007). JND asks this Court to enforce a release obtained while concealing the very conduct the release now purports to bar.

## CONCLUSION

JND's motion to dismiss should be denied in its entirety. If the Court is inclined to dismiss any claim, Plaintiffs respectfully request leave to amend.

Dated: September 15, 2026

Respectfully Submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: 212-584-0700
Email: cseeger@seegerweiss.com

Shauna Itri
Scott A. George
**SEEGER WEISS LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone: 267-973-4265
Email: sitri@seegerweiss.com

*Plaintiffs' Lead Counsel*

David Boies
Adam Shaw
**BOIES SCHILLER & FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: 914-749-8201
Email: dboies@bsfllp.com
Email: ashaw@bsfllp.com

Bryan F. Aylstock
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ**
17 E. Main St.
Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Email: baylstock@awkolaw.com

Kiley Grombacher
**BRADLEY/GROMBACHER, LLP**
31365 Oak Crest Drive
Suite 240
Westlake Village, CA 91361
Telephone: 805-270-7100
Email:
kgrombacher@bradleygrombacher.com

Eric Lechtzin
**EDELSON LECHTZIN LLP**
411 S. State Street
Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Email: elechtzin@edelson-law.com

David S. Stone
**STONE & MAGNANINI LLP**
400 Connell Drive
Suite 6200
Berkeley Heights, NJ 07922
Telephone: (973) 218-1111
Email: dstone@smcomplex.com

*Plaintiffs' Executive Committee*