**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION** | **Misc. Action No. 25-179 (JDB); MDL Docket No. 3162** |
| **This Document Relates To: ALL CONSOLIDATED ACTIONS** | |

**PLAINTIFFS' OPPOSITION TO EPIQ CLASS ACTION & CLAIMS SOLUTIONS, INC. AND EPIQ SYSTEMS, INC.'S MOTION TO DISMISS**
**<u>PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. EPIQ'S STANDARD TERMS AND CONDITIONS NEITHER AUTHORIZE NOR DISCLOSE ADMINISTRATORS' ILLICIT KICKBACK SCHEMES .......... 1

A. Epiq's Exhibits Do Not Satisfy the Incorporation-By-Reference Standard, Because Neither is an Authentic, Complete Copy of The Operative Document .......... 1

B. Even if Considered, the Exhibits Do Not Establish Disclosure .......... 4

II. ARTICLE III DOES NOT MANDATE DISMISSAL .......... 8

A. Epiq Concedes That 13 Named Plaintiffs Have Standing .......... 8

B. Remaining Plaintiffs' State-Law Claims Are a Rule 23 Question .......... 9

C. Standing is Otherwise Established .......... 10

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

**Cases** **Pages**

**Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) ..... 2

**Bhatia v. Silvergate Bank*,
725 F. Supp. 3d 1079 (S.D. Cal. 2024) ..... 3

**Calhoun* v. Google LLC,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 5, 6, 7

**Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ..... 8

*Daves v. Dallas Cnty., Texas*,
22 F.4th 522 (5th Cir. 2022) ..... 8

*Dentons US LLP v. Republic of Guinea*,
208 F. Supp. 3d 330 (D.D.C. 2016) ..... 7

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998) ..... 11

**In re Domestic Airline Travel Antitrust Litig.*,
221 F. Supp. 3d 46 (D.D.C. 2016) ..... 2

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..... 7

*In re G-Fees Antitrust Litig.*,
584 F. Supp. 2d 26 (D.D.C. 2008) ..... 9

*In re: McCormick & Co., Inc.*,
217 F. Supp. 3d 124,(D.D.C. 2016),
*amended on reconsideration sub nom. In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*,
275 F. Supp. 3d 218 (D.D.C. 2017) ..... 10

*Johnson-Richardson v. Univ. of Phoenix*,
334 F.R.D. 349 (D.D.C. 2020) ..... 1

**Kaempe v. Myers*,
367 F.3d 958 (D.C. Cir. 2004) ..... 2, 4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..... 2

*Molock v. Whole Foods Mkt., Inc.*,
297 F. Supp. 3d 114 (D.D.C. 2018) ..... 10

*Morrison v. YTB Int'l, Inc.*,
649 F.3d 533 (7th Cir. 2011) ..... 10

*Mount Jezreel Christians Without a Home v. Bd. of Tr. of Mount Jezreel Baptist Church*,
582 A.2d 237 (D.C. Cir. 1990) ..... 8

*Murthy v. Missouri*,
603 U.S. 43 (2024) ..... 9

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989) ..... 8

*Owens v. BNP Paribas, S.A.*,
897 F.3d 266 (D.C. Cir. 2018) ..... 7

*Real World Media LLC v. Daily Caller, Inc.*,
744 F. Supp. 3d 24 (D.D.C. 2024) ..... 2

*Refugee & Immigrant Center for Education & Legal Services v. Mullin*,
174 F.4th 81 (D.C. Cir. 2026) ..... 9

*Rivera v. Rosenberg & Assocs., LLC,*
142 F. Supp. 3d 149 (D.D.C. 2015) ..... 8

**Scott v. J.P. Morgan Chase & Co.*,
296 F. Supp. 3d 98 (D.D.C. 2017) ..... 4, 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..... 9

*U.S. ex rel. Hutchins v. DynCorp Internat'l, Inc.*,
342 F. Supp. 3d 32 (D.D.C. 2018) ..... 8

**Weiss v. Bank of Am. Corp.*,
153 F. Supp. 3d 831 (W.D. Pa. 2015) ..... 6

**Other Authorities**

1 Newberg on Class Actions § 2:6 (5th ed. 2017) ..... 10

Restatement (Second) of Torts § 551(2)(b) ..... 4

## INTRODUCTION

Plaintiffs allege that Epiq[1] concealed systematic, book-of-business agreements with the Banks and FinTechs to extract value from the court-supervised QSFs Epiq was appointed to administer. Epiq's response is not to deny the arrangements, but to point to boilerplate provisions buried in the expenses sections and catch-all general provisions of two "standard-form" terms and condition documents. One is an incomplete excerpt with the compensation terms withheld; the other is a blank form revised in 2015 that Epiq cannot confirm was ever signed or provided in the relevant settlements. The permissive language in those provisions, Epiq says, discloses the specific arrangements Plaintiffs allege. It did not – not to the settlement courts, which never saw these documents during approval, nor to any other person or party. These documents are not properly before the Court, and even if they were, they disclose nothing.

Epiq's motion challenging Plaintiffs' standing is equally lacking. It concedes that most of the Plaintiffs allege injury from Epiq, and nit-picks with what states may (or may not) be represented by them. Such inquiries are premature prior to class certification. Epiq's motion to dismiss should be denied.

## ARGUMENT

### I. EPIQ'S STANDARD TERMS AND CONDITIONS NEITHER AUTHORIZE NOR DISCLOSE ADMINISTRATORS' ILLICIT KICKBACK SCHEMES

#### A. Epiq's Exhibits Do Not Satisfy the Incorporation-By-Reference Standard, Because Neither is an Authentic, Complete Copy of The Operative Document

When considering a Rule 12(b)(6) motion, the Court generally may not "look outside the facts contained within the four corners of the complaint." *Johnson-Richardson v. Univ. of Phoenix*,

---

[1] Defendant Epiq Class Action & Claims Solutions, Inc., will be referred to as "Epiq"

334 F.R.D. 349, 358 (D.D.C. 2020). One narrow exception is for documents that are "'integral' to the plaintiff's claim" or incorporated by reference in the complaint. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (citation omitted). Courts read this exception narrowly because defendants face an "alluring temptation to pile on numerous documents to their motions to dismiss . . . [y]et the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also, Real World Media LLC v. Daily Caller, Inc.*, 744 F. Supp. 3d 24, 32 (D.D.C. 2024) . Neither of Epiq's two exhibits satisfies the incorporation-by-reference standard. Both documents come before the Court only as attachments to the defendants' motion and were not even referred to "as the source of certain factual allegations within the Complaint." *See In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 71 (D.D.C. 2016).

Plaintiffs' claims are not breach of contract claims. These claims are based on the Administrators' side agreements with the Banks and FinTechs for kickbacks at the expense of settlement QSFs. *See* Admin. Opp. § Background. As to Exhibit A, Epiq argues that the Complaint's discussion of *In re Capital One Consumer Data Security Breach Litigation*, Case No. 1:19-md-2915 (E.D. Va.) makes the Terms and Conditions "necessarily rel[ied]" upon. Epiq Br. 6. But incorporation by reference requires that the authenticity and reliability of that document not be in dispute. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Exhibit A is described by Epiq's own declarant as "an excerpt" of ECA's services agreement, Kovach Decl. ¶ 3, while the remainder, including the compensation schedules referenced in Section 2 as governing the fees, was withheld on purported competitive pricing grounds. Epiq Br. 5 n.4. Plaintiffs, and the Court, therefore have no way to confirm that the withheld terms do not qualify, limit, or contextualize the

single boilerplate provision Epiq quotes. Exhibit A's compensation language is also structurally buried. It appears in Section 15, the "GENERAL" catch-all paragraph, sandwiched between a deposition fee pass-through clause and successors-and-assigns boilerplate, not in any section titled "Compensation," "Conflicts of Interest," or "Disclosure." ECF No. 146-3.

Turning to Exhibit B, the Kovach declaration does not even assert that this document governed *In re Automotive Parts Antitrust Litigation*, Case No. 2:12-md-02311 (E.D. Mich.). It asserts that this is what "*would have* been provided . . . as part of GCG's typical practice." Kovach Decl. ¶ 4 (emphasis added). Exhibit B is a blank form last revised in February 2015, "Rev. 2/15" appears on its face, with no client name, no case-specific payment amount, and no signature block. A document offered only as evidence of a general practice does not establish that it is the document that in fact governed Epiq's administration of any particular settlement. *Cf. Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1101 (S.D. Cal. 2024).

Epiq cites *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272–73 (D.C. Cir. 2018), and *Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 340 (D.D.C. 2016), but both are distinguishable. *Owens* involved documents that spoke directly to the precise transaction the complaint alleged. *Dentons* involved a retainer agreement whose actual terms negated the specific misrepresentation at issue. Epiq's provisions do neither. Under *Owens* and *Dentons* themselves, the standard requires that incorporated documents unambiguously contradict the Complaint's specific factual allegations. Epiq's "may receive" language does not contradict the Complaint's allegation that the specific arrangements, the rates, the mechanisms, the institutions, the amounts, were never disclosed to any court. Permissive conditional language susceptible to multiple interpretations, absent from at least 5 of the 16 relevant settlements, and unverifiable as to which settlements received it, does not unambiguously contradict a specific allegation of non-disclosure.

Courts finding an unambiguous contradiction have had a specific fact to test against a specific allegation. *See, e.g.*, *U.S. ex rel. Hutchins v. DynCorp Internat'l, Inc.*, 342 F. Supp. 3d 32, 39 n.3 (D.D.C. 2018) (contract term setting a $550,000 threshold directly conflicted with the complaint's allegation of a $25,000 threshold); *Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 160–61 (D.D.C. 2015) (collection letter directly contradicted the plaintiff's specific factual account of the defendant's role in a foreclosure). Here, Epiq's clauses supply no comparable fact to test against Plaintiffs' allegations, because neither clause addresses rate, amount, or mechanism at all.

By submitting Exhibits A and B, Epiq has confirmed three things: (1) the arrangements existed since ***before February 2015***[2] and were systematic; (2) Epiq understood disclosure was legally necessary; and (3) the disclosures are facially inadequate: language naming no institution, stating no rate, and describing no mechanism discloses nothing.

### B. Even if Considered, the Exhibits Do Not Establish Disclosure

Epiq's core argument is that the Court can decide, as a matter of law on this motion to dismiss, that it adequately disclosed the specific arrangements Plaintiffs allege and that this disclosure defeats all nondisclosure-based claims. *See* Epiq Br. 4-6. The Court should accept that invitation and rule against Epiq. As a general matter, these documents were never before any of the settlement courts, whose approval of Epiq to serve as court-appointed settlement administrator was the key to Epiq's book-of-business scheme.

Moreover, the question as to the adequacy of disclosure is objective: the test is what a reasonable class member, settlement court, or settlement counsel reading Epiq's engagement documents would have understood, not what counsel subjectively knew or did not know. *See* Restatement (Second) of Torts § 551(2)(b) (duty to disclose "matters known to [a party] that [it]

---

[2] Exhibit B bears the notation "Rev. 2/15" — meaning GCG's standard terms were last revised in February 2015.

knows to be necessary to prevent [its] partial or ambiguous statement of the facts from being misleading"). Applying that objective standard to the face of Epiq's own documents, Epiq's improperly mounted defense fails.

According to the purported Terms and Conditions of Epiq in Exhibit A: "Epiq maintains *banking relationships* with financial institutions, whereby those institutions *may provide* financial products and related banking services required in connection with the services hereunder. Epiq *may receive* compensation from such institutions in connection with those relationships." Kovach Decl. Ex. A, Capital One T&C § 15 (emphasis added). And, under Exhibit B, Section 2.2: that "would have been provided . . . as part of GCG's typical practice," Kovach Decl. ¶ 4, "GCG *may derive* financial benefits from financial institutions resulting from settlement funds and other moneys on deposit or invested with them. These benefits *may allow* GCG to provide discounts on certain banking services and service fees. . .. GCG *may also receive* a rebate (or credit) from a publication vendor." Kovach Decl. Ex. B § 2.2 (emphasis added).

Neither provision addresses Epiq's agreements with FinTechs. And the structure of this language reveals its purpose: every operative verb is permissive — "may receive," "may derive," "may allow." A genuine disclosure identifies the counterparty, the rate, the mechanism, and the amount. This language does none of those things. Epiq uses the language of a party that anticipates a legal risk, drafted boilerplate to acknowledge it permissively, while the undisclosed master services agreements were a certainty — not the language of disclosure, but the architecture of plausible deniability.

Further, these disclosures are couched and limited. Exhibit A's term is in a "General" catch-all paragraph 15 and is couched between a provision for reimbursement for depositions of employees, "successors and assigns," and language about the "severability" of each provision in

the document. Exhibit B's term is incorporated in the "Expenses" provision (paragraph 2.2) discussing pass-through costs that will be disclosed to settlement counsel – while Epiq's scheme was not disclosed. Such disclosures cannot do what Epiq needs them to do in this litigation to serve as a "get out of jail free" card.

A reader, however sophisticated, cannot discern from such generic, forward-looking permission language a specific arrangement that language never describes. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). Rather, "the disclosures must 'explicitly notify' users of the practice at issue" and "must have only one plausible interpretation." *Id.* (internal citation omitted); *see also Weiss v. Bank of Am. Corp.*, 153 F. Supp. 3d 831, 835 (W.D. Pa. 2015) (general, permissive disclosure of a payment category does not establish disclosure of the specific kickback arrangement that category was used to conceal).

Both terms and conditions fail to answer "key questions" central to Plaintiffs' claims. *See Scott*, 296 F. Supp. 3d at 108. First, as to the Digital Disbursement Track, neither provision mentions digital disbursements, breakage, interchange, or inactivity fees. ¶ 374. Neither provision addresses the central undisclosed mechanism: that the full-face value of every digital payment was debited from the QSF at the moment of issuance — before any class member ever activated or redeemed the card — and those funds never returned to the QSF regardless of what happened afterward. ¶ 155. That transfer was never disclosed in any court filing, fee application, distribution plan, or class notice. ¶¶ 10, 366-369. In sum, while couched as rebates from vendors based on overall operating costs, these disclosures did not say they were kickbacks based on unredeemed claimant funds that should have never left the QSF.

Second, as to the Bank Interest Track, Exhibit A does not disclose anything beyond the possibility ("may") of some compensation from some institution for some banking service. *Weiss*

*v. Bank of America Corporation* is analogous. There, borrowers were told that an affiliated reinsurer "may assume a portion of the risk associated with [their mortgage insurance]" and "may receive a percentage of the mortgage insurance premium" in exchange. 153 F. Supp. 3d at 849. The court held that disclosure was insufficient to defeat RICO allegations that the arrangement was a mechanism for funneling illegal kickbacks, because it did not reveal the reinsurer would actually assume little or no actual risk in return for that payment. *Id.* Epiq's purported provisions demonstrate that same evasive structure.

Third, Exhibit B identifies moneys "on deposit" as the source of the potential benefit, but a reasonable reader could interpret it otherwise. This provision does not disclose the rate differential or the volume-based scaling Plaintiffs allege defined the kickback scheme under the Bank Interest Track. Compl. ¶¶ 371–80; *see also id.* ¶ 539(iii). Nor does it disclose that the "discount[] on certain banking services" it references was a shared portion of interest income that Plaintiffs should have received. *See* Kovach Decl. Ex. B § 2.2. Compl. ¶¶ 122, 124, 371–80; *see also id.* ¶ 98(a). Rather, this language can only relate to ordinary account-maintenance benefits or settlement check-cutting rather than an undisclosed, negotiated share of QSF interest-spread. This is precisely the kind of competing, plausible reading that precludes reference to Epiq's Exhibits. *See, e.g.*, *Calhoun*, 526 F. Supp. 3d at 620; *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789–90, 794 (N.D. Cal. 2019) ("[I]f the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [defendant's] favor at the motion to dismiss stage.").

## II. ARTICLE III DOES NOT MANDATE DISMISSAL

### A. Epiq Concedes That 13 Named Plaintiffs Have Standing

Epiq concedes that the 13 named plaintiffs *do* allege that they participated in an Epiq-administered settlement. That concession ends the standing inquiry. Standing is measured at the time the complaint is filed. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989).

At the pleading stage, all that is required to establish standing is that at least *one* named class representative has standing to pursue a claim against Epiq. "For every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007). With *at least* 13 named plaintiffs alleging that they participated in an Epiq-administered settlement and suffered damages, the case-or-controversy requirement is met, and the Court may later exercise its jurisdiction over entire classes. *See Mount Jezreel Christians Without a Home v. Bd. of Tr. of Mount Jezreel Baptist Church*, 582 A.2d 237 (D.C. Cir. 1990); *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc) ("[F]or each named defendant, at least one named plaintiff must have standing to sue.").

Epiq's reliance on *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), *Refugee & Immigrant Center for Education & Legal Services v. Mullin*, 174 F.4th 81 (D.C. Cir. 2026), and *Murthy v. Missouri*, 603 U.S. 43 (2024), does not change this result. *TransUnion* addressed standing at the merits stage after class certification, not the pleading-stage question of whether named plaintiffs have standing against a particular defendant. *Mullin* addressed the distinction between Rule 23(b)(2) injunctive and Rule 23(b)(3) damages classes; it did not address the threshold question of whether named plaintiffs have standing to bring the action, which is answered by *Central States*. And *Murthy* requires that named plaintiffs demonstrate standing as to each defendant, which is satisfied here because at least 13 named Plaintiffs allege participation in Epiq-administered

settlements and injury traceable to Epiq's conduct. Moreover, the standing inquiry at the pleading stage requires only a plausible injury traceable to Epiq's conduct. A plaintiff who received a reduced *pro rata* distribution in an Epiq-administered settlement — where Epiq operated under engagement terms authorizing "financial benefits from banks based on settlement funds on deposit" and "rebates and credits from vendors" across "all of its clients," Kovach Decl. Exs. A-B, has alleged a plausible injury. Whether Epiq received specific compensation in that particular settlement is a factual question for discovery. The consolidated standing argument is in Plaintiffs' other oppositions and incorporated herein. *See* FinTech Opp. § IV.

**B. Remaining Plaintiffs' State-Law Claims Are a Rule 23 Question**

Epiq argues that various named plaintiffs lack standing to allege violations under the laws of states where no named plaintiffs have been personally injured. MTD at 8 (citing *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 35 (D.D.C. 2008)). But this argument confuses the issue of standing under Article III with Rule 23's predominance requirement. It is not appropriate at this stage to resolve whether the named plaintiffs can represent unnamed class members asserting claims arising under other states' laws. As the court in *Molock* made clear:

> [T]he standing inquiry pertains to whether a court has been presented with a real "case or controversy," and does not require analysis of residency or the location of an injury. Instead, such considerations are appropriately resolved at the class certification stage, which is "designed precisely to address concerns about the relationship between the class representative and the class."

*Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 130 (D.D.C. 2018), *aff'd on other grounds sub nom*. *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293 (D.C. Cir. 2020) (quoting 1 Newberg on Class Actions § 2:6 (5th ed. 2017)).

The court in *McCormick* further summarized the reasoning of this approach, stating:

> It is more logical to consider named plaintiffs' ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, rather than

> a question of standing. Generally, the named plaintiffs in a class action do not have individual standing for all of the claims that they raise, because one individual does not have standing to claim injury to another individual. Therefore, standing analysis cannot address whether one plaintiff should be able to bring claims on behalf of others.

*In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 144 (D.D.C. 2016), *amended on reconsideration sub nom*. *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 275 F. Supp. 3d 218 (D.D.C. 2017). Other federal circuit courts agree. *See Williams v. Binance*, 96 F.4th 129, 145 (2d Cir. 2024) ("'[A]ny concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3) to be decided after the motion to dismiss stage.") (citation omitted); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (explaining that fact that class members' claims may "rely on some other state's law . . . has nothing to do with standing.").

Because we are at the pleading stage and the parties have not yet presented any analysis of any potential variability among state laws, it is premature for the Court to determine whether the named plaintiffs can adequately represent the entire class. *Id*. That is a Rule 23 class certification issue, not a standing issue. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure.").

**C. Standing is Otherwise Established**

Epiq asks the Court, in the alternative, to reach the same result under Rule 12(b)(6). This repackaged argument asks the Court to conduct the same premature, class-wide choice-of-law and variation analysis addressed above, and it fails for the same reason: that analysis belongs at class certification, not at the pleading stage. *See Fallick*, 162 F.3d at 423.

Plaintiffs have pleaded more than enough for the Court to identify, at the appropriate time, which States' substantive law may govern the claims of absent class members. The CCAC identifies each Epiq-administered settlement at issue, the court and docket in which it was filed, and the residency of each named Plaintiff. *See*, e.g., CCAC at ¶¶ 23–27, 32–34, 36–39, 42. Nothing more is required at the pleading stage. The Court should decline Epiq's invitation to resolve, under the guise of a Rule 12(b)(6) motion, the same premature class-certification question addressed above, and should deny this alternative argument for the same reasons.

## CONCLUSION

For the foregoing reasons, Epiq's motion to dismiss should be denied in its entirety. If the Court is inclined to dismiss any claim, Plaintiffs respectfully request leave to amend.

Dated: September 15, 2026

Respectfully Submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: 212-584-0700
Email: cseeger@seegerweiss.com

Shauna Itri
Scott A. George
**SEEGER WEISS LLP**
325 Chestnut Street
Suite 917
Philadelphia, PA 19106
Telephone: 267-973-4265
Email: sitri@seegerweiss.com

*Plaintiffs' Lead Counsel*

David Boies
Adam Shaw
**BOIES SCHILLER & FLEXNER LLP**
333 Main Street

Armonk, NY 10504
Telephone: 914-749-8201
Email: dboies@bsfllp.com
Email: ashaw@bsfllp.com

Bryan F. Aylstock
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ**
17 E. Main St.
Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Email: baylstock@awkolaw.com

Kiley Grombacher
**BRADLEY/GROMBACHER, LLP**
31365 Oak Crest Drive
Suite 240
Westlake Village, CA 91361
Telephone: 805-270-7100
Email: kgrombacher@bradleygrombacher.com

Eric Lechtzin
**EDELSON LECHTZIN LLP**
411 S. State Street
Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Email: elechtzin@edelson-law.com

David S. Stone
**STONE & MAGNANINI LLP**
400 Connell Drive
Suite 6200
Berkeley Heights, NJ 07922
Telephone: (973) 218-1111
Email: dstone@smcomplex.com

*Plaintiffs' Executive Committee*