**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION** | **Misc. Action No. 25-179 (JDB); MDL Docket No. 3162** |
| **This Document Relates To: ALL CONSOLIDATED ACTIONS** | |

**PLAINTIFFS' OPPOSITION TO ANGEION GROUP LLC'S MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. THE EXEMPLAR SETTLEMENTS DO NOT CONTRADICT PLAINTIFFS' FIDUCIARY ALLEGATIONS ........ 1

II. THE WEISBROT DECLARATIONS AND COURT ORDERS ANGEION INVOKES CONFIRM THE CCAC; THEY DO NOT REFUTE THEM ........ 3

A. None of Angeion's Five Exhibits Should be Considered by the Court ........ 3

B. Even if Considered, the Angeion Exhibits Confirm the CCAC ........ 5

III. PLAINTIFFS HAVE ARTICLE III STANDING ........ 8

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

**Cabrera v. Google LLC*,
2025 WL 2494429 (N.D. Cal. Aug. 29, 2025) .......... 1, 7

*Campo v. Granite Servs. Int'l, Inc.*,
584 F. Supp. 3d 1329 (N.D. Ga. 2022) .......... 4

**Capitol Servs. Mgmt., Inc. v. Vesta Corp.*,
933 F.3d 784 (D.C. Cir. 2019) .......... 3, 8

**Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) .......... 8

*Coubaly v. Cargill, Inc.*,
610 F. Supp. 3d 173 (D.D.C. 2022) .......... 9

*Crudup v. District of Columbia*,
2023 WL 2682113 (D.D.C. Mar. 29, 2023) .......... 4

*Daves v. Dallas County, Texas*,
22 F.4th 522 (5th Cir. 2022) .......... 8

*Doe #1 v. Am. Fed. of Gov't Emps.*,
554 F. Supp. 3d 75 (D.D.C. 2021) .......... 7

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
117 F.3d 621 (D.C. Cir. 1997) .......... 4

*Hettinga v. United States*,
677 F.3d 471 (D.C. Cir. 2012) .......... 3

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
148 F. Supp. 3d 285 (S.D.N.Y. 2015) .......... 8

**In re Domestic Airline Travel Antitrust Litig.*,
221 F. Supp. 3d 46 (D.D.C. 2016) .......... 3

*In re: Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig.*,
288 F. Supp. 3d 1087 (D.N.M. 2017) .......... 4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 4

*MAO-MSO Recovery II, LLC v. Farmers Insurance Exchange*,
2018 WL 2106467 (C.D. Cal. 2018) ........ 8

*Moore v. Brouillette*,
2020 WL 7318007 (D.D.C., 2020) ........ 4

*Mount Jezreel Christians Without a Home v. Board of Trustees of Mount Jezreel Baptist Church*,
582 A.2d 237 (D.C. Cir. 1990) ........ 8

*MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*,
2018 WL 5086623 (C.D. Cal. Aug. 13, 2018) ........ 9

*Odish v. Apple, Inc.*,
2015 WL 6507427 (E.D. Mich. Oct. 28, 2015) ........ 6

*Rivera v. Rosenberg & Assocs., LLC*,
142 F. Supp. 3d 149 (D.D.C. 2015) ........ 8

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 9

**Rules**

Federal Rule of Evidence 201(b) ........ 3

## INTRODUCTION

Angeion's[1] own submissions answer the central question in this case. Angeion's CEO confirmed under oath that "Blackhawk has agreed to compensate Angeion in connection with each settlement for which Blackhawk acts as Angeion's subcontractor." Weisbrot Decl. ¶ 52. That compensation was never disclosed to any supervising court, to any class counsel, or to any class member; a fact confirmed by Angeion's own Exhibit D: "Class Counsel and Meta were not informed or aware of this agreement between Angeion and Blackhawk prior to these discussions. Angeion's position is that it was not required to disclose it." (Facebook Status Report at 4). When class counsel in *Facebook* asked for the governing agreement, Angeion refused to produce it, offering only in camera review. *Id*. The arrangements Plaintiffs allege existed, operated across Angeion's book of business, and were systematically concealed.

"What should the Court now do with [Angeion's] lack of transparency?"[2] is the question one active settlement court, the *Google* court, asked Angeion when it learned about its standing agreement with Blackhawk as a result of the first underlying complaint filed by Plaintiffs and coordinated into this MDL. Given the "severity of the recent disclosures" noted by the *Google* court, it is Angeion's arguments that are implausible.

## ARGUMENT

### I. THE EXEMPLAR SETTLEMENTS DO NOT CONTRADICT PLAINTIFFS' FIDUCIARY ALLEGATIONS

Plaintiffs explained at length in their Opposition to the Administrator Defendants' Motion to Dismiss ("Admin Opp.") how their detailed allegations establish that each Administrator assumed fiduciary responsibilities to the settlement classes by virtue of their court

---

[1] Defendant Angeion Group, LLC, will be referred to as "Angeion"

[2] *Cabrera v. Google LLC*, 2025 WL 2494429, * 4 (N.D. Cal. Aug. 29, 2025).

appointmentAngieonand custodial role over settlement funds. *See* Admin Opp. §§ I.A-B. Angeion's individual motion does nothing to further the Administrators' arguments. Instead, Angeion attaches a chart summarizing features of the three exemplar settlements it administered and poses five questions to each. Settlement App'x, ECF No. 148-3, at 83–85. This chart addresses only conduct within the court's supervision when it was exercising jurisdiction, notice, claims processing, and payment criteria, while conspicuously omitting any reference to the conduct outside it (which is the subject of this MDL): the undisclosed compensation program with FinTechs and the Banks.

Even if notice of Angeion's chart were proper, which it is not (*see infra* § II.A.), none of Angeion's questions or Angeion's rhetorical answers thereto change the legal fact of its fiduciary duty. For example, Angeion's first question asks whether the settlement documents formally named Angeion a fiduciary. Angeion answers no. However, as Plaintiffs explain, fiduciary status follows function, not the label the parties chose, and the absence of the word from the papers does not defeat a duty the administrator's role creates. *See* Admin. Opp. § I.A.

The remainder of Angeion's Q&A is equally irrelevant, particularly considering Angeion's active concealment of its standing agreements with the Banks and FinTechs to benefit from QSFs outside settlement court supervision. The answers about court-approved notice omit that neither the approving settlement court nor settlement counsel knew about Angeion's side agreements, and that in drafting and publishing class notice, Angeion (and all co-defendants for that matter) continued to stay quiet. Moreover, the availability and election of e-Card options was made without knowledge of the most critical undisclosed fact: that once a class member selected a digital payment option, the full face value of that payment was debited from the QSF at the moment of issuance, not at the moment of redemption, those QSF funds would never be returned even if the

e-Cards were unredeemed, and Angeion was secretly enriched with such election. ¶155[3]. No settlement court or settlement counsel was ever told this. No class notice ever disclosed it. ¶¶ 10, 152, 366-369. Finally, the fact that Angeion reviewed claims against settlement criteria, and settlement counsel may, unsurprisingly, be consulted regarding any challenged claim determination does not alter the discretion Angeion held in that process. Angeion did not just scan claim forms like a standardize test and mail out the resulting check. Indeed, in one of the three exemplars, *Lundy,* when class counsel and defense counsel could not agree on a contested rejection, "the decision of the Settlement Administrator shall be final." ECF No. 188-1 at 26. An administrator with final authority over claims is a fiduciary. *See* Admin. Opp. § I.B.

## II. THE WEISBROT DECLARATIONS AND COURT ORDERS ANGEION INVOKES CONFIRM THE CCAC; THEY DO NOT REFUTE THEM

### A. None of Angeion's Five Exhibits Should be Considered by the Court

Under Rule 12(b)(6), Plaintiffs' allegations must be taken as true, and all inferences made in their favor. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). While the Court may take judicial notice of a document publicly filed in another proceeding, it may do so only as evidence of what was filed and that the filing party believed its contents true, never as proof that the proffered contents are true. *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019). Even outside the realm of a motion to dismiss, Federal Rule of Evidence 201(b) permits notice only of facts "not subject to reasonable dispute." A factual assertion that is contested by an adverse party's complaint is, by definition, subject to "reasonable dispute." Otherwise, treating a prior filing as conclusive proof of the facts it asserts would let a defendant—at the pleading stage—

---

[3] The Consolidated Class Action Complaint will be referred to as "the Complaint" or "CCAC", and references to the allegations in the CCAC will be made by unattributed paragraph references, "¶¶"

obtain the relief that summary judgment is designed to test. *See In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 71–72 (D.D.C. 2016) (declining to consider exhibits offered to counter the complaint's factual allegations).

Angeion's motion invokes both judicial notice and incorporation by reference interchangeably, Angeion Br. at 9, but the distinction does not matter here. Incorporation does not convert a document's contents into established fact, either. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("It is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."); *see also Crudup v. District of Columbia*, 2023 WL 2682113, at *6 (D.D.C. Mar. 29, 2023) (same). This limitation applies with particular force to the Weisbrot declarations (Exhibits B and C to Angeion's motion). Both are sworn declarations executed by Angeion's own chief executive, filed by Angeion in proceedings where Angeion was defending itself from some of the allegations at issue here. Called to account by courts overseeing active settlements, in the wake of Plaintiffs' first complaint, *Baker v. Angeion*, these declarations were prepared for Angeion's own purposes, and are not a neutral record whose accuracy or completeness is beyond question. *See Campo v. Granite Servs. Int'l, Inc.*, 584 F. Supp. 3d 1329, 1335–36 (N.D. Ga. 2022); *Moore v. Brouillette*, 2020 WL 7318007, at *6 (D.D.C., 2020); *c.f. E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 625–26 (D.C. Cir. 1997) (reversing dismissal because district court accepted defendants' general denials that were contradicted by the plaintiff's well-pleaded factual allegations). "Indeed, any party can file a document in a proceeding, but that does not mean that the document's contents are beyond reproach." *In re: Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig.*, 288 F. Supp. 3d 1087, 1210 (D.N.M. 2017).

### B. Even if Considered, the Angeion Exhibits Confirm the CCAC

As a threshold matter, this is a conspiracy and concealment case. Plaintiffs allege a scheme specifically designed to be invisible to courts and the public. ¶¶ 8, 10, 366-383. The absence of prior judicial findings of wrongdoing does not undermine the CCAC, it confirms that the concealment was successful. Even if the Court were to take notice of the Angeion Exhibits, which it should not, Plaintiffs' allegations remain plausible.

The Weisbrot declarations confirm the Complaint's central allegations precisely:[4]

> Angeion confirmed the precise pre-arranged financial relationship it concealed from the judiciary across every settlement it administered. Steven Weisbrot, Esq. confirmed that: (a) prior to Angeion's engagement as Settlement Administrator in the $725 million Facebook settlement, Angeion and Blackhawk had negotiated a master service contract, the "Statement of Work," governing the general terms for any future engagements in which Angeion subcontracts with Blackhawk, which applied to the *Facebook* settlement; (b) "Blackhawk has agreed to compensate Angeion in connection with each settlement for which Blackhawk acts as Angeion's subcontractor"; (c) Angeion refused to produce the Statement of Work to Class Counsel even after it was directly requested, offering only in camera review; and (d) "I have never understood Angeion to be subject to any legal obligation to provide information about each of its revenue," claimed it owed no disclosure obligation and admitted that it had failed to disclose these material facts in every settlement it administered.

¶ 168.

Angeion's argument is not that the arrangement does not exist, it is that the arrangement does not harm class members. That is a merits argument, not a plausibility argument, and it cannot be resolved against Plaintiffs on a motion to dismiss. The specific factual disputes Angeion raises through Weisbrot's declarations each answer questions the CCAC did not ask while evading the questions it did. The CCAC does not allege that Angeion's compensation varies with card redemption rates. Weisbrot's denial of that is also a non-sequitur. What the CCAC alleges, and

---

[4] *See* paragraphs 44, 47, 48, 51, 52, and 54 of Angeion Exhibit B.

Weisbrot confirmed, is that Angeion received compensation from Blackhawk calibrated to the volume of cards issued. ¶ 52. The central undisclosed mechanism is not the inactivity fee structure, it is the debit-at-issuance structure: the full-face value of every eCard payment was transferred from the QSF to Blackhawk at the moment of issuance, before any class member ever activated or redeemed the card, and those funds never returned to the QSF regardless of what happened afterward. ¶ 155. That transfer was never disclosed in any court filing, fee application, distribution plan, or class notice. ¶¶ 10, 366-369. Even under Angeion's own framing, that class members retain the full value of their cards subject to disclosed inactivity fees, those funds left the court-supervised QSF at issuance, came under Blackhawk's control, and Angeion received compensation from Blackhawk for making that happen. No court ever approved that structure.

Any statements in the Weisbrot declarations about whether and how Blackhawk makes money (according to Weisbrot, Blackhawk isn't paid, refunds inactivity fees, and keeps no breakage) are made without any basis in fact. Exhibit B ¶ 51 ("I do not have personal knowledge of the details of Blackhawk's underlying business model.") Angeion cannot simultaneously confirm it receives compensation from Blackhawk and disclaim any knowledge of how Blackhawk generates the revenue to fund that compensation. Angeion's own brief admits the structural problem: "unused funds remaining on any digital payment card will . . . at no time revert to the Settlement Fund." Angeion Br. 6. Once QSF funds were transferred to Blackhawk at issuance, they did not return to the class.[5]

[5] Angeion's concerns in its brief with the disclosure made with each eCard, like inactivity fees, to settlement claimants (or settlement counsel), Angeion Br. 6, ignores that the challenged omissions here are Angeion's omission of the kickback payments, the so called "discounts" that were linked to Blackhawk's as-yet-undisclosed projections of such fees and breakage. ¶¶ 373, 374.

Documents and decisions from prior litigation may render allegations implausible where the litigation "involve[s] many of the same facts at issue" and "contradict[s] assertions in the pleadings." *Odish v. Apple, Inc.*, 2015 WL 6507427, at 9 (E.D. Mich. Oct. 28, 2015). That principle does not apply here. The *Google* court was not adjudicating whether Angeion's systematic, undisclosed book-of-business compensation program violated its fiduciary obligations across hundreds of settlements. It was asked a narrow question on the eve of final approval of a fourteen-year-old case what to do for final approval. And the *Google* court's findings reinforce rather than contradict the Complaint. *Cabrera v. Google LLC*, 2025 WL 2494429, * 4 (N.D. Cal. Aug. 29, 2025).

The *Google* court stated that it and class counsel "should have been [made] aware of this arrangement earlier in the proceedings to permit review of any potential conflicts of interest in advance of preliminary approval . . . [but] are now informed that Angeion has a financial interest." *Id.* In addition to requiring belated, remedial disclosures to the settlement class, with new notice regarding Angeion's side-agreement with Blackhawk and offering settlement claimants a second opportunity to elect a payment method, the court accepted class counsels' offer to reduce its expense award by $260,000 to keep the settlement on track: "Given the late stage of [ ] discovery [of the Angeion/Blackhawk agreement] and the severity of the recent disclosures, the Court finds that the $260,000 deduction appropriate to ensure beyond a reasonable doubt that the Class had not been harmed." *Id.*, * 5. These are not the findings of a court that concluded the arrangement was properly disclosed and harmless. They are stop-gap remedial measures from a court that concluded the arrangement was improperly concealed and required correction. The *Google* court simultaneously imposed corrective notice, new opt-out rights, a fee deduction, and prospective

mandatory disclosure requirements for all future administrators in that court, none of which is consistent with vindication.

Angeion's reliance on *Doe #1 v. Am. Fed. of Gov't Emps.*, 554 F. Supp. 3d 75, 92 (D.D.C. 2021) (Bates, J.), confirms the limits of the doctrine it invokes. *Doe #1* permits consideration of incorporated documents to determine their contents not to establish the truth of disputed factual assertions within them. *See Capitol Servs. Mgmt.*, 933 F.3d at 789. The CCAC does not allege that Angeion received no compensation from Blackhawk, it alleges the opposite, and Weisbrot confirmed it. ¶ 52. Similarly, *Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 161 (D.D.C. 2015), applies only where a document "contradict[s]" the complaint's factual allegations. The Weisbrot declarations do not contradict the CCAC, they confirm it. A document confirming the Complaint's central allegations is not a basis for dismissal under either *Doe #1* or *Rivera*.

## III. PLAINTIFFS HAVE ARTICLE III STANDING

Angeion's standing argument is baffling. Plaintiffs are alleged to have been members of 31 settlement classes administered by Angeion,[6] including the three Angeion exemplar settlements, in which Angeion's standing agreements with the Banks and/or FinTechs were carried out. ¶¶ 23, 25-28, 30-32, 34-41. The case-or-controversy requirement of Article III is met. *See Mount Jezreel Christians Without a Home v. Board of Trustees of Mount Jezreel Baptist Church*, 582 A.2d 237 (D.C. Cir. 1990) (stating that "when several plaintiffs are named, all must lack standing before a dismissal on standing grounds may be upheld").[7]

---

[6] If, as Angeion may be suggesting, its standing scheme was not in play in any one particular settlement, then that may be considered if relevant at a latter juncture, such as in defining the settlement class in this case.

[7] *See also Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015) (citing Newberg on Class Actions) ("[F]or every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.");

Angeion's reliance on *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), and *Coubaly v. Cargill, Inc.*, 610 F. Supp. 3d 173, 180 (D.D.C. 2022), *aff'd*, 144 F.4th 343 (D.C. Cir. 2025), for the proposition that a plaintiff must "link individual defendants to particular injuries" does not help Angeion. That link is established: at least 13 named Plaintiffs participated in Angeion-administered settlements and allege a uniform injury, receipt of a reduced pro rata distribution, traceable to Angeion's undisclosed compensation program. Whether Angeion received compensation in any particular settlement is a factual question for discovery, not a standing determination on the pleadings.

The consolidated standing argument is in Plaintiffs' other oppositions and incorporated herein. *See* Plaintiffs' Opposition to the Fintech Defendants' Motion to Dismiss § IV.

**CONCLUSION**

For the foregoing reasons, Angeion's motion to dismiss should be denied in its entirety. If the Court is inclined to dismiss any claim, Plaintiffs respectfully request leave to amend.

---

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (citing Newberg on Class Actions) ("To establish Article III standing in a class action, it is not required that each named plaintiff must have a claim against each named defendant. Rather, for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis"); *Daves v. Dallas County, Texas*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc) ("[F]or each named defendant, at least one named plaintiff must have standing to sue."); *MAO-MSO Recovery II, LLC v. Farmers Insurance Exchange*, 2018 WL 2106467, at *9 (C.D. Cal. 2018) (quoting Newberg on Class Actions) ("In multidefendant class actions, the named plaintiffs must show that each defendant has harmed at least one of them."); *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, 2018 WL 5086623, at *11 (C.D. Cal. Aug. 13, 2018) ("In a multi-defendant class action, at least one named plaintiff must have standing in his own right to assert a claim against each named defendant before he may purport to represent a class claim against that defendant, that is, for every named defendant there be at least one named plaintiff who can assert a claim directly against that defendant.") (internal quotations omitted).

Dated: September 15, 2026

Respectfully Submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: 212-584-0700
Email: cseeger@seegerweiss.com

Shauna Itri
Scott A. George
**SEEGER WEISS LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone: 267-973-4265
Email: sitri@seegerweiss.com

*Plaintiffs' Lead Counsel*

David Boies
Adam Shaw
**BOIES SCHILLER & FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: 914-749-8201
Email: dboies@bsfllp.com
Email: ashaw@bsfllp.com

Bryan F. Aylstock
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ**
17 E. Main St., Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Email: baylstock@awkolaw.com

Kiley Grombacher
**BRADLEY/GROMBACHER, LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
Telephone: 805-270-7100
Email:
kgrombacher@bradleygrombacher.com

Eric Lechtzin
**EDELSON LECHTZIN LLP**
411 S. State Street
Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Email: elechtzin@edelson-law.com

David S. Stone
**STONE & MAGNANINI LLP**
400 Connell Drive
Suite 6200
Berkeley Heights, NJ 07922
Telephone: (973) 218-1111
Email: dstone@smcomplex.com

*Plaintiffs' Executive Committee*