**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL ACTIONS** | **Misc. Action No. 25-179 (JDB);**<br>**MDL Docket No. 3162** |

**DEFENDANTS' OPPOSITION BRIEF REGARDING**
**DEFENDANTS' RULE 26(f) OBLIGATIONS**

# TABLE OF CONTENTS

*Page*

INTRODUCTION ....................................................................................................................1

RELEVANT BACKGROUND ..............................................................................................2

I. RULE 26(F) OPERATES AS A DISCOVERY-PLANNING MECHANISM. ..................2

II. DEFENDANTS' DISCLOSURES ...................................................................................3

ARGUMENT ..........................................................................................................................7

I. PLAINTIFFS' POSITION IS UNTETHERED TO RULE 26(F) AND THE COURT'S JULY 10 ORDER. ............................................................................................7

II. PLAINTIFFS' COMPLAINTS ABOUT DEFENDANTS' DISCLOSURES ARE BASELESS. ....................................................................................................................9

A. Custodial Sources.............................................................................................9

B. Subject-Matter Descriptions of Non-Custodial Sources.......................................12

C. Disclosure of Predecessor Entities, Legacy Systems, and Inherited Data Architectures ...........................................................................................................14

D. How Material Can Be Located or Retrieved.........................................................15

E. Estimated Volume of Potentially Relevant Data ..................................................16

F. Mobile Device Management Software ..............................................................17

G. Transactional Data Rooms ...............................................................................19

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bucceri* v. *Cumberland Farms, Inc.*,
2020 WL 58428 (D. Mass. Jan. 6, 2020) .....3

*Camesi* v. *Univ. of Pittsburgh Med. Ctr.*,
269 F.R.D. 493 (W.D. Pa. 2010) .....7

*Carambot* v. *N.Y.C. Health & Hosps. Corp.*,
2026 WL 112119 (S.D.N.Y. Jan. 14, 2026) .....18

*Covad Commc'ns Co.* v. *Revonet, Inc.*,
254 F.R.D. 147 (D.D.C. 2008) .....7

*In re Depo-Provera Prods. Liab. Litig.*,
No. 3:25-MD-3140, MDL No. 3140 (N.D. Fla. Mar. 14, 2025), Dkt. 72 .....15

*Doe LS 340* v. *Uber Techs., Inc.*,
710 F. Supp. 3d 794 (N.D. Cal. 2024) .....7

*Edlefsen* v. *IHC Health Servs., Inc.*,
2026 WL 1146394 (D. Utah Apr. 28, 2026) .....18

*Enslin* v. *Coca-Cola Co.*,
2016 WL 7042206 (E.D. Pa. June 8, 2016) .....10

**In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
2018 WL 1440923 (D. Kan. Mar. 15, 2018) .....9, 11

*Equal Emp. Opportunity Comm'n* v. *Hooters of Am., LLC*,
347 F.R.D. 445 (M.D.N.C. 2024) .....8

**Firefighters' Ret. Sys.* v. *Citco Grp. Ltd.*,
2018 WL 276941 (M.D. La. Jan. 3, 2018) .....9

*Griffin* v. *Johnson & Johnson*,
2024 WL 3023600 (D. Vt. June 17, 2024) .....9

*Leatherman* v. *Tarrant Cnty. Narcotics Intell. & Coord. Unit*,
507 U.S. 163 (1993) .....3

*Authorities chiefly relied on are marked with an asterisk.

**Lifescan, Inc.* v. *Smith*,
2022 WL 20853087 (D.N.J. July 29, 2022)....................9, 12

*LKQ Corp.* v. *Kia Motors Am., Inc.*,
345 F.R.D. 152 (N.D. Ill. 2023)....................18

**Mortg. Resol. Servicing, LLC* v. *JPMorgan Chase Bank, N.A.*,
2017 WL 2305398 (S.D.N.Y. May 18, 2017)....................9, 12

*In re Pork Antitrust Litig.*,
2022 WL 972401 (D. Minn. Mar. 31, 2022)....................17

*Romero* v. *Allstate Ins.*,
271 F.R.D. 96 (E.D. Pa. 2010)....................15

*In re Seroquel Prods. Liab. Litig.*,
244 F.R.D. 650 (M.D. Fla. 2007)....................7

*Sinclair Wyo. Refin. Co.* v. *Infrassure Ltd*,
2016 WL 11588072 (D. Wyo. Nov. 7, 2016)....................16

*Star Direct Telecom, Inc.* v. *Global Crossing Bandwidth, Inc.*,
272 F.R.D. 350 (W.D.N.Y. 2011).................... 19-20

**Rules**

Fed. R. Civ. P. 26.................... *passim*

D.C. LCvR 16.3....................2

**Other Authorities**

*The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1 (2018)....................18

## INTRODUCTION

Plaintiffs attempt to transform Rule 26(f)—a rule governing discovery planning—into a basis for demanding an exhaustive audit of every conceivable component of Defendants' information-technology ("IT") environment, a final accounting of all potential custodial and data sources, and abstract estimates of the volume of potentially relevant data. Plaintiffs' disclosure demands are untethered to Rule 26(f), the Court's July 10 Order, or any other source of law.

Defendants have complied in good faith with the Court's July 10 Order and their Rule 26(f) obligations, providing Plaintiffs with detailed information regarding custodians and non-custodial sources. Through three rounds of disclosures, Defendants have identified 46 custodians, provided substantive preliminary information regarding custodial and non-custodial sources that may contain potentially responsive information, and reaffirmed their compliance with their preservation obligations.

None of this has satisfied Plaintiffs. They continue to litigate purported deficiencies in Defendants' disclosures by waxing poetic about the history of Rule 26(f), relying on general recitations of Rule 26(f)'s purpose, and citing local rules and checklists from other courts without explaining how any of these things reflect any real deficiencies in Defendants' disclosures. Plaintiffs cite little, if any, *binding* legal authority for their actual deficiency claims; repeatedly refer to supposed failings of "Defendants" without identifying any specific problems with any particular Defendant's disclosures; and attempt to relitigate issues that have been resolved through the parties' submitted August 31, 2026 ESI Protocol ("ESI Protocol").

Rule 26(f) was not intended to, and in practice rarely does, spawn round after round of meet and confers, let alone motion practice. Plaintiffs have failed to meet their burden of demonstrating that Defendants' disclosures are inadequate. The Court should deny Plaintiffs' requested relief.

## RELEVANT BACKGROUND

### I. Rule 26(f) Operates as a Discovery-Planning Mechanism.

Rule 26(f) requires the parties to meet and confer to discuss "the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan." Fed. R. Civ. P. 26(f)(2).

The discovery plan must cover six topics: (A) any changes "in the timing, form, or requirement" for Rule 26(a) disclosures; (B) the subjects, phasing, and limitations on discovery and the deadline to complete discovery; (C) "any issues about disclosure, discovery, or preservation of electronically stored information" ("ESI"); (D) "any issues about claims of privilege or of protection as trial-preparation materials"; (E) any changes in the limitations on discovery; and (F) "any other orders that the court should issue." Fed. R. Civ. P. 26(f)(3).

D.D.C. Local Civil Rule 16.3 lists 16 topics to discuss during the Rule 26(f) conference and in the discovery plan, including any changes to Rule 26(a) disclosures; the extent and length of, and limits on, discovery; the need for a protective order; the deadline for discovery; and "[a]ny issues about disclosure, discovery, or preservation" of ESI. D.D.C. LCvR 16.3(a), (c).

Rule 26(f) is a general discovery-planning mechanism; not a vehicle for final or exhaustive accounts of all custodians or data sources at the pleadings stage. *See* Fed. R. Civ. P. 26(f)(2) (providing that parties should make a good-faith attempt to agree on the discovery plan). For example, it contemplates that parties come to an agreement on "issues *about* disclosures" and the "form" ESI should be produced in. Fed. R. Civ. P. 26(f)(3) (emphasis added). Rule 26(f) identifies Rule 26(a) as providing for mandatory disclosures exchanged by the parties at or shortly after their Rule 26(f) conference. Fed. R. Civ. P. 26(f)(2); *see also* D.D.C. LCvR 16.3(a)(2).

Under Rule 26(a), each party must disclose "each individual likely to have

discoverable information . . . that the disclosing party may use to support its claims or defenses"; a description of the "category and location" of relevant ESI; "a computation of each category of damages"; and relevant insurance agreements. Fed. R. Civ. P. 26(a)(1)(A). Neither Rule 26(a) nor Rule 26(f) requires parties to lay bare every detail of their IT infrastructure, identify every possible custodian across every corporate function, or produce volume estimates for data sources that have not yet been the subject of any discovery. *See Bucceri* v. *Cumberland Farms, Inc.*, 2020 WL 58428, at *6 (D. Mass. Jan. 6, 2020) (Rule 26(a) does not require a party "to name all potential corporate custodians of ESI"). The categories enumerated in Rule 26(a) demonstrate that the Rules' drafters knew how to prescribe the appropriate early disclosures and weigh heavily against Plaintiffs' extra-textual attempts to read substantial additional disclosure obligations into Rule 26(f)'s general language about conferring. *See Leatherman* v. *Tarrant Cnty. Narcotics Intell. & Coord. Unit*, 507 U.S. 163, 168 (1993) (where Federal Rules impose obligations and enumerate specific categories, things "not include[d] among the enumerated [categories]" are excluded).

The Court's Orders are consistent with the purpose of Rule 26(a) and Rule 26(f) disclosures. Case Management Order No. 1 ("CMO No. 1") provides that the "parties shall make their initial disclosures in the scope and form provided by Federal Rule of Civil Procedure 26(a)(1)" by June 15, 2026. (CMO No. 1 at 1, 5.) And on July 10, 2026, the Court ordered the parties to exchange information regarding their custodians and non-custodial sources to facilitate discussions concerning ESI for the parties' discovery plan, noting that other courts have required defendants to share such "preliminary information." (July 10, 2026 Mem. Op. & Order ("July 10 Order") at 8.)

## II. Defendants' Disclosures

Defendants have provided three rounds of disclosures, each expanding on the information available to Plaintiffs as part of Defendants' ongoing good-faith efforts to cooperate

with Plaintiffs' evolving demands and to comply with Rule 26(f) and the Court's directives.

Consistent with CMO No. 1, Defendants served their initial disclosures on June 15, 2026. (Exs. 1-6.[1]) In total, Defendants identified 25 current or former employees who are likely to have discoverable information and provided the subject matter of their discoverable information. Defendants also identified over 40 categories of documents and ESI that they may use to support their defenses. (*Id.*) For example, Defendants Western Alliance Bank ("Western Alliance") and Digital Settlement Technologies LLC ("Digital Disbursements") disclosed three current (and senior) employees who are knowledgeable about Western Alliance's Qualified Settlement Fund ("QSF") program, accounts, and records or Digital Disbursements' class action settlement solutions program, accounts, and records, and likely have documents and communications related to the administration, disbursement, and holding of class action settlement funds. (Ex. 6 at 3.)

In response to the Court's July 10 Order and in an effort to develop a discovery plan with Plaintiffs, between July 23, 2026 and July 27, 2026, Defendants disclosed additional information regarding their custodians and non-custodial sources which may contain potentially responsive information. (Exs. 7-12.) Defendants provided preliminary IT environment information and identified various data sources, such as SharePoint sites, Microsoft Outlook, Teams, OneDrive, shared network drives, and administration databases. (*See*, *e.g.*, Ex. 7 at 2-3 (Angeion Group LLC ("Angeion") disclosing use of M365 Business Premium for emails and calendar; OneDrive; Teams; SharePoint; HubSpot CRM as customer relation management platform; proprietary settlement-administration platform; Metabase as business-intelligence, data-analytics, and reporting platform; Zendesk as customer service, correspondence-management, and

[1] Citations in the form "Ex. [_]" refer to exhibits to the Declaration of Paul H. Lazarow, filed contemporaneously herewith.

ticketing platform; and Genesis Cloud as contact center and communications management); Ex. 8 at 2-3 (Epiq Class Action & Claims Solutions, Inc. and Epiq Systems, Inc. (together, "Epiq") disclosing Outlook email and calendar, OneDrive, shared network drives, SharePoint, Salesforce, and proprietary claims processing system, CMx); Ex. 9 at 1-2 (Tremendous, LLC ("Tremendous") disclosing use of Slack, including dedicated channel for class action settlement matters; email and Zoom; Asana project and task management system; and Ironclad to maintain final executed contracts); Ex. 10 (Western Alliance and Digital Disbursements disclosing use of Microsoft O365; FIS's FCM/Image Centre ("FCM") for most Western Alliance client files; Veritas/Arctera as primary email archival system; shared drives, including OneDrives and network drives; and Teams); Ex. 11 at 2-3 (Kroll Settlement Administration LLC ("KSA") disclosing use of Outlook email and calendar; OneDrive; Global Directory; Sharepoint; and Salesforce); Ex. 12 at 1-2 (The Huntington National Bank ("Huntington") disclosing use of Microsoft O365, OneDrive, Teams, SharePoint and shared network drives related to its National Settlement Team); JND Holdings, LLC d/b/a JND Legal Administration ("JND") July 23, 2026 Ltr. at 1-2 (disclosing use of Outlook email and calendar; a shared network drive; Daybreak claim-administration database; and Teams, including Finance Operations Microsoft Teams Channel); Blackhawk Network Holdings, Inc. ("Blackhawk") July 27, 2026 Ltr. at 2 (disclosing use of Microsoft O365; OneDrive and network drives; Teams for messaging; and policy on use of mobile phones and tablets).) Defendants disclosed 10 additional custodians. (*See* Ex. 9 at 2 (Tremendous disclosing two more custodians); Ex. 11 at 2 (KSA disclosing one more custodian); JND July 23, 2026 Ltr. at 1-2 (disclosing four more custodians); Blackhawk July 27, 2026 Ltr. at 1-2 (disclosing three more custodians).)

On August 6, 2026, Plaintiffs served letters to each Defendant, asserting that each of Defendants' disclosures was inadequate. The parties conferred on August 17, 2026. In an effort

to respond in good faith, compromise with Plaintiffs, and avoid burdening this Court with issues related to their disclosures, Defendants supplemented their disclosures between August 21, 2026 and August 27, 2026. (Exs. 13-18.) The supplemental disclosures aimed to address Plaintiffs' supposed concerns, including by confirming compliance with preservation obligations and providing expanded role and employment-period information for existing custodians, additional information on company-issued mobile devices, additional non-custodial sources, and a total of 11 additional custodians. (*See*, *e.g.*, Ex. 13 at 4-5, 8 (Epiq disclosing additional information on custodian roles, use of six non-custodial systems, and mobile phones); Ex. 14 at 2-3 (Huntington disclosing three additional custodians, including tenures and sources of custodian information, and the dates for its use of SharePoint and Shared Network Drives); Ex. 15 at 3-4 (KSA disclosing two additional custodians and use of a shared network repository and an internal case management system, and specifically identifying which custodians might have relevant, non-privileged information on their mobile devices); Ex. 16 at 2-6 (Western Alliance and Digital Disbursements disclosing three additional custodians and core banking platform and responding to questions regarding use of systems); Ex. 17 at 2-6 (Angeion disclosing detailed employment history for its custodians, custodian-specific data sources, detailed information about its use of non-custodial systems, and addressing Plaintiffs' questions about preservation and transaction data rooms).)

After three rounds of disclosures to comply with Rule 26(f) and the Court's July 10 Order, Defendants have disclosed information regarding their custodians and data sources beyond what is necessary to prepare a discovery plan, including identifying 46 custodians, identifying and describing relevant custodial and non-custodial sources and operating systems, confirming compliance with preservation obligations, and providing information on the use of mobile phones.

## ARGUMENT

### I. Plaintiffs' Position Is Untethered to Rule 26(f) and the Court's July 10 Order.

Plaintiffs' brief bears almost no relationship to the issues at hand. The first two sections of Plaintiffs' argument are devoted to a general recitation of Rule 26(f)'s history, purpose, and evolution, without reference, or any meaningful connection, to the specific issues before this Court. (*See* Pls. Br. at 4-9.) They cite a myriad of local rules, standing orders, and guidelines from districts across the country in a nearly page-long footnote (*see id.* at 8-9 n.25), and they spend pages of their brief citing cases bearing no obvious relationship to purported deficiencies in Defendants' disclosures (*see id.* at 5-7).[2] None of these cited sources governs the proceedings before this Court and none establishes the standard for assessing the adequacy of Defendants' disclosures.

Plaintiffs further ignore the context of Defendants' disclosures and complain about "piecemeal" disclosures. (Pls. Br. at 3.) But of course Defendants' three rounds of disclosures resulted from: (1) fulfilling their obligation to provide Rule 26(a) initial disclosures by June 15, 2026; (2) complying with the July 10 Order by providing additional "preliminary information" about their custodial and non-custodial sources; and (3) supplementing their disclosures in an effort to respond to Plaintiffs' August 6 deficiency letters. (*See supra* Relevant Background, § II.) That is not "piecemeal" compliance; it is the kind of good-faith engagement that the Federal Rules

[2] *See Camesi* v. *Univ. of Pittsburgh Med. Ctr.*, 269 F.R.D. 493, 496 (W.D. Pa. 2010) (analyzing disclosure compliance with the W.D. Pa. local rules); *Doe LS 340* v. *Uber Techs., Inc.*, 710 F. Supp. 3d 794, 803 (N.D. Cal. 2024) (citing the N.D. Cal. local rules); *Covad Commc'ns Co.* v. *Revonet, Inc.*, 254 F.R.D. 147, 149 (D.D.C. 2008) (ruling on dispute about whether emails will be produced in "electronic form" or "hard copy"); *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 659, 660-66 (M.D. Fla. 2007) (plaintiffs "identified fifty-nine relevant databases through additional interviews, depositions, and meetings" and defendant failed to provide "basic information about each database in order to assist with prioritization, formatting and production," along with other discovery failures).

contemplate. *See Equal Emp. Opportunity Comm'n* v. *Hooters of Am., LLC*, 347 F.R.D. 445, 449 (M.D.N.C. 2024) (explaining that the "purpose of the meet and confer obligation is to 'weed out disputes that can be amicably resolved without judicial intervention'" (citation omitted)). Multiple rounds of "initial disclosures" are unusual only because Plaintiffs advance an unsupported and unusually broad interpretation of Rule 26(f).

When Plaintiffs do turn to the specific issues they wish to litigate, their arguments outrun their authority (to the extent any is cited for any specific purported deficiency). (*See* Pls. Br. at 9-14 (citing only four cases in support of the inadequacy of custodian and source disclosures in §§ III.C-D).) For example, Plaintiffs assert—without citation to any case, rule, or commentary—that "Rule 26(f)(3)(C) requires identifying sources 'through which relevant information flows.'" (*Id.* at 11.) Whatever that means, Rule 26(f)(3)(C) states no such thing. It provides that a discovery plan must set out the parties' views and proposals on "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." Fed. R. Civ. P. 26(f)(3)(C).

Finally, Plaintiffs repeatedly gesture at the supposedly deficient disclosures of "several defendants" without identifying to which Defendants they are referring or what specific deficiency/ies they allege. (*See*, *e.g.*, Pls. Br. at 10-11.) If Plaintiffs have remaining concerns about specific elements of individual Defendants' disclosures, they should identify those issues to the relevant Defendants and attempt to resolve them through the meet-and-confer process. Plainly, asking the Court to rule that "someone did something wrong" is improper.

## II. Plaintiffs' Complaints about Defendants' Disclosures Are Baseless.

### A. Custodial Sources

Plaintiffs contend that Defendants have inadequately identified—or failed to identify—custodians "from finance, accounting, treasury, records management, or compliance." (Pls. Br. at 10.) That contention is legally and factually unsupported.

Courts presume that the responding party is in the best position to select custodians most likely to possess responsive information. *Firefighters' Ret. Sys.* v. *Citco Grp. Ltd.*, 2018 WL 276941, at *4 (M.D. La. Jan. 3, 2018). A requesting party claiming that a responding party's "custodial designations are inadequate or incomplete faces a very heavy burden to overcome [that] presumption," *Lifescan, Inc.* v. *Smith*, 2022 WL 20853087, at *11 (D.N.J. July 29, 2022), and must show that the responding party's custodian designations are "manifestly unreasonable" or that "the resulting production is deficient." *Mortg. Resol. Servicing, LLC* v. *JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017). Contrary to Plaintiffs' argument (Pls. Br. at 10), *EpiPen* does not confirm that Defendants have resisted any sequence, and it does not state that a party may be relieved of that burden based on its speculation that the producing party has refused to identify relevant custodians. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018) (describing what a requesting party must show to be entitled to disclosure of additional custodians). Defendants need not identify every possible custodian; additional custodians are unnecessary where they would not "provide unique, relevant information different from" already-identified custodians. *Griffin* v. *Johnson & Johnson*, 2024 WL 3023600, at *2-3 (D. Vt. June 17, 2024) (plaintiff "is not entitled to discovery of every individual adjacent to a possible issue in the case").

Plaintiffs have failed to meet their burden to show that Defendants' custodial disclosures are deficient. They list the purported deficiencies as to certain Defendants' disclosures,

but they make no effort to identify to which Defendants they refer, or what specific deficiency they allege, nor do they identify any individual who should have been designated as an additional custodian. Instead, they refer to "several defendants," unnamed "groups" of Defendants, and "custodian[s] from finance, accounting, treasury, records management, or compliance." (Pls. Br. at 10.) These vague assertions come nowhere near meeting Plaintiffs' burden to articulate a basis for requiring the disclosure of additional custodians. Nor can Plaintiffs meet this burden by speculating that a responding party must designate additional custodians on the basis that the custodians occupied certain roles in a company—"the fact that a person may have had some connection to the events in question does not automatically mean that such person must be included as an ESI custodian." *Enslin* v. *Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016).

Defendants have disclosed 46 custodians, with wide-ranging positions, from Chief Financial Officer (JND Aug. 27, 2026 Ltr. at 2) to Head of Class Action Sales (Ex. 17 at 2). For each custodian, Defendants have disclosed the subjects of discoverable information that the custodian is likely to have, the custodian's role and tenure in the company, and the relevant custodial sources. For example, Western Alliance and Digital Disbursements disclosed six custodians who may have relevant information stored on Microsoft O365 email, Teams, and OneDrive. (Ex. 16 at 2-4.) Three of those custodians—Western Alliance's Senior Managing Director, Managing Director, and Director of Operations in the Juris Banking Group—are likely to have discoverable information related to Western Alliance's QSF "program, accounts, and records; [and] Agreements, documents, and/or communications related to the administration, disbursement, and holding of class action settlement funds." (*Id.* at 2-3.) The other three custodians—Digital Disbursements' CEO, Chief of Staff, and Director of Operations—are likely to have discoverable information related to "Digital Disbursements' class action settlement

solutions program, accounts, and records; [and] Agreements, documents, and/or communications related to the administration, disbursement, and holding of class action settlement funds." (*Id.* at 3-4.)

Plaintiffs have not demonstrated that any Defendant has failed to disclose custodians "from finance, accounting, treasury, records management, or compliance" with relevant information. Plaintiffs claim that the Complaint implicates individuals with those roles. (Pls. Br. at 9-10.) But they fail to identify any allegation in the Complaint that necessarily calls for individuals with those roles. *See EpiPen*, 2018 WL 1440923, at *3-4 (analyzing proposed additional custodians based on whether they are "relevant to the claims and defenses in this case"). In contrast, Defendants explained why Plaintiffs' demand for custodians from certain categories of departments is not necessary and how their existing custodian disclosures map directly onto the subject matter of the allegations in the Complaint. Western Alliance and Digital Disbursements, for example, explained that individuals with roles in finance, accounting, treasury, records, compliance, or IT "are generally individuals whose activities are procedural (*e.g.*, generating reports and executing instructions)" rather than negotiating the terms to which the bank account(s) for a specific class-action settlement will be subject, and thus irrelevant to Plaintiffs' claims. (Ex. 16 at 2.) Instead, Western Alliance and Digital Disbursements disclosed non-custodial sources such as Western Alliance's client-file storage system, the use of shared drives, and the Western Alliance core banking platform. (*Id.* at 5.) Epiq described how one custodian oversees "disbursements and banking," including "account setup, reconciliation, payment processing, and disbursements"; how another custodian oversees "the use of digital payments platforms"; and how yet another custodian is responsible for preparing bids and proposals for settlement administration work. (Ex. 13 at 5-6.) These disclosures, and similar disclosures provided by other Defendants,

more than adequately explain why—at least at this time—the custodians disclosed are likely to have relevant information and documents, including regarding the very allegations that Plaintiffs claim Defendants' disclosures do not sufficiently cover. In fact, during the parties' August 17, 2026 meet-and-confer, Plaintiffs agreed that they did not know which departments—finance, records, or otherwise—their Complaint allegations actually implicated. (*See id.* at 5.)

Plaintiffs' attempt to sidestep their burden to show that the existing disclosures are inadequate fails. They assert that the standard should not apply if the requesting party "has not been told who the candidates are or what subject matter the disclosed custodians cover." (Pls. Br. at 10.) Defendants have disclosed relevant custodians by name, role, and corresponding subject matter. Further, Plaintiffs provide no legal support for their assertion. Instead, their position underscores that the appropriate context for litigating additional custodians is during general discovery (not during the Rule 26(f) process), in which parties can "adequately link any purported shortcomings [in the responding party's production] with the failure to search the files of the additional custodians," *Mortg. Resol. Servicing, LLC*, 2017 WL 2305398, at *3, by analyzing document productions, *see*, *e.g.*, *Lifescan, Inc.*, 2022 WL 20853087, at *6, *11 (rejecting request for additional custodians based on a "full reading" of an email chain produced in discovery).

**B. Subject-Matter Descriptions of Non-Custodial Sources**

Plaintiffs complain that "[t]he subject matter descriptions provided for non-custodial sources are generic rather than substantive." (Pls. Br. at 11.) But Plaintiffs' real complaint is not that Defendants provided insufficient descriptions; it is that Defendants did not describe their sources in the exact terms that Plaintiffs prefer.

As an initial matter, Plaintiffs provide no authority for their assertion that Defendants' subject-matter descriptions are insufficient. Plaintiffs cite no authority for their claim that "Rule 26(f)(3)(C) requires identifying sources 'through which relevant information flows.'"

That phrase appears nowhere in the text of Rule 26(f)(3)(C), and Plaintiffs fail to explain what it means or how Defendants' disclosures purportedly fall short of this newly asserted requirement. (Pls. Br. at 11 (purporting to quote language from Rule 26(f)(3)(C) that does not appear in that rule).)

In any case, the record reflects that Defendants have provided substantive subject-matter descriptions where relevant in compliance with their Rule 26(f) obligations. Plaintiffs complain that "several [unnamed] defendants identified a customer relationship management platform without stating whether it records vendor compensation terms, referral fee arrangements, or breakage calculations." (Pls. Br. at 11.) Plaintiffs do not explain why descriptions of customer relationship management ("CRM") platforms must include this information, and Defendants with CRM platforms substantively described them. Angeion described its CRM platform as a "platform[] to maintain and track prospective-client and client contacts, sales opportunities, sales activity, communications, and related business-development information." (Ex. 17 at 4.) Epiq stated that its CRM platform "contains information concerning prospective and existing engagements, client relationships, and sales activities" (Ex. 13 at 7), and KSA explained that it uses its CRM platform "to maintain information on prospective and existing clients, business opportunities, and related documents" (Ex. 15 at 4). The CRM disclosures are more than sufficient in providing preliminary information to Plaintiffs for the purpose of formulating a discovery plan under Rule 26(f).

Defendants have likewise adequately explained or provided sufficient information regarding their other source disclosures. Western Alliance, for example, explained that it stores client files in a "third-party system," FCM/Image Centre, which "has been in use since October 2016 and documents from the prior image center were imported into FCM at that time." (Ex. 16

at 5.) Tremendous described its "Class Action Settlements Slack Channel" as a "company-wide Slack channel dedicated to class action settlement matters, in use since approximately 2021, that is not associated with a single individual custodian." (Ex. 9 at 2.) JND explained that its S Drive is a "shared network drive containing project folders maintained for individual settlements administered by JND, including folders relating to the *Equifax* and *Lerman* settlements" and may contain materials such as bids, proposals, QSF statements, and other banking-related documents. (JND Aug. 27, 2026 Ltr. at 5) Defendants' disclosures of non-custodial sources are more than adequate for discovery planning purposes, even if they do not include specific details requested by Plaintiffs that, of course, Rule 26 does not require.

### C. Disclosure of Predecessor Entities, Legacy Systems, and Inherited Data Architectures

Plaintiffs also contend that "several [unidentified] defendants [that] underwent acquisitions during or before the relevant period" have failed to disclose "predecessor entities, legacy systems, and inherited data architectures." (Pls. Br. at 11.) Again, Plaintiffs cite no authority for the proposition that Rule 26(f) requires disclosure of Defendants' comprehensive IT history, nor have they demonstrated the relevance of such a disclosure.

Plaintiffs' demand for the disclosure of predecessor entities, legacy systems, and inherited data architecture goes far beyond the disclosure of "preliminary information about IT infrastructure" contemplated in the Court's July 10 Order. (July 10 Order at 8.) Consistent with Rule 26(f) and this Court's Order, Defendants have disclosed what likely sources of relevant information are readily accessible. JND disclosed that its "work computers generally run on the Windows operating system," and that it "has used Microsoft's suite of productivity applications, including Outlook, since at least 2017." (JND Aug. 27, 2026 Ltr. at 6.) Epiq disclosed that relevant custodians' email accounts "were merged into their Epiq email accounts," while the other

potentially relevant acquisition occurred in 2004, far outside the scope of Plaintiffs' allegations. (Ex. 13 at 3 n.1 & 4.) Western Alliance disclosed that Veritas/Arctera is the primary archival system for Western Alliance and Digital Disbursements' email and the storage of client files in FCM since 2016. (Ex. 16 at 5.) Huntington disclosed that its National Settlement Team has used SharePoint and Shared Network Drives dating back to February 2016 and February 2019, respectively. (Ex. 14 at 3.) These disclosures provide Plaintiffs with ample information for discovery planning.

**D. How Material Can Be Located or Retrieved**

Plaintiffs assert that Defendants have not addressed "how relevant material can be located or retrieved from any disclosed source." (Pls. Br. at 12.) This is baseless for multiple reasons. Rule 26(f) contains no language whatsoever requiring the parties to disclose potential collection methodologies in their initial disclosures. To the extent that the *Depo-Provera* court required it, the Court should again reject Plaintiffs' reliance on orders from that outlier case. (*See* Pls. Br. at 12 (citing *Depo-Provera* case management order[3]); *see also* Aug. 19 Order at 3, 5 (rejecting *Depo-Provera*'s Pretrial Order No. 19's "puzzl[ing]" validation procedure).)

Courts regularly hold that this sort of discussion is appropriate during general discovery, after Rule 26 disclosures. *See Romero* v. *Allstate Ins.*, 271 F.R.D. 96, 109-10 (E.D. Pa. 2010) (compelling defendants to disclose details about the search methodology they will use for

---

3 Case Management Order No. 1 at 7, *In re Depo-Provera Prods. Liab. Litig.*, No. 3:25-MD-3140, MDL No. 3140 (N.D. Fla. Mar. 14, 2025), Dkt. 72. In a prior section of the brief, Plaintiffs cite another order from the Northern District of Florida requiring disclosure of how to best "collect and retrieve" material, but that case management order provides no analysis of why and how that information is required by Rule 26(f) and also includes burdensome requirements such as "e-discovery vendors and client representatives" attending "a multi-day Rule 26(f) conference" and the parties presenting to the Court for an off-the-record "Science & Technology Day." (Pls. Br. at 9 n.26 (citing Case Mgmt. Order No. 1, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-02885 (N.D. Fla. June 17, 2019), Dkt. 86).)

production of ESI during discovery dispute); *Sinclair Wyo. Refin. Co.* v. *Infrassure Ltd*, 2016 WL 11588072, at *6 (D. Wyo. Nov. 7, 2016) (denying request to compel production of "all search terms, custodians and date ranges" used in connection with production where court lacked knowledge of what was produced).

But most importantly, the parties *have already agreed in the proposed ESI Protocol* when these discussions should occur. The ESI Protocol states that "the Producing Party shall provide the Requesting Party with sufficient technical information about each such source to enable a meaningful meet and confer" "[p]rior to the collection of any database or structured data source." (ESI Protocol § V.B.) The ESI Protocol contemplates an iterative meet-and-confer process for the parties to determine the appropriate search term methodology if a producing party elects to use search terms to collect and produce data (*id.* § V.C.a.2.), and a similar process after general discovery opens for the collection of short message communications (*id.* § V.C.a.11). Finally, to the extent that a producing party asserts that relevant ESI is not "reasonably accessible," the parties must "promptly meet and confer in good faith to try to resolve such issues." (*Id.* § IX.A.) The parties have already resolved Plaintiffs' purported issue regarding document-collection disclosures, and there is no reason for the Court to revisit it.

### E. Estimated Volume of Potentially Relevant Data

Similarly, Plaintiffs insist that Defendants disclose an "estimate of the volume of potentially relevant data" for production in general discovery. (Pls. Br. at 12, 15.) But no general discovery requests are pending. Absent any further discovery requests, there is no basis on which Defendants even could calculate the general-discovery volume estimates Plaintiffs demand. And Plaintiffs cite no authority requiring Defendants, who have only received informal and so-called draft requests for documents, to conduct the sort of document collection and review effort necessary to arrive at a remotely accurate estimate of the "volume of potentially relevant data."

Plaintiffs' assertion that the parties cannot develop "effective and targeted search terms and TAR protocols" (Pls. Br. at 12) without estimated data volume is exactly backwards—"effective and targeted search terms" yield estimates of the volume of potentially relevant data; not the other way around. The parties' ESI Protocol got it right and provides for a search methodology (ESI Protocol § V.C) and requires that the producing party not utilize a TAR protocol unless it works "cooperatively to negotiate an appropriate TAR Protocol" (*id.* § V.D). Volume estimates may be a component of that process—they could be developed (and likely would be significantly refined) in connection with concrete discovery requests and iteratively developed search methodologies. In the abstract, the process of estimating the "volume of potentially relevant data" is bound to be time-consuming and expensive and to yield a number that is completely useless. This, no doubt, is why no rule requiring any such fool's errand exists.

**F. Mobile Device Management Software**

Plaintiffs contend that Defendants have not adequately disclosed whether Defendants have Mobile Device Management ("MDM") software in place. (Pls. Br. at 12.) But they cite no authority in support of their attempt to read a specific MDM disclosure requirement into Rule 26(f). Plaintiffs' sole cited authority, *In re Pork Antitrust Litigation*, does not require disclosure of MDM software as part of Rule 26(f) disclosures. (Pls. Br. at 13 n.31); *see* 2022 WL 972401, at *3-4 (D. Minn. Mar. 31, 2022) (addressing control of text messages relevant to merits-stage discovery, not the scope of Rule 26(f) disclosures or the disclosure of MDM software).

If Plaintiffs' concern is that mobile device data is not being preserved, that is unfounded. At the Rule 26(f) conference in June, Defendants confirmed that they are complying with their preservation obligations. While Rule 26(f) requires parties to discuss preservation issues, Fed. R. Civ. P. 26(f)(3)(C), it does not make information concerning the implementation of preservation policies (let alone anything as granular as whether "mobile device management

software" is being used) part of mandatory disclosures. *See Edlefsen* v. *IHC Health Servs., Inc.*, 2026 WL 1146394, at *1 (D. Utah Apr. 28, 2026) ("Rule 26(f) requires the parties to discuss 'any issues about preserving discoverable information,' but it does not require any particular disclosures relating to preservation protocols." (quoting Fed. R. Civ. P. 26(f)(2))). Rather, courts routinely recognize that information regarding litigation-hold implementation, preservation instructions, and internal preservation is generally not discoverable absent a showing of deficiency. *See, e.g.*, *Carambot* v. *N.Y.C. Health & Hosps. Corp.*, 2026 WL 112119, at *1 (S.D.N.Y. Jan. 14, 2026) (party seeking to compel discovery of defendants' preservation of video and audio evidence had burden to "provide an adequate factual basis to justify" that discovery); *see also LKQ Corp.* v. *Kia Motors Am., Inc.*, 345 F.R.D. 152, 168 (N.D. Ill. 2023) ("[A] litigation hold memorandum or notice falls within the type of non-substantive information that constitutes discovery on discovery."); *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, 126 (2018) ("A responding party's obligations under Rule 26(f) to meet and confer in good faith does not trump its right to evaluate unilaterally and select the procedures, methodologies, and technologies appropriate for preserving and producing its own ESI."). Plaintiffs, of course, have identified no factual basis for their demand for the specific details of Defendants' preservation protocols, nor have Plaintiffs provided any details regarding the mechanics of their own preservation protocols.

Finally, and in any event, Defendants have disclosed information regarding mobile devices or preservation obligations where relevant. (*See*, *e.g.*, Ex. 17 at 2-3, 6 (Angeion disclosing that three custodians may have relevant information on their personal phones and confirming that it has taken "reasonable steps" in upholding its preservation obligations); Ex. 13 at 4-5 (Epiq identifying which custodians have company phones; identifying the one custodian who uses a personal phone for business purposes; describing Epiq's Bring Your Own Device policy; and

confirming that all custodians are complying with hold notices); Ex. 14 at 5 n.2 (Huntington disclosing that it "has instructed employees subject to its litigation hold to retain any potentially responsive material on personal devices, including mobile phones"); Ex. 18 at 4-5 (Tremendous disclosing that it issues no mobile phones to employees but its employees may access work applications from personal devices and that it has taken reasonable steps to preserve potentially relevant information); Ex. 15 at 2, 5 (KSA disclosing two custodians with potentially relevant information on their mobile devices and confirming that those custodians are complying with legal hold notices); Ex. 16 at 6 (Western Alliance and Digital Disbursements disclosing employees may use their own mobile phones and tablets to access company email and other company-approved collaboration tools, that one custodian has a company-issued tablet, and that one custodian has a company-issued phone); JND Aug. 27, 2026 Ltr. at 5 (disclosing that employees who use personal mobile phones for business purposes are "subject to device-level security controls"); Blackhawk Aug. 21, 2026 Ltr. at 3 (confirming that it will comply with its preservation obligations).) Nothing in Rule 26 or the July 10 Order requires more, and Plaintiffs have offered no reasonable basis to compel it.

### G. Transactional Data Rooms

Plaintiffs assert that Defendants have not adequately identified "transaction data rooms" and characterize such data rooms as "directly relevant to this litigation." (Pls. Br. at 13.) Yet they fail to identify a single allegation in the Complaint that supports their position. This is not a case about mergers, acquisitions, or other corporate transactions in which the parties typically establish data rooms for the sharing of non-public information. Plaintiffs cite no case law in support of their position that, regardless of relevance, transaction data rooms "from any acquisition or investment transaction" during some unidentified "relevant period" involving a defendant must be disclosed during the Rule 26(f) process. (*See* Pls. Br. at 13-14.) The one case they do cite, *Star*

*Direct Telecom, Inc.* v. *Global Crossing Bandwidth, Inc.* (*id.* at 14 n.32), involved a producing party's refusal to search for archived ESI in response to a discovery request, rather than during the Rule 26(f) process. 272 F.R.D. 350, 359 (W.D.N.Y. 2011).

Nevertheless, certain Defendants have provided information on prior transactions facially unrelated to this litigation, in an effort to compromise on Plaintiffs' demands. Angeion confirmed that the data rooms associated with the transactions identified by Plaintiffs "have been archived into .zip files for each." (Ex. 17 at 6.) Angeion subsequently informed Plaintiffs, on August 24, 2026, that the fourth data room about which Plaintiffs inquired had been archived. KSA confirmed that "based on [its] current investigation," "the relevant contractual relationships at issue in the complaint post-dated the . . . acquisition" that Plaintiffs identified. (Ex. 15 at 6.) And Epiq clarified that data connected to one of the acquisitions Plaintiffs identified was "outside the temporal scope of discovery." (Ex. 13 at 9.) But these disclosures are far afield from the disclosures contemplated under Rule 26(f) and the Court's July 10 Order.

## CONCLUSION

Defendants have spent significant time and effort in complying with their Rule 26 and other obligations. Their disclosures more than satisfy those obligations. For the foregoing reasons, the Court should deny Plaintiffs' requested relief.

Dated: September 18, 2026

Respectfully submitted,

/s/ *Brendan P. Cullen*
Brendan P. Cullen
(cullenb@sullcrom.com)
Kyle W. Mach
(machk@sullcrom.com)
Paul H. Lazarow
(lazarowp@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone: (650) 461-5600
Facsimile: (650) 461-5700

*Counsel for Defendants Western Alliance Bank and Digital Settlement Technologies LLC*

*/s/ J. Gordon Cooney, Jr.*
J. Gordon Cooney, Jr.
Franco A. Corrado
William T. McEnroe
Matthew D. Klayman
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: 215-963-5000
gordon.cooney@morganlewis.com
franco.corrado@morganlewis.com
william.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

Randall M. Levine
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202-373-6541
randall.levine@morganlewis.com

*Attorneys for Defendant Angeion Group LLC*

/s/ Albinas Prizgintas
Albinas Prizgintas
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: 202-663-6000
albinas.prizgintas@wilmerhale.com

Sonal N. Mehta
WILMER CUTLER PICKERING
HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: 650-858-6000
sonal.mehta@wilmerhale.com

Denis R. Hurley
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Telephone: 212-230-8800
denis.hurley@wilmerhale.com

*Attorneys for Defendants Epiq Systems, Inc. and Epiq Class Action & Claims Solutions, Inc.*

/s/ David J. Weiner
David J. Weiner
Robert J. Katerberg
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: 202-942-5000
david.weiner@arnoldporter.com
robert.katerberg@arnoldporter.com

Eskander Alex Beroukhim
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Telephone: 213-243-4059
Alex.Beroukhim@arnoldporter.com

*Attorneys for Defendant JND Legal Administration*

/s/ Scott Ahmad
Scott Ahmad
Reid Smith
WINSTON TAYLOR LLP
300 N. LaSalle Dr.
Chicago, IL 60654-3406
Telephone: 312-558-5600
scott.ahmad@winstontaylor.com
reid.smith@winstontaylor.com

*Attorneys for Kroll Settlement Administration LLC and Kroll, LLC*

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler
George E. Mastoris
Tyler M. Dato
WINSTON TAYLOR LLP
200 Park Avenue
New York, New York 10166
Telephone: 212-294-6700
Jeffrey.Kessler@winstontaylor.com
George.Mastoris@winstontaylor.com
Tyler.Dato@winstontaylor.com

Amanda L. Groves
WINSTON TAYLOR LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213-615-1700
Amanda.Groves@winstontaylor.com

Lauren E. Duxstad
WINSTON TAYLOR LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, Florida 33131
Telephone: 305-910-0500
Lauren.Duxstad@winstontaylor.com

*Attorneys for The Huntington National Bank*

*/s/ Gregory Silbert*
Gregory Silbert
David J. Lender
Joseph R. Rausch
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
David.Lender@weil.com
Greg.Silbert@weil.com
Joseph.Rausch@weil.com

*Attorneys for Defendant Blackhawk Network Holdings, Inc.*

_/s/ John A. Pearce_
John A. Pearce
Jess M. Krannich
Paul J. Sampson
Rebecca J. Nelson
WILSON SONSINI GOODRICH & ROSATI
95 S State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510
Facsimile: (866) 974-7329
jkrannich@wsgr.com
jpearce@wsgr.com
psampson@wsgr.com
rnelson@wsgr.com

W. Bradford Barber
WILSON SONSINI GOODRICH & ROSATI
12235 El Camino Real #200
San Diego, CA 92130
Telephone: (858) 350-2300
bbarber@wsgr.com

*Counsel for Defendant Tremendous, LLC*