**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION** | **Misc. Action No. 25-179 (JDB); MDL Docket No. 3162** |
| **This Document Relates To: ALL CASES** | |

# JND LEGAL ADMINISTRATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

I. The Complaint Does Not Plausibly Allege Any Actionable Conduct by JND .................... 1

II. The Engagement Documents Authorize Financial Benefits From Vendors ........................ 4

III. Plaintiffs Lack Article III Standing to Sue JND ................................................................. 6

IV. Plaintiffs Cannot Litigate Claims Relating to the *Equifax* Settlement ................................ 7

V. Claims Arising Out of the *Lerman* Settlement Are Barred ................................................. 8

CONCLUSION ........................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) ....................5

*Brae Transp., Inc. v. Coopers & Lybrand*,
790 F.2d 1439 (9th Cir. 1986) ....................8

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ....................6

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ....................6

*In re Google Phone Litig.*,
2012 WL 3155571 (N.D. Cal. Aug. 2, 2012) ....................5

*Hanson v. District of Columbia*,
2026 WL 865730 (D.D.C. Mar. 30, 2026) ....................6

*Jung v. Ass'n of Am. Med. Colls.*,
300 F. Supp. 2d 119 (D.D.C. 2004) ....................2

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
835 F. Supp. 3d 79 (D.D.C. 2026) ....................8

*MSP Recovery Claims, Series LLC v. Pfizer, Inc.*,
2025 WL 689180 (D.D.C. Mar. 4, 2025) ....................6

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ....................5

*Siddiqi v. Lane*,
748 F. Supp. 637 (N.D. Ill. 1990) ....................8

*Smith v. Am. Idol Prods., Inc.*,
2021 WL 1540616 (Cal. Ct. App. Apr. 20, 2021) ....................8

*In re Travel Agent Comm'n Antitrust Litig.*,
2007 WL 3171675 (N.D. Ohio Oct. 29, 2007) ....................4

*Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*,
321 F. Supp. 3d 49 (D.D.C. 2018) ....................2

*Willoughby v. Potomac Elec. Power Co.*,
853 F. Supp. 174 (D. Md. 1994) ........................................ 8

**Statutes**

Cal. Civ. Code § 1542 ........................................ 8

**Court Rules**

Fed. R. Civ. P. 8(d)(3) ........................................ 3

**Other Authorities**

Docket, *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.) ........................................ 7, 8

Plaintiffs have no case against JND and they know it. In their haste to conjure a supposed market-wide conspiracy, they named JND and now bob and weave aimlessly in a futile effort to make their claims stick. They do not deny that JND's engagement contracts—through language approved by Plaintiffs' leadership counsel in this MDL—expressly authorized receipt of financial benefits from vendors and banks. All they can do is retreat to a series of non sequiturs, including that the existence of such a provision somehow constitutes an admission of Plaintiffs' complaint.

The crux of Plaintiffs' antitrust theory is that JND steered bank deposit business to Huntington in exchange for a share of the interest spread. But in the two relevant settlements, the settling parties—not JND—designated Huntington to hold the funds. And Huntington never paid JND any money. Plaintiffs admit, in the face of sworn testimony in other litigation from both JND and Huntington that Huntington has never paid JND a dime, that they have no basis to plead such payments other than rank speculation.

Those are just a few of the many fatal flaws in Plaintiffs' claims against JND. Pleading exclusively on information and belief, without ever stating the basis of that belief, Plaintiffs' entire complaint regarding JND rests on innuendo. JND's name has been dragged through the mud due to these baseless allegations. JND should not have to undergo years of costly legal expense and burdens to vindicate itself when it should never have been here in the first place. Plaintiffs' claims against JND should be dismissed with prejudice.

## I. The Complaint Does Not Plausibly Allege Any Actionable Conduct by JND

The Complaint barely mentions JND at all, instead relying almost entirely on generalized allegations against "Defendants" or "Administrator Defendants." To support their assertion that "Rule 9(b) is satisfied," Plaintiffs cite to their allegations about the so-called JND "exemplar settlements" and 57 paragraphs in their Complaint that supposedly explain "how" JND defrauded them. Opp. 2. But in the "exemplar settlements" section, the only allegations of *misconduct* are

conclusory, couched as "on information and belief" without the "statement of the facts upon which the allegations are based" that Plaintiffs concede (Opp. 2) is required. And the 57 paragraphs that purportedly lay out the "how" refer to "Administrator Defendants" two dozen times and never mention JND. *See* Compl. ¶¶ 58-79, 96-102, 121-131, 153-169. That shotgun approach fails.

Plaintiffs' only excuse for their fulsome group pleading is that "the defendants are part of a single enterprise." Opp. 1 (quoting *Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*, 321 F. Supp. 3d 49, 61 (D.D.C. 2018)). But the Complaint never plausibly alleges JND was in any kind of "enterprise" with any other Defendant. And what *Vantage* meant by "single enterprise" is multiple affiliated entities within the same corporate family, namely three related "Willis Defendants." *Id.* In contrast, "collective allegations against *unrelated* defendants," pervasive in the Complaint here, are "inadequate." *Id.* (emphasis added); *accord Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004).

Nor can Plaintiffs justify their "on information and belief" pleading of key allegations against JND, such as that Huntington paid JND money. Indeed, it is troubling that Plaintiffs cling to this false allegation despite being fully aware of sworn testimony from JND and Huntington in other litigation that no such payments occurred. It is not true that the testimony was "cabined" (Opp. 2) to that particular litigation. *See* ECF No. 150-3, at 25 ("HNB makes no payments, contractual or otherwise, to JND Legal Administration in this matter, *or in any other matter*"); *id.* at 72 ("JND has *never* received any payment of any kind from Huntington National Bank—directly, indirectly, or through any arrangement of any sort," including "in this matter, *or in any other matter*") (emphases added).[1] Worse still, even as they disregard testimony directly from

---

[1] Plaintiffs' objection that these declarations are "extrinsic evidence" and "create only a factual dispute" (Opp. 2) misses the point: that Plaintiffs should not plead such payments on "information and belief" in the face of such information without some basis beyond innuendo and speculation.

Huntington and JND refuting their information-and-belief allegations, Plaintiffs purport to draw support for those same allegations from "sworn co-defendant CEO declarations" that have nothing to do with JND and solely discuss that co-defendant's own activities. Opp. 2, 4; Compl. ¶¶ 13-14.

Indeed, when it comes to JND, Plaintiffs cannot even keep straight what their theory is. For example, the opening sentence of Plaintiffs' brief describes their theory as being that "JND . . . caused settlement funds to be deposited with co-conspirator Banks." Opp. 1. In opposing the Bank Defendants' motion to dismiss, Plaintiffs likewise define "the scheme" as administrators "steer[ing] those deposits to the bank" in exchange for a portion of the interest spread. ECF No. 169 at 1. But in the only JND-administered settlements in the Complaint, *the settling parties in those cases*—not JND—chose Huntington to hold the settlement funds. JND Mot. 8; Compl. ¶¶ 331-332, 344-345. Faced with this inconvenient fact, Plaintiffs contradict themselves by insisting that "the theory does not depend on steering at all" and it is irrelevant that "Huntington was designated in the settlement agreements rather than selected by JND." Opp. 4.

Plaintiffs twist themselves into even greater knots when they try to characterize provisions expressly authorizing benefits and payments from banks and vendors as an "admission that the arrangements Plaintiffs allege were real." Opp. 1. That makes no sense. The fact that a contractual authorization exists does not mean it was exercised in any particular instance or any particular way, much less validate Plaintiffs' wildly off-base allegations of conspiracy and fraud. It is simply not true that "[a] defendant defending on the ground that the pleaded conduct was permitted cannot simultaneously argue it is not plausibly alleged." Opp. 2. Even if there were any inconsistency—which there is not—"[a] party may state as many separate . . . defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

Rather than respond to JND's argument (Mot. 9-10) about the lack of coherent antitrust allegations against JND, Plaintiffs merely point to the antitrust section of their response to the administrators' joint brief. Opp. 5. In other words, they have no response to the JND-specific point that JND is not alleged to have engaged in the so-called "parallel conduct" their conspiracy theory is built on, to wit, "the same pattern of steering settlement deposits to the same two Bank Defendants" and taking kickbacks "through the same mechanism—special purpose entities." Compl. ¶ 438. As Plaintiffs know full well, JND neither steered business to the Bank Defendants nor has any "special purpose entities," and Plaintiffs now retract their reliance on steering to banks, insisting that "the theory does not depend on steering" after all. Opp. 4. Without parallel conduct by JND, Plaintiffs' antitrust claim against JND cannot get out of the starting gate. *See*, *e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 2007 WL 3171675, at *3-4 (N.D. Ohio Oct. 29, 2007).

## II. The Engagement Documents Authorize Financial Benefits From Vendors

The engagement documents for both JND-administered settlements in which one or more Plaintiffs participated (*Equifax* and *Lerman*)—as well as for the *Blue Cross/Blue Shield* settlement where the Chairman of Plaintiffs' Executive Committee in this case personally signed off—expressly authorized JND to receive rebates, credits, and other benefits from banks and vendors. Plaintiffs' dismissal of the provision as "generic, boiler plate" (Opp. 7) cannot stand. This language appears on the first page, in Section 3, of a short contract personally reviewed and approved by sophisticated counsel from among the most elite law firms in the country. ECF No. 150-3 at 4, 14. It strains credulity for Plaintiffs to try to write it off as "buried" (Opp. 1) as if it were some kind of fine-print form contract foisted on unsophisticated consumers.

Plaintiffs assert that "the CCAC does not rely on these documents" in ¶¶ 317-343, so they cannot be considered. Opp. 6. But they ignore the Complaint paragraphs cited in JND's motion, such as paragraph 371, which alleged JND's "bids and proposals" "omitted" financial benefits

from banks and fintechs. *See also* Compl. ¶¶ 390, 460(d); Mot. 12-13.[2] Plaintiffs' contention that these authorizations "only . . . establish a defense" (Opp. 7) is equally puzzling. The Complaint repeatedly pleads nondisclosure, which is a *prima facie* element of nearly every claim.[3]

On the merits, Plaintiffs say the authorizations were ineffective because they did not characterize the rebates, credits, or benefits as "kickbacks" of money "that should have" gone to the QSF. Opp. 7. It is absurd to suggest JND had to use Plaintiffs' false verbiage or agree with their theory of the case for those contracts to be enforceable. Plaintiffs also fault the provisions for not containing details like vendor names, amounts, or "mechanisms," but that ignores that these provisions were advance authorizations at the outset of settlement administration. They did not require details of any individual rebate, credit, or benefit, assuming vendors were even selected and such details even existed at the time the advance authorization was agreed to.

Plaintiffs' attempt to deflect from their own leadership's approval of the rebates-and-credits authorization in *Blue Cross/Blue Shield* borders on unintelligible. They concede that their leadership is "sophisticated counsel" and "left that language untouched," but say he made edits to other provisions that "directly conflict with it." Opp. 8. That also makes no sense. Sophisticated counsel negotiating a contract strive for consistency and clarity, not conflicting provisions. And, in fact, the provisions do not conflict at all: Section 2 provides that JND's *invoiced fees* will be

---

[2] In response to other Defendants' motions (but not JND's), Plaintiffs say ¶ 371 is irrelevant because "[i]ncorporation by reference requires a specific reference to the document itself, not a categorical reference to a class of documents to which it happens to belong." ECF 163 at 9 (citing *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015)). *Banneker* does not differentiate between "categorical" and "specific" references, and it confirms that a "'document that discloses what the complaint alleges it concealed will defeat the allegation of concealment.'" *Banneker*, 798 F.3d at 1133. JND's motion cited cases involving references to classes of documents, and Plaintiffs fail to address those cases. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *In re Google Phone Litig.*, 2012 WL 3155571, at *7 (N.D. Cal. Aug. 2, 2012). Plaintiffs cannot get away with falsely characterizing documents and prevent consideration of their actual contents by the simple expedient of referring to such documents categorically.

[3] Plaintiffs also argue the contractual authorizations should be ignored because the full contracts attached to JND's publicly filed motion did not include certain schedules or attachments, which contain confidential business information not germane to the authorization language. Opp. 6. But Plaintiffs have the full copies of those documents through early discovery, so if they believed anything in the schedules was relevant, they would have said so.

paid solely out of an escrow fund, while Section 4 authorizes JND to receive rebates, credits, and benefits from banks and vendors *separate from* the invoiced fees payable out of the escrow fund.

**III. Plaintiffs Lack Article III Standing to Sue JND**

The case Plaintiffs cite for the proposition that "[o]nly one of the named Plaintiffs is required to establish standing" (Opp. 9) concerned whether one class representative's standing was sufficient to get a settlement class certified. *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241-43 (2d Cir. 2007). It does not suggest damages plaintiffs without Article III standing can avoid dismissal by simply piggybacking on another plaintiff's claims. Courts routinely dismiss subsets of plaintiffs lacking standing in that precise situation. *See*, *e.g.*, *Hanson v. District of Columbia*, 2026 WL 865730, at *6 (D.D.C. Mar. 30, 2026); *MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 2025 WL 689180, at *2 (D.D.C. Mar. 4, 2025).

The six Plaintiffs who allege participating in a JND-administered settlement (*Equifax*, and for Wolf, *Lerman* as well) fail to plausibly allege how any JND conduct affected the amount of their personal settlement payout. Mot. 13-14. The notional idea seems to be that if JND had not earned income from vendor arrangements, the settlement fund would have been increased by an amount equal to that income, and each Plaintiff's individual award would have been enhanced in turn. But Plaintiffs plead no facts providing any basis for any of those conjectural links—nothing about what they claimed, nothing about the settlement payout criteria or formula, nothing about what they received, nothing about how the settlement treated residual amounts (*e.g.*, *cy pres*). This is not a "factual question for discovery." Opp. 9. As *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024), makes clear (and none of Plaintiffs' oppositions addresses), Article III causation *at the pleadings stage* cannot "rely on speculation about the unfettered choices made by independent actors not before the courts," *i.e.*, here, the settling parties and the settlement courts. *Id.* at 383.

### IV. Plaintiffs Cannot Litigate Claims Relating to the *Equifax* Settlement

At the initial status conference, the Court asked why the issues Plaintiffs are alleging should not be handled in the underlying settlement courts: "[W]hy shouldn't that be taken care of in that class action before that judge? Why should[] these cases in this MDL proceeding be reaching down into ongoing class actions and displacing the judge who has responsibility over that class action?" Tr., 3/27/26 Hr'g, at 35. At that time, Plaintiffs' counsel agreed it was "entirely reasonable" to "have a limitation of this MDL simply to closed transactions." *Id.*

Despite their agreement then, Plaintiffs now take the untenable position that they should be able to litigate issues relating to the *Equifax* case in this case, even though the counsel who directly represent them in *Equifax* have already raised the same alleged issues in *Equifax* itself. That is not a sensible way to proceed. Contrary to Plaintiffs' assertion (at 10), this case is not one "between non-parties to the settlement": the six Plaintiffs who allege they are members of the *Equifax* class and participated in the *Equifax* settlement are very much parties to that settlement. Nor would excluding the *Equifax*-related claims "fragment" this case into "dozens of pieces" (Opp. 11); it would merely take out one underlying settlement.

Plaintiffs' assertion that "[n]othing is pending before the Equifax court—the settlement is concluded, funds disbursed, case closed" (Opp. 10) is wrong on all counts. The motion filed by *Equifax* class counsel on behalf of the six *Equifax*-class-member-plaintiffs here is pending before the *Equifax* court, the settlement is not concluded, funds remain to be disbursed, and the case is not closed.[4] JND has now responded to the motion in *Equifax*, adducing documentary evidence that *Equifax* class counsel personally reviewed and approved the provision authorizing financial

[4] *See*, *e.g.*, Docket, *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.) (reflecting 19 docket entries so far in 2026).

benefits from vendors, and the docket reflects the matter as under "submission." *See* Reply Declaration of Robert Katerberg, ¶ 3 and Ex. A.

Plaintiffs quarrel over whether the issue should be considered one of comity, forum non conveniens, or jurisdiction. Courts, including the *Equifax* court itself, have characterized analogous issues as jurisdictional.[5] But regardless of framing, the practical upshot is the same: as a case relied on by Plaintiffs explains, "defer[ring] to the jurisdiction of another court on an issue properly before the latter court" avoids a host of practical problems ranging from "unnecessarily burdening the federal judiciary" to the risk of "conflicting judgments." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, 835 F. Supp. 3d 79, 137 (D.D.C. 2026).

## V. Claims Arising Out of the *Lerman* Settlement Are Barred

The notion that Plaintiff Wolf's claim that "[t]he amount of compensation [she] received" in *Lerman* "was diminished" (Compl. ¶ 24) somehow is not a "claim . . . based on any . . . distributions, or awards" in *Lerman* does not pass the straight-face test. Cal. Civ. Code § 1542 is inapplicable: the *Lerman* provision covers only certain narrow categories of claims and therefore is not a "general release" implicating § 1542. *See Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1444-45 (9th Cir. 1986). In any event, *Lerman* settlement class members expressly waived rights under § 1542, *see* Lerman Class Settlement Agreement at 26, ¶ 9.2.1 (ECF No. 150-3, Ex. G), which "California courts have long recognized . . . to be valid," *Smith v. Am. Idol Prods., Inc.*, 2021 WL 1540616, at *7 (Cal. Ct. App. Apr. 20, 2021).

## CONCLUSION

Accordingly, the Court should dismiss Plaintiffs' claims against JND with prejudice.

---

[5] *See*, *e.g.*, *Siddiqi v. Lane*, 748 F. Supp. 637, 639 (N.D. Ill. 1990) (court "has no jurisdiction" over allegations relating to compliance with another court's consent decree); *Willoughby v. Potomac Elec. Power Co.*, 853 F. Supp. 174, 176 (D. Md. 1994) ("court that enters a consent decree and retains enforcement jurisdiction in all probability has exclusive jurisdiction over claims relating to it"); *Equifax*, 2023 WL 2631070, at *3 (N.D. Ga. Mar. 22, 2023).

Dated: October 30, 2026

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Robert J. Katerberg*
David J. Weiner
Robert J. Katerberg
601 Massachusetts Ave. NW
Washington, D.C. 20001-3743
Tel: (202) 942-5000
david.weiner@arnoldporter.com
robert.katerberg@arnoldporter.com

E. Alex Beroukhim (*pro hac vice*)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
213-243-4059
Alex.Beroukhim@arnoldporter.com

***Counsel for Defendant JND Legal Administration***