**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION | Misc. Action No. 25-179 (JDB)<br>MDL Docket No. 3162 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**BRIEF OF AMERICAN BANKERS ASSOCIATION AS *AMICUS CURIAE***
**IN SUPPORT OF**
**BANK DEFENDANTS' MOTION TO DISMISS**

## CORPORATE DISCLOSURE STATEMENT

The American Bankers Association states that it is a non-profit, tax-exempt organization incorporated in the District of Columbia. It has no parent corporation, and no publicly held company has 10% or greater ownership in it.

## TABLE OF CONTENTS

INTEREST OF THE *AMICUS CURIAE* .......... 1

ARGUMENT .......... 2

I. A Fiduciary Relationship Is Special and Rare. .......... 3

II. Accepting Deposits of Court-Supervised Funds and Commercially Pricing Them Does Not Suffice to Make a Bank a Fiduciary. .......... 5

III. A Contrary Ruling Would Significantly Disrupt the Banking Industry. .......... 10

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Aulaqi v. Panetta*,
35 F. Supp. 3d 56 (D.D.C. 2014) .......... 7

*Beckett v. Air Line Pilots Ass'n*,
995 F.2d 280 (D.C. Cir. 1993) .......... 8, 9

*Chazen v. Centennial Bank*,
71 Cal. Rptr. 2d 462 (Cal. Ct. App. 1998) .......... 8

*Curtis-Shanley v. Bank of Am.*,
970 N.Y.S.2d 830 (N.Y. App. Div. 2013) .......... 3

*Foley v. Hill*,
2 H.L.C. 28 (1848) .......... 3, 4

*Groob v. KeyBank*,
843 N.E.2d 1170 (Ohio 2006) .......... 3, 4

*Hamilton Reserve Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*,
134 F.4th 73 (2d Cir. 2025) .......... 3, 8

*He Depu v. Yahoo! Inc.*,
950 F.3d 897 (D.C. Cir. 2020) .......... 8, 9

*Kesselman v. Nat'l Bank of Ariz.*,
937 P.2d 341 (Ariz. Ct. App. 1996) .......... 8

*Keyes v. Paducah & Ill. R.R. Co.*,
61 F.2d 611 (6th Cir. 1932) .......... 6

*McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*,
829 P.2d 1253 (Ariz. Ct. App. 1992) .......... 4

*Miller v. Am. Nat'l Bank & Tr. Co. of Chi.*,
4 F.3d 518 (7th Cir. 1993) .......... 8

*Nat'l Bank of the Republic v. Millard*,
77 U.S. 152 (1869) .......... 3, 8

*People ex rel. Cuomo v. Coventry First LLC*,
915 N.E.2d 616 (N.Y. 2009) .......... 4

*Peoples Westchester Sav. Bank v. FDIC*,
961 F.2d 327 (2d Cir. 1992)....................6, 8

*Shaw v. United States*,
580 U.S. 63 (2016)....................6

*Snyder v. Wells Fargo Bank, N.A.*,
594 F. App'x 710 (2d Cir. 2014) ....................6, 7

*Standard Chartered PLC v. Price Waterhouse*,
945 P.2d 317 (Ariz. Ct. App. 1996)....................4

*Stewart v. Phx. Nat'l Bank*,
64 P.2d 101 (Ariz. 1937)....................4

*Umbaugh Pole Bldg. Co. v. Scott*,
390 N.E.2d 320 (Ohio 1979)....................4

*Valley Nat'l Bank of Phx. v. Elec. Dist. No. Four*,
367 P.2d 655 (Ariz. 1961)....................4

*Wilson v. PNC Mortg.*,
2015 WL 448601 (Ariz. Ct. App. 2015)....................5

**Statute**

26 U.S.C. § 468B ....................7

**Other Authorities**

12 C.F.R. pt. 9....................6

12 C.F.R. § 9.1(c)....................6

12 C.F.R. § 9.2(b) ....................6

12 C.F.R. § 9.2(e)....................6

12 C.F.R. § 9.2(i) ....................7

12 C.F.R. § 9.4....................6

26 C.F.R. § 1.468B ....................7

*OCC Comptroller's Handbook: Custody Services* 11 (Jan. 2002), https://www.occ.gov/publications-and-resources/publications/comptrollers-handbook/files/custody-services/pub-ch-custody-services.pdf [https://perma.cc/WU8Q-9NFB] (last visited Oct. 28, 2026) ....................7

Restatement (Second) of Trusts (1959) ....................4

Restatement (Third) of Torts: Liab. for Econ. Harm (2020) ....................4, 6

## INTEREST OF THE *AMICUS CURIAE*[1]

Founded in 1875, the American Bankers Association ("ABA") is the united voice of America's $24.1 trillion banking industry. ABA's members include small, regional, and large national and state-chartered banks, plus savings associations, trust companies, and savings banks, located in every state and the District of Columbia. These banks[2] employ around 2.1 million people, safeguard $19.2 trillion in deposits, and extend $12.7 trillion in loans. And, most relevant here, these banks often serve as depositories for court-supervised funds—like Qualified Settlement Funds ("QSFs")—and other funds held for third-party beneficiaries.

ABA frequently appears as *amicus curiae* in litigation that affects the banking industry, and it has done so repeatedly when courts face questions about how far a bank's fiduciary obligations extend. This is one such case.

Plaintiffs ask the Court to hold that Western Alliance Bank and Huntington National Bank (the "Bank Defendants") owed Plaintiffs fiduciary duties simply because the Bank Defendants accepted deposits of court-supervised funds earmarked for Plaintiffs' benefit and priced those deposits commercially. That rule would apply not just to banks accepting deposits of court-supervised funds, but to *any* bank accepting *any* deposit held for the benefit of a third party. Plaintiffs' approach not only misunderstands the law—it strikes at bedrock principles underlying the banking industry.

No single bank can speak to this question on behalf of the entire industry. ABA can, and routinely does. ABA therefore respectfully submits this *amicus* brief to urge the Court to reject

[1] No counsel for any party authored this brief in whole or in part, and no entity, person, or party, aside from the *amicus curiae*, its members (excluding the Bank Defendants), or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

[2] To simplify, ABA refers to all these institutions as "banks."

Plaintiffs' proposed fiduciary-duty rule and grant the Bank Defendants' motion to dismiss all claims that hinge on fiduciary duty.

## ARGUMENT

***First***, a bank does not become a fiduciary to the beneficiaries of deposited funds merely by serving as a depository of the funds and pricing them commercially. A foundational principle of American banking is that a bank and its depositor have a debtor-creditor relationship: the bank may lend out the depositor's funds, and in exchange the depositor earns interest at a rate set by the bank. Absent a contrary agreement, that relationship carries no fiduciary duties. Fiduciary status instead requires much more: trust and confidence bestowed in and knowingly accepted by the bank, the bank's control over the entrusted property, and the beneficiary's reasonable reliance on the bank.

***Second***, none of those elements is present here. Plaintiffs did not place any special charge on the Bank Defendants, and the Bank Defendants never accepted one. Indeed, the Bank Defendants have no direct dealings with Plaintiffs. And the Bank Defendants have no investment discretion over the QSFs deposited with them. As alleged in the complaint, the deposits are instead handled by others, like class counsel and administrators.

***Third***, holding that the Bank Defendants nonetheless owed Plaintiffs fiduciary duties would reach far beyond court-supervised funds: it would affect a substantial slice of America's $24.1 trillion banking industry. The rule would apply to any funds that any bank passively holds for the benefit of any third party, and there are thousands of banks holding trillions in such deposits. Imposing fiduciary duties in all those settings would force an industry-wide reset affecting thousands (if not millions) of parties not present in this litigation. It would make any banking service involving funds held for third-party beneficiaries materially less attractive to offer. Many banks

would likely cut such services, to the detriment of the courts, claimants, and other customers who rely on them.

## I. A Fiduciary Relationship Is Special and Rare.

The default relationship between a bank and its depositors is well established.[3] "[A] deposit establishes a debtor-creditor relationship between the bank and the depositor in which the former becomes indebted to the latter for the amount of the deposit." *Hamilton Reserve Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, 134 F.4th 73, 81 n.4 (2d Cir. 2025) (citation omitted). Nearly everyone experiences this standard relationship; banks enter into and maintain it with millions of consumers. And it carries none of the special duties assigned to a fiduciary. *See Curtis-Shanley v. Bank of Am.*, 970 N.Y.S.2d 830, 832 (N.Y. App. Div. 2013) (collecting cases); *Groob v. KeyBank*, 843 N.E.2d 1170, 1175 (Ohio 2006).

These principles are bedrock. As the Supreme Court explained more than 150 years ago, American banking borrowed them from English law and was built on them. The Court first described the basic relationship between a bank and its depositor: "It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys." *Nat'l Bank of the Republic v. Millard*, 77 U.S. 152, 155–56 (1869). The Court then explained that this relationship is a limited one: "The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it." *Id.*

That rule, the Court observed, is rooted in English law, accords with American law, and means that no fiduciary relationship exists between a bank and its depositor. Citing *Foley v. Hill*,

[3] ABA draws primarily from authority in Arizona, California, the District of Columbia, New York, and Ohio, because that is where the parties focus their briefing. But where illustrative, ABA also relies on authorities from other jurisdictions.

2 H.L.C. 28 (1848), the Court explained that the relationship between a bank and its depositor is "the ordinary relation of debtor and creditor" and "does not partake of a fiduciary character." *Id.* The Court added that "the great weight of American authority is to the same effect." *Id.*

Establishing a fiduciary relationship requires much more than a run-of-the-mill banking relationship. The relationship generally arises when one party places "trust and reliance on" another, resulting in "a degree of control" over the first party's "person, property, or affairs." Restatement (Third) of Torts: Liab. for Econ. Harm § 16 (2020) ("Restatement (Third) of Torts").

The trust or confidence must be "special," *Groob*, 843 N.E.2d at 1173, or "high level," *People ex rel. Cuomo v. Coventry First LLC*, 915 N.E.2d 616, 620 (N.Y. 2009). The person bestowing it must do so in "peculiar reliance in the trustworthiness of" another, *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 335 (Ariz. Ct. App. 1996) (citations omitted), and in a way that vests "control and dominance" over her person, property, or affairs, *Cuomo*, 915 N.E.2d at 620. The paradigmatic fiduciary relationships are familiar: "trustee and beneficiary," "guardian and ward," "agent and principal," and "attorney and client." Restatement (Second) of Trusts § 2 (1959).

Given the extraordinary confidence, trust, power, and reliance inherent in these relationships, they do not arise unintentionally. Both the beneficiary and the prospective fiduciary must agree to form the relationship. *Umbaugh Pole Bldg. Co. v. Scott*, 390 N.E.2d 320, 323 (Ohio 1979) (collecting cases). One party cannot unilaterally foist fiduciary duties onto another. *Id.* Between a bank and its depositor, a "special agreement" is required, *Valley Nat'l Bank of Phx. v. Elec. Dist. No. Four*, 367 P.2d 655, 662 (Ariz. 1961), and such relationships are rare, *see McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp*, 829 P.2d 1253, 1258 (Ariz. Ct. App. 1992) (citing *Stewart v. Phx.*

*Nat'l Bank*, 64 P.2d 101 (Ariz. 1937)); *Wilson v. PNC Mortg.*, 2015 WL 448601, at *9 (Ariz. Ct. App. 2015).

## II. Accepting Deposits of Court-Supervised Funds and Commercially Pricing Them Does Not Suffice to Make a Bank a Fiduciary.

Merely accepting and holding court-supervised funds, such as QSF deposits, and pricing them commercially does not create a fiduciary relationship between a bank and the QSF's beneficiaries. These arrangements bear none of the hallmarks of a fiduciary relationship: the bank has no investment discretion over QSF deposits and virtually no interaction with the QSF's beneficiaries, let alone a relationship of special trust and confidence with them.

The complaint itself alleges that QSF deposits have the same characteristics as everyday consumer deposits—the bank has no investment discretion over them. According to the complaint, settlement proceeds deposited in a bank are often held in a QSF, a fund created and supervised by the court. Compl. ¶¶ 63, 101–102. Funds may be disbursed from the QSF, according to the complaint, only by court order. Compl. ¶¶ 101–102.

In the complaint's telling, everyone with power or control over the funds is court-appointed. As alleged, the court selects a fund administrator who typically may disburse funds to class-action claimants, often only after obtaining court approval. Compl. ¶¶ 59, 78, 314. Sometimes class counsel—also selected by the court—may direct disbursement. Dkt. No. 149 at 4–5.

Banks, by contrast, generally are not appointed by the court to receive QSF deposits. Compl. ¶ 61. Generally, according to the complaint, fund administrators or class counsel choose the banks that receive them. Compl. ¶¶ 59, 80, 82, 100, 102, 110. Nor does a bank have a direct relationship with QSF beneficiaries—no dealings and no contract. Administrators, class counsel, and the court stand between them. Dkt. No. 149 at 10; Compl. ¶¶ 61, 82(b), 100.

Plaintiffs nonetheless contend that a bank holding QSF deposits owes fiduciary duties to the deposits' beneficiaries. None of their arguments is persuasive.[4]

*Setting Interest Rates.* Plaintiffs assert that the Bank Defendants exercised fiduciary-like power by setting interest rates for QSF deposits. Compl. ¶¶ 104–106. But every bank sets interest rates every day for every depositor, not just for QSF deposits. Doing so does not reflect unique control, great trust, or power vested in the bank by a beneficiary, nor does it suggest the bank has assumed special duties toward the beneficiary. Contending otherwise conflates a bank's ordinary commercial discretion over deposits, which are *its* property, *Shaw v. United States*, 580 U.S. 63, 66 (2016), with a fiduciary's control over someone *else's* property. Indeed, that the bank pays interest on QSF deposits is itself "very strong evidence that the title to the money deposited passed out of the depositor by the act of making the deposit," creating a garden-variety debtor-creditor relationship. *Peoples Westchester Sav. Bank v. FDIC*, 961 F.2d 327, 331 (2d Cir. 1992) (citation omitted); *see also Keyes v. Paducah & Ill. R.R. Co.*, 61 F.2d 611, 613 (6th Cir. 1932).

*Comptroller Regulations.* Plaintiffs invoke regulations of the Office of the Comptroller of the Currency ("OCC") to argue that national banks owe fiduciary duties to beneficiaries of court-supervised deposits. *E.g.*, Compl. ¶ 106 (citing 12 C.F.R. pt. 9). But those regulations govern banks when they act in a fiduciary capacity; they do not establish that accepting court-supervised deposits makes a bank a fiduciary. *See* 12 C.F.R. §§ 9.1(c), 9.2(e), 9.4. Plaintiffs first must establish that the banks undertook a fiduciary role in handling these deposits. That inquiry turns on the governing law, any relevant agreement, and the responsibilities the banks assumed. *See* 12 C.F.R. § 9.2(b). In *Snyder v. Wells Fargo Bank, N.A.*, for example, the court held that the OCC regulations merely

[4] Plaintiffs concede that neither Section 43 of the Restatement (Third) of Torts nor the co-fiduciary accountability doctrine imposes fiduciary duties on banks. Dkt. No. 169 at 14. ABA agrees and thus does not discuss these authorities further.

"reinforce[d]" obligations arising from the investment agreement and state law. 594 F. App'x 710, 713 (2d Cir. 2014).

And even if the regulations could impose fiduciary duties, they would not do so here. Merely holding deposits and setting interest rates is not exercising "investment discretion." 12 C.F.R. § 9.2(i) ("Investment discretion means, with respect to an account, the sole or shared authority (whether or not that authority is exercised) to determine what securities or other assets to purchase or sell on behalf of the account."). OCC guidance confirms that merely holding deposits "is generally not considered a fiduciary capacity under 12 CFR 9."[5]

*Tax Treatment*. Plaintiffs also rely on tax rules governing settlement funds. Compl. ¶¶ 67–69 (citing 26 C.F.R. § 1.468B); *id.* ¶ 108 (citing 26 U.S.C. § 468B). That reliance too is misplaced. Like the OCC regulations, these authorities do not impose fiduciary duties on banks. The regulation sets out the federal tax treatment of QSFs, defines a QSF "administrator," and directs the administrator to observe certain tax and reporting obligations. *See* 26 C.F.R. § 1.468B *et seq*. The statute establishes what income must be reported to tax the QSF properly. *See* 26 U.S.C. § 468B(b)(3)(C). Neither addresses interest rates, deposit pricing, ownership, or duties owed to fund beneficiaries—let alone imposes fiduciary duties on a bank holding funds for others.

*Knowledge*. Plaintiffs also allege a bank that "passive[ly]" holds deposits knowing the funds are held for a third party's benefit becomes a fiduciary to that unknown third party. Compl. ¶ 108. That theory violates the well-established default legal rule: absent a special arrangement, a

[5] *See OCC Comptroller's Handbook: Custody Services* 11 (Jan. 2002), https://www.occ.gov/publications-and-resources/publications/comptrollers-handbook/files/custody-services/pub-ch-custody-services.pdf [https://perma.cc/WU8Q-9NFB] (last visited Oct. 28, 2026); *see also Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014) ("[J]udicial notice may be taken of public records and government documents available from reliable sources.").

bank and its depositor are debtor and creditor, and that relationship carries no fiduciary duties. *Nat'l Bank of the Republic*, 77 U.S. at 155–56; *Hamilton Reserve Bank*, 134 F.4th at 81 n.4.

Indeed, multiple courts have expressly rejected Plaintiffs' theory. *See Peoples Westchester*, 961 F.2d at 330–32 (bank's knowledge that lawyer's IOLA account held client funds imposed no duty on the bank); *see also Chazen v. Centennial Bank*, 71 Cal. Rptr. 2d 462, 464 (Cal. Ct. App. 1998) (commercial banks have no duty to monitor trust accounts for breaches of fiduciary duty); *Kesselman v. Nat'l Bank of Ariz.*, 937 P.2d 341, 346 (Ariz. Ct. App. 1996) (no duty to disclose account irregularities to third-party beneficiaries).

Courts have rejected arguments like Plaintiffs' even when a bank does more than passively hold funds. In *Miller v. American National Bank & Trust Co. of Chicago*, for example, the plaintiff alleged that a bank breached its fiduciary duty by failing to secure the best interest rate for settlement funds it held for her while she was a minor. 4 F.3d 518, 519–21 (7th Cir. 1993). The Seventh Circuit rejected the claim, holding that there is "no fiduciary obligation implicit in the relationship between bank and depositor." *Id.* at 520. Although a state court had appointed the bank to receive the funds and directed it to secure the best interest rate, that arrangement suggested that "the court itself, rather than the bank, retained control and responsibility." *Id.* at 521. Nor did it matter that the bank, without guidance from others, decided how to invest the money: "If no fiduciary obligation existed to begin with, a reluctant party cannot be saddled with such a duty by the inaction of others." *Id.* And it was irrelevant that the bank had likely profited by lending the plaintiff's money at a higher interest rate. *Id.*

*D.C. Circuit Precedent.* Finally, Plaintiffs argue that two D.C. Circuit decisions—*Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280 (D.C. Cir. 1993), and *He Depu v. Yahoo! Inc.*, 950 F.3d 897

(D.C. Cir. 2020)—show that a bank holding QSF deposits owes fiduciary duties to QSF beneficiaries. But both decisions undercut Plaintiffs' position.

In *Beckett*, the plaintiffs alleged that the Air Line Pilots Association, which is not a bank, breached its fiduciary duty by misusing funds it held in trust under a consent decree. 995 F.2d at 283. The association argued that the decree, although it identified the plaintiffs as beneficiaries, did not create a trust and thus imposed no fiduciary relationship. *Id.* at 286–87. The D.C. Circuit disagreed because the decree expressly set out the elements of a trust. *Id.* It provided that the disputed funds would be held in escrow and transferred "to a *trust account* . . . established by" the association, which was directed to "act as *trustee* and agent for distribution of this fund to the *beneficiaries*." *Id.*

*Beckett* thus stands for the unremarkable proposition that when parties expressly agree to create a trust, they create one. It does not hold, as Plaintiffs contend, that a mere depository of funds meant to benefit a third party becomes a fiduciary to that third party. *See* Dkt. No. 169 at 10–11.

*He Depu* is similar. There, the D.C. Circuit, applying District of Columbia law, held that the plaintiffs plausibly alleged that a prior settlement agreement had created a trust fund held by the defendant—also not a bank—for their benefit. 950 F.3d at 905. As the court observed, parties need not use "magic words" to create a trust. *Id.* at 902. But magic words help—and the agreement contained them. It identified all three elements of a trust, directed the defendant to hold the money "in trust," and required the defendant to make payments from the fund "in trust." *Id.*

*He Depu*, like *Beckett*, does not hold that a depository of funds earmarked for a third party becomes that party's fiduciary. It instead illustrates how much more is needed to create a fiduciary relationship.

* * *

Merely holding deposits earmarked for a third party's benefit, and pricing them at commercial rates, does not make the depository a fiduciary to that third party. Much more is needed to create the sacrosanct relationship between fiduciary and beneficiary. None of the authorities Plaintiffs marshal for their unbounded rule—which would reach not just QSFs but any deposit a bank has reason to know is held for someone else's benefit—suggests otherwise.

## III. A Contrary Ruling Would Significantly Disrupt the Banking Industry.

Plaintiffs' proposed rule strikes at two core principles that the American banking system borrowed from English law: that a deposit creates a debtor-creditor relationship, and that this relationship is not fiduciary. Upsetting these tenets would force a rebalancing across America's $24.1 trillion banking industry. It would sweep in not just banks that accept QSF deposits, but also any bank accepting any deposit that it knows or should know is held for a third party's benefit—and banks have millions of these accounts.

Many banks compete to hold court-supervised funds, including QSFs. The complaint alleges that administrators may choose among many institutions competing for QSF deposits. Compl. ¶ 442. Besides Huntington National Bank and Western Alliance Bank, these institutions include (among others) American Deposit Management, Esquire Bank, Eastern Point Trust Company, and Computershare Trust Company.

If accepting such deposits—whether QSFs or other funds meant to benefit third parties—makes a bank a fiduciary to every unknown beneficiary with whom it has no contract or direct dealings, then banks will surely reprice (and perhaps discontinue) those services. Repricing alone would be difficult, for a bank cannot readily account for an open-ended duty running to hundreds of thousands (if not millions) of unidentified beneficiaries, measured by disgorgement of the

bank's own gain rather than by any loss to the beneficiary, and enforceable years after the deposits have been distributed. And banks that continue offering these services would face chaotic and expensive obligations. A bank owing duties to beneficial deposit owners would need to identify each beneficiary, evaluate its instructions, and possibly second-guess the directions of class counsel—who owe their own fiduciary duties to the class—and administrators. Those burdens would chill QSF services nationwide and result in fewer, more expensive services, to the detriment of courts and plaintiffs alike.

The chill would affect more than just banks holding court-supervised funds, moreover. American banks safeguard $19.2 trillion in deposits. Trillions of dollars of deposits held at thousands of banks are funds held for the benefit of third parties—for example, escrow accounts, IOLTA and IOLA accounts, and trust accounts. Indeed, this segment of the industry is substantial: ABA has previously quantified it at 6.5 million employee benefit trust accounts held at nearly 2,300 banks and trust companies, together valued at $3.9 trillion.

Under Plaintiffs' reasoning, banks holding these accounts would owe fiduciary duties to all of those beneficiaries, too. As with QSF deposits, thousands of banks would have to reckon with that new liability exposure, and many would likely conclude that offering such services no longer makes sense. The result would be lost banking services not only for putative class members, but also for thousands (if not millions) of parties not represented in this litigation—including all third-party beneficiaries, and the courts and licensed professionals who rely on those services.

In sum, many financial institutions in the United States hold class-action and mass-tort settlement funds. Ruling that Plaintiffs have pleaded a fiduciary relationship with the Bank Defendants would chill business at every such institution, and at the thousands of other banks that

accept deposits earmarked for the benefit of third parties. The Court should reject Plaintiffs' proposed rule.

## CONCLUSION

Serving as a depository of a court-supervised account, and pricing those deposits on commercial terms, does not create a fiduciary relationship between a bank and the beneficiaries of those funds. As explained above, any recourse is to be found elsewhere. The Court should therefore grant the Bank Defendants' motion and dismiss Counts I, II, and IV, and any other claim that hinges on fiduciary duty, for failure to plead a fiduciary duty. At a minimum, any ruling should be no broader than necessary to resolve the claims in this action and should not adopt a general rule governing depository and custodial relationships across the banking industry.

Respectfully submitted,

Dated: October 30, 2026

MAYER BROWN LLP

By: */s/ Andrew J. Pincus*

ANDREW J. PINCUS (DC Bar No. 370726)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
apincus@mayerbrown.com

MICHAEL A. SCODRO (*pro hac vice forthcoming*)
JOSHUA C. FELTY (*pro hac vice forthcoming*)
MAYER BROWN LLP
71 South Wacker Dr.
Chicago, IL 60606
Telephone: (312) 782-0600
mscodro@mayerbrown.com
joshua.felty@mayerbrown.com

Attorneys for *Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the requirements of Local Civil Rules 5.4 and 7(o).

*/s/ Andrew J. Pincus*
ANDREW J. PINCUS